1
2
3
4

William A. Gilbert, WSBA #30592
Gilbert Law Firm, P.S.
421 W. Riverside Ave, Suite 1400
Spokane, WA  99201
T: 509·321·0750
F: 509·343·3315
E: bill@wagilbert.com
Attorney for Plaintiffs

5
6
7
8

UNITED STATES DISTRICT COURT IN AND FOR THE
EASTERN DISTRICT OF WASHINGTON

9
10
11
12
13
14

TRADEEN GOOLD; CAL ALVIN
HARRIS and MIDGE HARRIS, husband
and wife; CHRISTINA COLE and
MARCUS COLE, wife and husband;
JEFFERY NEHLS and MELISSA
NEHLS, husband and wife; SANDEE
HAHN and STEPHEN HAHN wife and
husband.

                    Plaintiffs.

15
16
17
18
19
20

            v.

Dr. JASON A. DREYER, DO, and
LAURA DREYER, husband and wife
and the marital community thereof;
PROVIDENCE ST. JOSEPH
HEALTH; PROVIDENCE HEALTH
& SERVICES; PROVIDENCE
HEALTH AND SERVICES –
WASHINGTON d/b/a PROVIDENCE
ST. MARY MEDICAL CENTER; and
PROVIDENCE MEDICAL GROUP

NO.

**COMPLAINT FOR
DAMAGES**

COMPLAINT
PAGE 1 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  d/b/a PROVIDENCE MEDICAL
   GROUP SOUTHEAST
2  WASHINGTON NEUROSURGERY,
   a/k/a PMG NEUROSCIENCE
3  INSTITUTE, WALLA WALLA a/k/a
   NEUROSCIENCE INSTITUTE d/b/a
4  PROVIDENCE, and JANE AND
   JOHN DOES 1 - 6
5
6                    Defendants.

## I.  <u>INTRODUCTION</u>

1.1  This is an action borne out of betrayal at the highest level by a neurosurgeon and his employer - the betrayal of the sacred trust relationship between doctor and patient, and between a hospital and the patients it has a nondischargeable duty to protect.

1.2  This is a medical malpractice action with corporate negligence and related claims evolving out of unnecessary and negligent surgeries performed by Defendants' agents and employees, including neurosurgeon, Dr. JASON A. DREYER, D.O. (hereinafter "Dr. Dreyer"). The unnecessary and negligent surgeries and related negligence and fraudulent conduct were undertaken by Dr. Dreyer in concert with co-employees and agents of PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE HEALTH & SERVICES; PROVIDENCE HEALTH AND SERVICES –WASHINGTON d/b/a PROVIDENCE; PROVIDENCE ST. MARY MEDICAL CENTER; and PROVIDENCE MEDICAL GROUP d/b/a

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON NEUROSURGERY, a/k/a PMG NEUROSCIENCE INSTITUTE, WALLA WALLA a/k/a NEUROSCIENCE INSTITUTE d/b/a PROVIDENCE (hereinafter "PROVIDENCE"), while in the course and scope of their employement with and for PROVIDENCE. Causes of action include, without limitation: RCW 7.70.010 *et. seq*. (Actions for Injuries Resulting from Health Care); Corporate Negligence; violation of the Washington State Consumer Protection Act (RCW 19.86.010 *et. seq*); Violation of the Washington State Criminal Profiteering Act (RCW 9A.82.100 and 9A.82.080); negligent and intentional infliction of emotional distress, and related claims.

1.3     Each of these claims has its roots in medical negligence through a breach of the standard of care based, in part, on the performing of unnecessary spine surgeries in a fraud perpetuated by Defendants against the Plainitffs and their health insurance companies who were taken advantage of in a profit over patient safety scheme that rocked the Plaintiffs' world to its core.

1.4     As a result of this negligent, unethical, and illegal conduct by the Defendants, Plaintiffs have been permanently harmed, and left in a persistent state of pain or discomfort; suffering from anxiety, depression, sleep disorders, addition to narcotic medications, and living in fear that they cannot ever again trust a doctor

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  to take care of them, or that a hospital will make sure that only trusted physicians

2  and medical staff are present to care for them.

3      1.5    Plaintiffs now seeks to recover damages resulting from the negligent

4  conduct of the Defendants in an amount to be fully set forth at trial.

5                    **II.    <u>PARTIES</u>**

6      2.1    Plaintiffs reallege and incorporate by reference paragraphs 1.1 through

7  1.5 as fully set forth herein.

8      2.2    Plaintiff, TRADEEN GOOLD, a single person, was at all times relevant

9  hereto an adult resident of Pendleton, Oregon.

10     2.3    Plaintiff, CAL ALVIN HARRIS and MIDGE HARRIS, were at all

11 times relevant hereto a married couple residing in Umatilla County, Oregon.

12     2.4    Plaintiff, CHRISTINA COLE and MARCUS COLE, were at all times

13 relevant hereto a married couple residing in Umatilla County, Oregon.

14     2.5    Plaintiff, JEFFERY NEHLS and MELISSA NEHLS, were at all times

15 relevant hereto a married couple residing in Wallowa County, Oregon.

16     2.6    Plaintiff, SANDEE HAHN and STEPHAN HAHN, were at all times

17 relevant hereto a married couple residing in Umatilla County, Oregon.

18     2.7    Defendant PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE

19 HEALTH  &  SERVICES;  PROVIDENCE  HEALTH  AND  SERVICES  –

20 WASHINGTON d/b/a PROVIDENCE; PROVIDENCE ST. MARY MEDICAL

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    CENTER; and PROVIDENCE MEDICAL GROUP d/b/a PROVIDENCE

2    MEDICAL GROUP SOUTHEAST WASHINGTON NEUROSURGERY, a/k/a

3    PMG NEUROSCIENCE INSTITUTE, WALLA WALLA a/k/a NEUROSCIENCE

4    INSTITUTE d/b/a PROVIDENCE (collectively "PROVIDENCE") are Washington

5    nonprofit corporation with their primary place of business located at 1801 Lind

6    Avenue, Southwest, Renton, WA 98057, which is geographically located in King

7    County, Washington.  PROVIDENCE has offices to conduct business, regularly

8    conducts business, and manages medical facilities across the state of Washington,

9    including in Walla Walla County.

10        2.8    At all relevant times hereto, Defendant JASON A. DREYER, DO was

11   a licensed physician, and citizen of Washington residing in, and practicing medicine

12   in Walla Walla County, Washington, as an employee or ostensible agent of

13   PROVIDENCE. At all times relevant hereto, JASON A. DREYER, DO held himself

14   out to be a medical care provider whose services were offered to the public for

15   compensation.  JASON A. DREYER, DO. is married to LAURA DREYER all acts

16   or omissions committed by JASON A. DREYER, DO. were done both for, and on

17   behalf of, the community composed of JASON A. DREYER, DO and his wife,

18   LAURA DREYER.

19                    **III.   JURISDICTION AND VENUE**

20        3.1    Plaintiffs reallege and incorporate by reference paragraphs 1.1 through

COMPLAINT
PAGE 5 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

2.8 as fully set forth herein.

3.2     This court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest.

3.3     Venue is proper in this court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims alleged in the Complaint occurred in the Eastern District of Washington.

## IV.    STATEMENT OF FACTS

4.1     Plaintiff realleges and incorporates by reference paragraphs 1.1 through 3.3 as fully set forth herein.

4.2     For over 100 years, PROVIDENCE has been a member of the medical community in the state of Washington, including Eastern Washington.

4.3     PROVIDENCE is a multi-billion dollar healthcare system reporting over billions of dollars in net assets, operating hospitals in seven states.

4.4     PROVIDENCE has owned and operated St Mary Medical Center ("SMMC"), a hospital located in Walla Walla, Washington since 1880.

4.5     PROVIDENCE promotes itself as providing excellent, reliable, and necessary medical care.

4.6     PROVIDENCE employed Dr. Jason Dreyer, D.O. as a neurosurgeon in its neurosurgery department at SMMC. All acts or omissions of Dr. Dreyer set out

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

herein below were done in the regular scope and course of his employment with, and for the benefit of PROVIDENCE.

4.7    In order to increase its own profits, PROVIDENCE instituted a scheme, pattern, policy and practice that incentivized neurosurgeons, including Dr. Jason Dreyer, to conduct spine surgeries at high-volumes and increased complexity to increase SMMC profits, and increase Dr. Dreyer's salary.

4.8    This incentive based payment scheme using a productivity metric with no cap on compensation provided neurosurgeons financial incentives to perform a high volume of surgical procedures of greater complexity, for which they were rewarded with increased compensation.

4.9    This incentive based compensation program serves to assure PROVIDENCE surgeons are productive; it also incentivized those of questionable ethics to perform unnecessary surgeries and overly complex surgeries to generate health care claims with government and private insurers for which they were rewarded through the incentive based productivity pay metrics which increased their personal compensation.

4.10    PROVIDENCE incorporated the incentive based pay system whereby the neurosurgeons would be compensated for each work Relative Value Unit (RVU) they generated that could be used to file claims for reimbursement with federal, state, and private health care insurers.

COMPLAINT
PAGE 7 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.11    Work Relative Value Units (wRVU) were values assigned to coded medical services under the Medicaid and Medicare Physician Fee Schedule for personal services provided by individual surgeons.

4.12    Two other categories of RVUs were similarly assigned to the coded medical services, one for practice expenses such as medical equipment and realty expenses (peRVUs), and the other for malpractice insurance costs (mRVUs). These other RVU types were cumulative, that is, surgical procedures that generated wRVUs would generally create additional reimbursement for PROVIDENCE in the form of additional payments for peRVUs and mRVUs.

4.13    The more complex the medical treatment, the higher the associated wRVU created for filing reimbursement claims with health insurers. Similarly, the more frequent certain medical equipment is used, the higher the RVU totals generated per patient billing.

4.14    When initially hired, PROVIDENCE neurosurgeons are not placed on the incentive based compensation plan. Initially they are compensated on a straight annual salary compensation plan. This salary is substantial and is comparable to regional salary expectations for neurosurgeons. The neurosurgeon new-hires are monitored for a period of time on the salary-based compensation package to determine if a shift to incentive based compensation is appropriate for the surgeon and PROVIDENCE. A neurosurgeon can request to be put on the incentive-based

COMPLAINT
PAGE 8 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1   salary system at any time.   Approval for the change comes from the executive

2   oversight for the hospital – in this case SMMC.

3       4.15   Dr. Jason Dreyer, DO was hired on June 30, 2013.  On July 1, 2013,

4   Dr. Dreyer signed the required compliance acknowledgment for treatment, care, and

5   billing  under  Medicare/Medicaid.    On  July  15,  2013,  Dr.  Dreyer  was  given

6   provisional privileges to perform surgeries at SMMC.  Also in 2013, PROVIDENCE

7   allowed Dr. Dreyer to become an RVU earner rather than just a salaried employee,

8   even though his provisional employment status did not terminate until September

9   15, 2014. Dr. Dreyer received his first bonus check by January 2014.

10      4.16   PROVIDENCE used a two-tier compensation bonus structure, paying

11  a per-wRVU amount for aggregate work that brought the surgeons up to the median

12  national  production  level  of  neurosurgeons,  and  a  higher  per-RVU  for  aggregate

13  work  greater  than  median  production  levels.    Thus,  the  largest  portion  of  Dr.

14  Dreyer's  compensation  when  he  was  approved  on  the  performance  enhancement

15  model in 2014 came from the bonus for higher than median RVU level production.

16  Dr.  Dreyer  was  thus  incentivized  to  reach  production  levels  higher  than  median

17  annual performance thresholds.

18      4.17   Dr. Dreyer regularly reached national productivity levels well in excess

19  of  90%  of  all  surgeons  (and,  we  allege,  over  the  99th  percentile).  His  wRVU

20  numbers from 2014 to 2018 yielded corresponding compensation from $2.5 to $2.9

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  million annually (with over $3 million in income in some years, per publicly filed

2  IRS filings).  Such high relative income is a red flag for health care fraud.  *See U.S.*

3  *ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 172 (3d Cir. 2019).

4  4.18   The more complex the medical treatment, the higher the associated

5  wRVU coding created for filing reimbursement claims with health insurers.

6  4.19   Similarly, the more frequently certain medical equipment was used, the

7  higher the RVU totals generated per patient billing for the benefit of PROVIDENCE.

8  PROVIDENCE created its specified RVU system.

9  4.20   PROVIDENCE's wRVU system included layers of bonus payment, all

10  uncapped, once certain thresholds were met.

11  4.21   This high productivity resulted in high income. Dr. Dreyer became one

12  of the highest producing neurosurgeons in the entire PROVIDENCE 51-hospital

13  system, with annual earnings of between $2.5 and $2.9 (and over $3 million some

14  years, per IRS filings) at one point made him one of the highest paid employees in

15  all of PROVIDENCE – while performing spine surgeries in a small rural hospital in

16  Eastern Washington.

17  4.22   This continued for several years unabated, while PROVIDENCE staff

18  noticed and expressed concerns about, without limitation, questionable patterns of

19  high RVU counts, patient selection, surgery recommendations, record keeping, and

20  billing by Dr. Dreyer.

COMPLAINT
PAGE 10 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    4.23   Dr. Dreyer was not the only concerning neurosurgeon at SMMC.  Dr.

2    Daniel Elskens was alleged to have engaged in a pattern of substandard care in

3    conjunction with ethics violations related to performing unnecessary/excessive

4    surgeries on patients of questionable suitability for surgery.

5    4.24   Interestingly, Dr. Elskens was hired upon recommendation of Dr.

6    Dreyer. Dr. Elskens was previously a clinical instructor with the Michigan State

7    University D.O. neurosurgery residency program which Dr. Dreyer attended.

8    4.25   Upon information and belief, after multiple concerns were raised, an

9    investigation concluded that Dr. Elskens was conducting unnecessary and otherwise

10   substandard surgeries. In response, Dr. Elskens was given an opportunity to resign

11   or be terminated.  Dr. Elskens resigned on March 28, 2017 and his resignation was

12   accepted on May 19, 2017.

13   4.26   When Dr. Elskens resigned, PROVIDENCE informed him that if he

14   forfeited wages due him, PROVIDENCE would not report him to the National

15   Practitioner's Data Bank.[1]

16

17   _____

[1] The National Practitioner Data Bank ("NPDB") is a web-based repository of reports containing information on

18   medical malpractice payments and certain adverse actions related to health care practitioners, providers, and suppliers.

19   Established by Congress in 1986, it is a workforce tool that prevents practitioners from moving state to state without

disclosure or discovery of previous damaging performance. There are mandatory statutory/regulatory reporting

20   requirements. https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.27   Regardless of the outcome of negotiations by and between Dr. Elskens and PROVIDENCE, *PROVIDENCE* did not report Dr. Elskens to the NPDB.  As a result, Dr. Elskens was able to obtain employment in Ohio where he continued his unethical and negligent activates resulting in the paralysis of a young athlete, death of a patient, and injuries and harm to several other patients, for which he is currently being pursued in formal litigation.

4.28   Had PROVIDENCE reported Dr. Elskens to the NPDB, prospective employers would have been aware of historical concerns regarding patient care. This is important where prospective employers rely on administrative reporting oversight agencies to regulate the industry and provide them with accurate, reliable information to assist them in making hiring decisions, and also to protect the public from bad doctors. Dr. Elskens likely would not have obtained gainful employment in Ohio had PROVIDNCE followed through with their duty to report him to the NPDB and WA DOH.  This same scenario later played out with PROVIDENCE and Dr. Dreyer when Dr. Dreyer left PROVIDENCE and was hired by MultiCare Health System.

4.29   The facts set forth in paragraphs 4.30-4.65 are important as they illustrate the lengths PROVIDENCE and these neurosurgeons went to in order to conceal this profit over patient safety scheme.

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    4.30   In 2017, Dr. Dreyer's fellow SMMC neurosurgeon, Dr. David Yam,

2    MD, specifically raised patient safety and ethics concerns about Dr. Dreyer. These

3    complaints continued into 2018.

4    4.31   According to Dr. Yam, he had been voicing concerns about Dr. Dreyer

5    for years. In the fall of 2017, Dr. Yam reported that it was his educated professional

6    opinion gleaned from review of Dr. Dreyer's patient files that Dr. Dreyer had

7    performed literally **<u>hundreds</u>** of unnecessary and/or excessive and otherwise

8    improper surgeries.

9    4.32   It has now been determined that included in these

10   unnecessary/excessive, or otherwise improper surgeries were surgeries performed

11   on: TRADEEN GOOLD at PROVIDENCE SMMC on January 31, 2017; CAL

12   ALVIN HARRIS at PROVIDENCE SMMC on December 9, 2016, and June 21,

13   2017; CHRISTINA COLE at PROVIDENCE SMMC on May 20, 2016; JEFFERY

14   NEHLS at PROVIDENCE SMMC on March 14, 2017; and SANDEE HAHN, at

15   PROVIDENCE SMMC on March 27, 2015, July 3, 2017, and September 22, 2017.

16   4.33   Upon information and belief, PROVIDENCE and Dr. Dreyer submitted

17   bills for these unnecessary/excessive or otherwise improper surgeries.  It has been

18   found that billing records submitted by Dr. Dreyer were incorrect, not supported by

19   the surgical records, and that he billed for procedures not performed.

20

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.34   In contrast to what is required by the standard of care in respect to informed consent, prior to agreeing to these surgeries, Plaintiffs were manipulated and coerced into agreeing to the procedure recommended by Dr. Dreyer by and through, without limitation:  Dr. Dreyer's presentation of false/misleading objective findings from imaging studies; Dr. Dreyer's references to the seriousness of a given spine condition with references to risk of permanent injury or paralysis absent surgery; Dr. Dreyer's promises of a positive outcome "I can fix you", and encouragement that you will be "good as new"; Dr. Dreyer's forceful suggestion to those seeing him for a lumbar issue that that he could not fix the lumbar spine issue without first doing the neck; and in one case, Dr. Dreyer's suggestion that her cervical spine concern was emergent and that an immediate surgery to fuse one or two levels was needed – but explaining further that she will need more surgeries in the future, so she should let him conduct a 5-level fusion (C3-T1) using his special techniques and get it all done at once – and she would be part of a study and published paper he was working on.

4.35   PROVIDENCE was, or in the exercise of reasonable care, should have been aware of Dr. Dreyer's patterns of manipulation and coercion with patients, and his penchant for conducting unnecessary and excessive surgeries.

4.36   According to the Neurosurgery Department-Head, Dr. David Yam, while all of these surgeries were taking place, he was speaking out to administrators

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    about concerns regarding Dr. Dreyer's patient selection, and propensity to perform

2    unnecessary or excessive surgeries.

3         4.37   As these concerns were reported, Dr. Dreyer continued to perform

4    surgeries on PROVIDENCE patients at a record clip as one of the highest producing

5    and highest paid employees in the PROVIDENCE Washington Health and Services

6    region.

7         4.38   PROVIDENCE did in fact recognize Dr. Dreyer's ridiculously high

8    surgical volume throughout his employment with PROVIDENCE. Emails and

9    documents indicate he was being praised and congratulated by PROVIDENCE

10   administrative staff and his department clerical staff for the volume of wRVU's he

11   regularly reported.

12        4.39   Finally, after repeated complaints by Dr. Yam, PROVIDENCE placed

13   Dr. Dreyer on administrative leave and began an investigative review of his patient

14   files.  This administrative leave, or *safety pause,* was ordered on May 1, 2018.

15        4.40   Dr. Dreyer remained on administrative leave for almost a year until he

16   ultimately left PROVIDENCE for a job at MultiCare. Records indicate he submitted

17   his resignation in November, 2018.  However, in his application process with

18   MultiCare in April, 2019, he declared he remained employed with PROVIDENCE

19   and would be submitting his resignation in anticipation of retention by MultiCare.

20

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.41   Despite knowing that Dr. Dreyer's peers, including the Neurosurgery Department-Head, had repeatedly expressed patient safety and ethics concerns regarding Dr. Dreyer throughout his period of employment with PROVIDENCE, PROVIDENCE did nothing to intervene until May, 2018.

4.42   When PROVIDENCE finally did intervene and place Dr. Dreyer on administrative leave pending an investigation, it did nothing to notify patients, including the Plaintiffs herein, so they could make informed and educated decisions regarding care; nor did PROVIDENCE notify the public of the concerns regarding he neurosurgery department and specifically Dr. Jason Dreyer. PROVIDENCE chose instead to secret the scheme and simmering scandal from impacted patients, the public, and insurers.

4.43   While this tangled web was being spun at SMMC, another PROVIDENCE neurosurgeon working at PROVIDENCE Kadlec Regional Medical Center in Richland, WA, Dr. Matthew Fewel, began noticing a pattern of unnecessary and overly complex surgeries, misleading medical reports, exaggerated imaging reads, and other questionable patient care concerns involving care provided by Dr. Dreyer.

4.44   On March 4, 2019, over a year after the formal internal complaints were filed with the PROVIDENCE SMMC executive leadership by Dr. Yam, Dr. Fewel filed a formal complaint with the Washington State Department of Health Medical

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    Quality Assurance Commission ("MQAC"). The report included detailed allegations

2    involving substandard care of eleven (11) Dreyer patients.  The allegations included

3    a pattern of unnecessary surgeries, overly complex surgeries, misleading medical

4    reports, exaggerated imaging reads, and other questionable conduct by Dr. Jason

5    Dreyer – all specific to patient care undertaken by Dr. Dreyer while employed with

6    PROVIDENCE at SMMC.

7         4.45   The MQAC complaint triggered a formal investigation that included an

8    outside review of the patient files by Dr. Abhineet Chowdhary, MD, Diplomat,

9    American Board of Neurological Surgery. Dr. Chowdhary found merit in allegations

10   of substandard care and ethical violations in at least seven (7) of the patient files

11   reviewed.  This later resulted in the suspension of Dr. Dreyer's medical license and

12   ultimately to an agreed resolution of the matter that included a lifetime ban of Dr.

13   Dreyer's licensure in Washington state on November 16, 2023.

14        4.46   As indicated above, although there are conflicting documentary reports

15   in this regard, PROVIDENCE has reported Dr. Jason A. Dreyer, DO resigned his

16   position at PROVIDENCE on or about November 13, 2018.

17        4.47   When he submitted his resignation, Dr. Dreyer had already been off on

18   an administrative leave since May 1, 2018. He had not provided medical care for a

19   PROVIDENCE patient in 6 months at this point – and did not provide medical care

20

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  to any PROVIDENCE patient through his official exodus from PROVIDENCE in

2  April of 2019.

3      4.48  This lengthy delay resulting from an employer ordered safety

4  pause/admin leave and related investigation required PROVIDENCE to report

5  concerns regarding Dr. Dreyer to the NPDB, and Washington State Department of

6  Health ("DOH").[2] PROVIDENCE did not report concerns regarding Dr. Dreyer to

7  either of these regulatory oversight agencies. This is further evidence of

8  PROVIDENCE's intent to secret this scheme/scandal from effected patients, the

9  public, and insurers.

10      4.49  On May 3, 2019, Dr. Dreyer signed an employment agreement with

11  MultiCare Health System ("MultiCare") and went to work performing surgeries and

12  padding his pockets on MultiCare's wRVU incentive bonus payment scheme.  While

13  so employed, Dr. Dreyer continued his pattern of ethical and negligent conduct –

14  injuring numerous patients before ultimately being suspended by the State.  There

15  are numerous lawsuits ongoing against Dr. Dreyer and MultiCare borne out of these

16  negligent actions.  MultiCare alleges PROVIDENCE did not provide them with any

17  warning that Dr. Dreyer was not a trustworthy surgeon prior to MultiCare hiring Dr.

18

19  _____

20  [2] PROVIDENCE was later formally censured and placed on a monitoring plan for violating Washington State
    reporting regulations.

GILBERT LAW FIRM, P.S.
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

Dreyer. This is further evidence of PROVIDENCE's intent to secret this scheme/scandal from effected patients, the public, and insurers.

4.50   Further concern about the depth of knowledge and culpability of PROVIDENCE and their concerted effort to secret the scheme and scandal from patients, the public, and insurers, is the fact that PROVIDENCE, individually, and through their lawyers, Davis Write and Tremain, retained two outside neurosurgeons to review patient files for patients of Dr. Dreyer and Dr. Elskens.  Upon information and belief, these neurosurgeons reported that Dr. Yam was correct regarding his assessment of Dr. Dreyer, and that both Dr. Dreyer and Dr. Elskens were conducting unnecessary/excessive surgeries on patients and performing surgeries on patients that were not suitable for surgery as a result of physical and health concerns. PROVIDENCE still has not published this fact to the impacted patients, including Plaintiffs herein, or the public, or insurers.

4.51   After the resignation of Dr. Dreyer and Dr. Daniel Elskens, Dr. David Yam resigned and filed a *qui tam* complaint under the False Claims Act on January 10, 2020, alleging PROVIDENCE, Dreyer, and Elskens were committing medical billing fraud with government funded insurance providers. The Complaint included a whistleblower retaliation claim asserting PROVIDENCE had retaliated against Dr. Yam for reporting PROVIDENCE, Dr. Dreyer and Dr. Elskens' fraud in filing of false claims with Government funded insurers.   This is further evidence of

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

PROVIDENCE's intent to secret this scheme/scandal from effected patients, the public, and insurers.

4.52   On April 12, 2022, PROVIDENCE announced a settlement with the United States Department of Justice ("DOJ") for $22.7 million, to resolve those allegations brought by Dr. Yam that PROVIDENCE fraudulently billed Medicare, Medicaid, the Washington Health Care Authority, and other government health care programs for neurosurgery procedures performed by Dr. Dreyer, DO and Dr. Daniel Elskens, DO that did not meet criteria for reimbursement, that were unnecessary, or that were otherwise improper.

4.53   Upon information and belief, Dr. Yam's whistleblower retaliation claim was also resolved under by confidential agreement. This is further evidence of PROVIDENCE's intent to secret this scheme/scandal from effected patients, the public, and insurers.

4.54   Despite language in the Settlement Agreement otherwise, PROVIDENCE now takes the position that it denied any liability in the Settlement, announced on April 12, 2022. Yet, when the announcement came, PROVIDENCE admitted publicly that it was aware of concerns raised by PROVIDENCE personnel about these neurosurgeons' negligent, violative, unethical, and fraudulent treatment practices dating all the way back to 2014.   Included among these identified

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

PROVIDENCE personnel concerns were that the neurosurgeons routinely engaged in:

> (a)  Falsifying, exaggerating, and/or inaccurately diagnosing patients' true medical conditions in order to obtain reimbursement for surgical procedures;
>
> (b)  Performing surgical procedures that did not meet the medical necessity guidelines and requirements set forth by Medicare and other governmental health insurance programs;
>
> (c)  "Over-operating" – *i.e.,* performing a surgery of greater complexity and scope than was indicated and medically appropriate;
>
> (d)  Jeopardizing patient safety by attempting to perform an excessive number of overly complex surgeries;
>
> (e)  Endangering patients' safety;
>
> (f)  Creating an excessive level of complications, negative outcomes, and necessary additional operations as a result of their surgeries;
>
> (g)  Performing surgical procedures on certain candidates who were not appropriate candidates for surgery given their medical histories, conditions, and contraindications; and
>
> (h)  Failing to adequately document certain procedures, diagnoses, and complications.

Settlement Agreement, Recital D (*See* Exhibit 1).

4.55  The Settlement Agreement defines the "Covered Conduct" against PROVIDENCE which was the subject of the Agreement as its claims "arising from allegedly false claims for payment submitted by PROVIDENCE to Medicare, Washington State Medicaid . . . during the relevant time period for neurosurgery

services performed by [the Doctors] that did not meet the criteria for reimbursement under the Federal Health Programs, were medically unnecessary, or were otherwise improper." (*Id*, Recital H) The Covered Conduct included that PROVIDENCE "failed to take appropriate action in response to those concerns," and "failed to have and/or timely implement adequate safeguards and controls with regard to [the Doctors] to timely prevent, detect, deter, and cease the performance of medically unnecessary neurosurgical procedures." *Id*. Finally, the Settlement Agreement disclosed that PROVIDENCE used a wRVU-based compensation system without caps under which "the greater the number of procedures of higher complexity that the neurosurgeon performed, the greater the compensation the neurosurgeon received." (*Id*, Recital C) It noted that Dreyer's wRVU numbers from 2014 to 2018 exceeded 90% percentile for doctors (and, we allege, over the 99th percentile), yielding corresponding compensation from $2.5 to $2.9 million annually (and over $3 million some years, per IRS filings), resulting in a red flag for false claims based on exceeding the market value. *Bookwalter, supra.*

4.56   In January 2024, the Justice Department and the State of Washington filed a *qui tam* health care fraud lawsuit against MultiCare Health Systems ("MultiCare") that further articulated PROVIDENCE's admissions regarding Dr. DREYER during its settlement with the DOJ back in 2022. *See U.S. ex rel Palmer v. MultiCare Health Systems*, 2:22-cv-00068-SAB, ECF26 (E.D. Wash.) (2024

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

Complaint)             (found         at         https://www.justice.gov/usao-edwa/media/1335396/dl?inline).

4.57  This 2024 Complaint alleges that PROVIDENCE became aware, during its employment of Dr. Jason Dreyer, of significant concerns about Dr. Dreyer held by Neurosurgery Medical Director Dr. David Yam and other medical personnel, and that as part of the settlement resolution "PROVIDENCE admitted to facts" similar to those admissions identified in Paragraph 1.23 *supra*, but with more detail and with additional allegations, including that Dreyer:

(a)    completed medical documentation with falsified, exaggerated, and/or inaccurate diagnoses that did not accurately reflect the patient's true medical condition in order to obtain reimbursement for surgical procedures performed by Dr. Dreyer;

(b)    performed surgical procedures that did not meet the medical necessity guidelines and requirements for reimbursement set forth by Medicare and other government health insurance programs;

(c)    "over-operated", *i.e.*, performed a surgery of greater complexity and scope than was indicated and medically appropriate or reasonable;

(d)    jeopardized patient safety by attempting to perform an excessive number of overly complex surgeries;

(e)    endangered the safety of PROVIDENCE-St. Mary patients;

(f)    created an excessive level of complications, necessary additional operations, and negative outcomes including death and permanent injury as a result of his surgeries;

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

(g)     performed surgical procedures on certain candidates who were not appropriate candidates for surgery given their medical histories, conditions, and contraindications;

(h)     failed to adequately and accurately document certain procedures, diagnoses, and complications; and

(i)     knowingly and inappropriately completed billing sheets and other documentation that caused Medicare and other health insurance programs to be falsely and fraudulently billed for medically unnecessary and inappropriate neurosurgical services.

2024 Complaint, ¶ 72; *see* ¶ 74 ("PROVIDENCE admitted to facts including the facts alleged *supra* at paragraphs 71 & 72").  All of these identified and admitted concerns render the related billings *false claims* and therefore are profiteering acts under RCW 9A.82.010(4)(hh).  Despite the admissions by PROVIDENCE leading to it paying $22.7 million under the Settlement Agreement, it still maintains that it has admitted no liability as to any claim.

4.58   The treasure trove of facts set forth above has left Plaintiffs with a few questions: (1) How can PROVIDENCE reasonably and logically suggest that it was not aware of concerns about Dr. Dreyer's ethics and opportunistic and reckless surgical practices before he was suspended? (2) why did PROVIDENCE wait so long to do something to protect patients? (3) Why have they hidden all of this? (4) why didn't PROVIDENCE tell patients, including Plaintiffs herein, about concerns regarding Dr. Dreyer's practice before they agreed to a surgery? (5) why hasn't PROVIDENCE admitted to its negligence in this case, reached out to Plaintiffs

1  named herein, and other harmed patients to apologize, and made an effort to make it

2  right?

3       4.59   At no time prior to the April 12, 2022 publication of the Settlement

4  Agreement had PROVIDENCE disclosed publicly or to its patients that it had any

5  of these concerns about Dr. Dreyer. These failures to disclose by PROVIDENCE

6  were intended to, and did, prevent discovery by Plaintiffs of their right of legal

7  claims and causes of action against PROVIDENCE.

8       4.60   These coordinated and concerted failures to disclose by PROVIDENCE

9  were intended to, and did, prevent Plaintiffs' discovery and investigation of the legal

10  claims against the PROVIDENCE, or any discovery by anyone of any malfeasance

11  until the Federal Government disclosed this in the DOJ/PROVIDENCE Settlement

12  Agreement. This was so despite PROVIDENCE's knowledge of the ongoing

13  misconduct for years prior.

14       4.61   This is contrary to PROVIDENCE's representations to the public

15  where PROVIDENCE has historically, repeatedly, and currently set itself out to the

16  public in its promotional material as a caring, moral, health care provider with

17  integrity that puts patients' needs first (not its own financial gain). For example, it

18  has made the following public statements:

19       4.61.1   "We strive to do what's right for people, all people, but

20  especially the poor and vulnerable."

4.61.2    "We don't take the easiest answer, we look for the right answer."

4.61.3    "Integrity means you are always approaching things with a moral viewpoint.  In our case, a moral viewpoint that is adjusted for the benefit of the many, and not the few."

4.61.4    "At Providence we see more than patients, we see the life that pulses through us all. That's why we're dedicated to a holistic approach to medicine that employs not only the most advanced treatments to improve outcomes, but also puts compassion and humanity at the heart of every interaction."

4.61.5    "We use our voice to advocate for vulnerable populations and needed reforms in health care. We are also pursuing innovative ways to transform health care by keeping people healthy, and making our services more convenient, accessible and affordable for all. In an increasingly uncertain world, we are committed to high-quality, compassionate health care for everyone, regardless of coverage or ability to pay. We help people and communities benefit from the best health care model for the future – today."

4.61.6    "As a comprehensive health care organization, we are serving more people, advancing best practices, and continuing our more than 100-year tradition of serving the poor and vulnerable. Delivering services across seven states,

GILBERT LAW FIRM, P.S.
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

Providence is committed to touching millions of more lives and enhancing the health of the American West to transform care for the next generation and beyond."

4.61.7    "We set the highest standards for ourselves and our ministries. Through transformation and innovation, we strive to improve the *health* and quality of life…"

4.62    These representations were, and are, designed to entice the public to rely upon PROVIDENCE for medical care without reservation or concern about PROVIDENCE's care and protection of their best and highest health.

4.63    Rather than inform Plaintiffs and the public of the scheme at SMMC of surgeons conducting medically unnecessary surgeries for financial gain (described herein), PROVIDENCE concealed the scheme and maintained secrecy, to the extent of failing to report the neurosurgeons, including those under investigation, to proper authorities, and did so to maintain, at all costs, its squeaky-clean public persona, thus engaging in deceptive and unfair acts in order to market its health care services to new patients.

4.64    PROVIDENCE continued to engage in these deceptive, concealing, and unfair acts when it published a full-page advertisement on June 5, 2022, in the Walla Walla Union Bulletin that minimizes, misleads, and/or inaccurately describes the aforementioned events and PROVIDENCE's responsibility therein, including its

COMPLAINT
PAGE 27 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    fiduciary duties to patients, all while apologizing to patients for violating the "sacred

2    trust" that patients had placed in it.

3        4.65    The success of PROVIDENCE's concealment campaign is shown by

4    Dr. Yam's successfully-filed *qui tam* lawsuit against PROVIDENCE, which

5    required Dr. Yam to provide *non-public* information to the federal government about

6    PROVIDENCE's false claims in order to succeed. *See* 31 U.S.C. § 3730(e)(4)(A)

7    (suit upon publicly disclosed information subject to dismissal).  This is evidence that

8    PROVIDENCE's concealment campaign worked to prevent any public disclosure

9    even to its largest and most medically sophisticated payor (the federal government).

10   When then confronted by the state and federal governments about this breach of trust

11   in the *qui tam* litigation, PROVIDENCE denied any liability to its patients up

12   through settlement in April 2022. PROVIDENCE has continued to conceal

13   misconduct by maintaining to this day that no medically unnecessary surgery was

14   performed by the Doctors at PROVIDENCE[3] - a position which we now know is is

15   patently false.

16

17

18   _____

19   [3] Despite settling with the U.S. DOJ and State of Washington, and resolving claims filed in lawsuits and otherwise by

20   several patients claiming unnecessary/excessive surgeries by paying these claimants to resolve claims, they continue
     to deny any wrongdoing.

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

4.66   As residents of rural Oregon, Plaintiffs were unaware of the pending action or the settlement between PROVIDENCE and the USDOJ.  Plaintiffs first heard of the possibility that they had a right of action from hearing about this from others familiar with press releases, and from hearing about the filing of the class action lawsuit in June, 2022.

4.67   Regardless, the statutory limitations period was tolled on May 16, 2022 when a class action complaint was filed by three PROVIDENCE patients naming as defendants, PROVIDENCE, Drs. Jason Dreyer, DO, and Daniel Elskens, DO.  The Complaint alleged claims of violations of Washington State's Criminal Profiteering (RICO) statute; violations of the Washington Consumer Protection Act; Medical Negligence; Corporate Negligence; and other related claims. The filing of this Complaint tolled the statute of limitations for all claims available to putative class members, including Plaintiffs named herein, falling under the class protection pending a decision by the Court on certification.

4.68   As neurosurgery patients undergoing spine surgery, a typical patient, such as Plaintiffs here, would have no way of knowing: (1) if s/he was an appropriate candidate for surgery; (2) if s/he even needed the surgery / whether it was medically indicated; (3) whether the surgery that was conducted was the surgery s/he thought s/he was having; (4) whether s/he was billed for the surgery properly; (5) whether the doctor who did the surgery was honest; or (6) whether the surgical outcome was

GILBERT LAW FIRM, P.S.
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1   the result of substandard care; or whether s/he was properly billed for the procedure

2   that was performed. The only persons who could possibly verify any of this for these

3   patients is another spine surgeon and a coding/billing expert – someone with the

4   expertise to call out the errors in Dr. Dreyer's care.[4]

5       4.69   Plaintiffs' medical records and imaging have now been reviewed by

6   expert neurosurgeons and billing/coding experts who have determined:  they were

7   not optimal surgical candidates; their surgery(s) were unnecessary/excessive; the

8   unnecessary surgery(s) predictably failed as a result of substandard care; the

9   Plaintiffs and their insurers were billed for the unnecessary/excessive surgery(s);

10  and, resulting damage to the surgical area and surrounding tissues caused, or

11  exacerbated symptoms, including pervasive pain and discomfort, which are now

12  severe, debilitating, and permanent.

13      4.70   PROVIDENCE is now liable for the negligent actions set forth herein

14  that have resulted in permanent harm to Plaintiffs.

15

16

17  _____

18  [4] This has been verified by neurosurgeons involved in care of Dr. Dreyer's patients who have testified under oath that

19  absent input from a spine surgeon reviewing the medical records, imaging, and billing, a surgical patient of Dr. Dreyer's would never know if their surgery was necessary, appropriate, performed within the standard of care, or

20  billed properly.

COMPLAINT
PAGE 30 OF 61

## V.     CAUSE OF ACTION: MEDICAL NEGLIGENCE
### (RCW 7.70.010 et. seq)

5.1     Plaintiffs reallege and incorporate by reference paragraphs 1.1 through 4. 70 as fully set forth herein.

5.2     As a health care provider, PROVIDENCE, by and through Dr. Jason A. Dreyer, DO owed Plaintiffs a duty to comply with the standard of care.

5.3     A neurosurgeon's act of performing an unnecessary surgery in whole or in part is negligence *per se*. This said, and in the alternative, under the circumstances presented herein above, Dr. Jason A. Dreyer, DO, acting in the course and scope of his employment with and for PROVIDENCE, with PROVIDENCE's knowledge thereof, and for the purpose of profiting PROVIDENCE and Dr. Dreyer financially, did fail to exercise the degree of care, skill, and learning required of a reasonably prudent spine surgeon in the same profession or class in the State of Washington acting in the same or similar circumstances. Such conduct was a breach of the standard of care, constituting negligence.

5.4     Dr. Dreyer breached his duty of care in this case and was negligent by failing to meet the standard of care in the course and scope of his care of Plaintiffs by, without limitation:

5.4.1 Misleading the Plaintiffs by exaggerating symptoms, and objective findings;

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1          5.4.2 Forgoing conservative care options before recommending

2    surgery;

3          5.4.3  Performing surgery(s) despite obvious indications that Plaintiffs

4    were not good surgical candidates based upon known existing comorbidities and risk

5    factors;

6          5.4.4  Performing surgery(s) with a known disproportionate failure rate

7    when performed on an appropriate patient, without informing Plaintiffs (who were

8    not all appropriate surgical candidates) of the statistical risk of the surgery and

9    increased risk of failure due to comorbidities and other contributing risk factors –

10   which is just one element in a series of issues supporting the fact that Dr. Dreyer

11   failed in obtaining informed consent for the surgical procedure performed, and/or

12   exceeding the extent of informed consent given;

13         5.4.5  Performing surgery(s) that were not indicated or were excessive

14   for the indications;

15         5.4.6  Negligently recommending and using improper or excessive

16   medical device hardware instrumentation on Plaintiffs' spines when such

17   instrumentation was not medically necessary;

18         5.4.7  Using substandard surgical technique during the spinal surgeries;

19   resulting in permanent harm.

20

COMPLAINT
PAGE 32 OF 61

5.5    Dr. Dreyer's breach of the standard of care has directly, and proximately caused severe injuries and damages to Plaintiffs, each and all. For which damages and harm PROVIDENCE is now liable pursuant to the doctrine of respondeat superior.

## VI.    CAUSE OF ACTION FOR LACK OF CONSENT / INFORMED CONSENT

6.1    Plaintiffs reallege and incorporate by reference paragraphs 1.1 through 5.5 as through fully set forth herein.

6.2    In each surgery for each of the Plaintiffs, PROVIDENCE had a duty to inform Plaintiffs of all material facts, including risks and alternatives, that a reasonably prudent patient would need in order to make an informed decision on whether to consent to, or reject, a proposed course of treatment. A material fact is one to which a reasonably prudent person in the position of the patient would attach significance in deciding whether or not to submit to the proposed course of treatment.

6.3    As set forth herein above, despite fraudulent reporting in the record otherwise, Dr. Dreyer's informed consent "pep-talk" fell far below the standard of care for a neurosurgeon performing their duty to the patient under the circumstances present.

6.4    Dr. Dreyer failed to inform Plaintiffs of all material facts, including

GILBERT LAW FIRM, P.S.
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

risks and alternatives, and the option of no surgery at all, which a reasonably prudent patient would need in order to make an informed decision on whether to consent to, or reject, the proposed course of treatment, including but not limited to the risk of medically unnecessary procedures for which the motive was financial gain and not proper medical treatment.

6.5     Further, not only did Dr. Dreyer fail to adequately and appropriately educate Plaintiffs so they could make an informed decision regarding the proposed surgery, he exaggerated imaging studies when discussing studies with the Plaintiffs; exaggerated ramifications for refusal, including, but not limited to the threat of paralysis; and, mislead Plaintiffs as to his success rate in these surgeries, and the likelihood that they would enjoy a full recovery, and be pain free after the surgery.

6.6     This failure of Dr. Dreyer to properly educate the Plaintiffs to an extent that would allow them to make an informed decision regarding the surgery proposed, intertwined with the misrepresentations about their actual condition and need for surgery, and prevaricated prognosis if they agreed to surgery directly and proximately led to injury to Plaintiffs as set forth herein.

6.7     PROVIDENCE was on notice of concerns regarding Dr. Dreyer's propensity to misrepresent patient diagnosis and prognosis and his pre-surgical proclamations of pending doom and gloom if they did not have a surgery, and promises to fix patients and make them pain free if they agreed to allow him to

COMPLAINT
PAGE 34 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  perform a surgery. With this, PROVIDENCE took no action to assure that patients

2  were fully and properly educated on their medical condition and options for care;

3  and worse – secreted the fact that they were aware of concerns about unnecessary or

4  excessive surgeries were being performed by Dr. Dreyer.

5      6.8    As a result of these failures by Dr. Dreyer and PROVIDENCE in their

6  duties owed to Plaintiffs in respect to informed consent, Plaintiffs, each and all,

7  consented to surgeries that were unnecessary/excessive without proper education as

8  to necessity and ramifications of said surgeries.

9      6.9    PROVIDENCE is now liable to Plaintiffs for the failure to fully and

10  properly educate the Plaintiffs prior to asking them to consent to surgery.

11          **VII.  <u>NEGLIGENCE – Corporate and Vicarious</u>**

12      7.1    Plaintiffs reallege paragraphs 1.1 through 6.9 as though fully set forth

13  herein.

14      7.2    PROVIDENCE owed Plaintiffs a non-delegable duty of care to: assure

15  they received safe and appropriate care; assure equipment, supplies and services

16  necessary to meet the needs of Plaintiffs were immediately available; to provide

17  appropriate and safe care in accordance with their care needs; to adopt written

18  policies and procedures specific to surgical services; and to provide medical staff

19  that were qualified, trained, and supervised subject to the medical direction of the

20  hospital in order to assure Plaintiffs' safety.

GILBERT LAW FIRM, P.S.
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1      7.3     PROVIDENCE breached their duty owed to Plaintiffs by, without

2  limitation:

3          7.3.1  Failing to retain, train, and oversee qualified, competent medical

4  staff, executive management personnel, and administrative personnel.

5          7.3.2  Failing to provide adequate policies, or to take action on existing

6  policies, in order to protect Plaintiffs and others similarly situated seeking

7  neurosurgical services at SMMC.

8      7.4     In respect to the above, PROVIDENCE, individually, and by and

9  through the acts and omissions of its agents, representatives, employees and/or

10  ostensible agents, failed to exercise the degree of skill and learning of a reasonably

11  prudent medical care provider performing in the same or similar circumstances and

12  the failure to exercise such skill, care and learning was a proximate cause of the

13  injuries and damages sustained by Plaintiffs as set forth herein above.

14      7.5     PROVIDENCE is directly liable to the named plaintiffs under the

15  Doctrine of Corporate Negligence.

16      7.6     Additionally, PROVIDENCE is vicariously liable for the negligence of

17  its employees and agents subject to the doctrine of respondeat superior.

18      7.7     PROVIDENCE is now liable for the injuries and harm suffered by

19  Plaintiff as a result of its Negligence.

20

COMPLAINT
PAGE 36 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1

## VIII.  <u>CAUSE OF ACTION: Criminal Profiteering</u><br>[RCW 9A.82.100 and 9A.82.080]

2

8.1    Plaintiffs, reallege and incorporate by reference paragraphs 1.1 through

3

7.7 as if fully set forth herein.

4

8.2    Co-pays and individual out of pocket payments aside, each of the

5

Plaintiffs named herein were insured by government sponsored health insurance

6

programs such as Medicare / Medicaid.

7

8.3    Patients with government sponsored health insurance plans were

8

specifically targeted by Dr. Dreyer and PROVIDENCE in their scheme to defraud

9

insurance companies and patients to increase individual and corporate income.

10

8.4    This scheme directly and indirectly caused actual economic damage to

11

the Plaintiffs. Additionally, the scheme cause actual physical and emotional harm to

12

the Plaintiffs – to wit: in order to carry out the scheme, the unnecessary/excessive

13

surgery was proposed, pressure was applied to undergo the surgery, and the surgery

14

was conducted – for the purpose of billing the insurer for the fraudulent unnecessary

15

surgery.

16

8.5    Plaintiffs herein set forth their claim for damages resulting from

17

PROVIDENCE's violations of the Washington Criminal Profiteering Act,

18

9A.82.100 and 9A.82.080.

19

8.6    PROVIDECNE is a "person" within the meaning of RCW

20

9A.04.110(17), and under RCW 9A.82100(1)(a), and RCW 9A.82.080(1)(a).

**GILBERT LAW FIRM, P.S.**<br>421 W. Riverside, Ave., Suite 1400<br>Spokane, WA 99201<br>(509) 321-0750 • FAX (509) 343-3315

8.7     To carry out the profiteering scheme, PROVIDENCE had to complete a course of separate actions which were themselves offenses, and to keep these offenses and their relationship to each other concealed throughout.    First, PROVIDENCE, by and through its employees or agents, had to perform a patient surgery, which entailed convincing the patient to undergo the surgery without disclosing the scheme. Second, they had to create the false documentation necessary to present a convincing but false healthcare claim to state, federal and private insurers.    Finally, they had to deposit the proceeds of their false claims into their financial accounts without detection of their false origins to pay the ongoing and promotional costs of the profiteering scheme and to generate profits for themselves.

8.8     False claims in violation of RCW 48.80.030 fall at the center of this spectrum of profiteering activity, making it a common feature of the pattern of profiteering activity.    That statute, RCW 48.80.030, (defined as a profiteering act at RCW 9A.82.010(4)(hh)), states (emphasis added):

> (1) A person shall not make or present or cause to be made or presented to a health care payer a claim for a health care payment knowing the claim to be false.
> (2) No person shall knowingly present to a health care payer a claim for a health care payment that falsely represents that the goods or services were medically necessary in accordance with professionally accepted standards. Each claim that violates this subsection shall constitute a separate offense. ….
> (4) …. *A person shall not conceal or fail to disclose any information with intent* to obtain a health care payment to which the person or any other person is not entitled, *or to obtain a health care payment in an amount greater than*

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    *that which the person or any other person is entitled.*

2    8.9    The profiteering cycle (the course of conduct) begins with inducing

3    patients to undergo surgery for purposes of making false claims, to wit, false health

4    care claims, theft by deception, and/or money laundering, which themselves are acts

5    of profiteering under RCW 9A.82.010(4)(e), (t), and (aa).  The scheme subjected the

6    pre-surgery, the surgery, and the post-op services to increasing patient safety

7    endangerment and injury, without the consent of anyone but PROVIDENCE

8    employees or agents. Dr. Yam even chronicled the pattern of patient injuries that this

9    process caused by the Doctors, none of which was shared with the patients. After

10    receiving payments, PROVIDENCE then laundered their false claim proceeds

11    through their financial institutions, in violation of Washington and federal money

12    laundering laws (*see* 9A.83.020(1)((a) & (b); 18 U.S.C. § 1957(a)), as part of their

13    continuing pattern of profiteering activity under RCW 9A.82.010(4)(e), (t), and (aa).

14    They then used the resulting unlawful proceeds to promote the scheme and to profit

15    from it.

16    **A. Violation of RCW 9A.82.100[5]**

17    8.10    PROVIDENCE violated RCW 9A.82.100, as further alleged herein, by

18

19    _____

      [5] Under RCW 9A.82.100(13), "Private civil remedies under this section are supplemental and not mutually

20    exclusive.").

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

knowingly engaging in a pattern of criminal profiteering activity as set forth in the preceding paragraphs by engaging in the following acts of criminal profiteering activity for financial gain ("predicate acts"):

8.10.1 false health care claims as defined in RCW 48.80.030 (profiteering acts under RCW 9A.82.010(hh) and accomplice liability under RCW 9A.08.020);

8.10.2 Money laundering as defined in RCW 9A.83.020 and RCW9A.93.010(7) (RCW 9A.82.010(t)) with the specified unlawful activity being (i) false health care claims under RCW 48.80.030; (ii) theft by deception under RCW 9A.56 and accomplice liability under RCW 9A.08.020; and (iii) the federal offenses of scheming to commit or attempting to commit health care fraud under 18 U.S.C. § 1347, false claims under 18 U.S.C. § 287, and money laundering offenses for conducting transactions in criminally derived property under 18 U.S.C. § 1957(a) involving a Federal health care offense under 18 U.S.C. § 1956(7))(F) and 18 U.S.C. § 24(a), and aiding and abetting liability under 18 U.S.C. § 2.

8.10.3 Theft by deception as defined/applied in RCW 9A.56 (RCW 9A.82.010(e) and RCW 9A.08.020)

**B. Violation of RCW 9A82.080(1) & (2)**

8.11 PROVIDENCE violated RCW 9A82.080(1) & (2) and RCW 9A.08.020, as further alleged herein, by: (1) knowingly and willfully receiving the

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  proceeds, directly or  indirectly, from a pattern of criminal profiteering activity to

2  use or invest any part thereof in the acquisition of any title to, or any right, interest,

3  or equity in, real property or in the establishment or operation of the enterprise; and

4  (2) knowingly and willfully acquiring or maintaining, directly or indirectly, an

5  interest in or control of the enterprise or real property through a pattern of criminal

6  profiteering activity.

7      8.12   Plaintiffs have been injured in their persons, property and business as a

8  result of PROVIDENCE's knowing receipt of the proceeds from the pattern of

9  criminal profiteering activity and their subsequent use and investment, and

10  concealment of their use and investment, in the establishment or operation of the

11  enterprise of PROVIDENCE or the alternative enterprises, or for acquiring an

12  interest in real property, including for purposes of maintaining the enterprise(s) to

13  attract patients and submit further false health care claims.

14      **C. Violation of RCW 9A82.080(3)**

15      8.13   PROVIDENCE violated RCW 9A82.080(3) and RCW 9A.08.020, as

16  further alleged herein, by knowingly and willfully conspiring to commit the

17  foregoing criminal profiteering acts and violations of RCW 9A.82.080(1) & (2), in

18  violation of RCW 9A.82.080(3).

19      8.14   Each Plaintiff named herein is a person who sustained injury to his or

20  her person, business, or property by an act of criminal profiteering that is a part of a

COMPLAINT
PAGE 41 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

pattern of criminal profiteering activity under RCW 9A82.100, or by the offenses alleged in RCW 9A82.080(1), (2) & (3).

8.15   Plaintiffs' injuries were directly and proximately caused by PROVIDENCE's violations of the aforementioned offenses.

8.16   For each predicate offense, failure by PROVIDENCE to return funds obtained as described below is evidence of their intent to commit the predicate act(s) and are part of the pattern of criminal profiteering activity alleged herein.

**Predicate Acts**
**False Health Care Claims, RCW 48.80.030 and RCW 9A.08.020**

8.17   As set forth herein above, PROVIDENCE:

8.17.1   Presented and/or caused to be presented to health care payors, including federal health care payors, claims for a health care payment knowing the claim to be false or fictitious and/or that falsely represented that the goods or services were medically necessary in accordance with professionally standards and/or acted with deliberate indifference to whether the claims submitted were false or fictitious;

8.17.2   Concealed or failed to disclose information with intent to obtain health care payments to which they were not entitled, including but not limited to false certifications of medical necessity and failure to disclose noncompliance with  42 U.S.C. § 11133(a)(1) of the Healthcare Quality Improvement Act of 1986, and the NPDB guidelines.

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

8.18   These acts constituted false health care claims in violation of RCW 48.80.030 and 9A.08.020.

**Predicate Acts**
**Money Laundering, RCW 9A.83.020(1)(a)&(b), RCW 9A.83.020(5), and RCW 9A.08.020**

8.19   As set forth herein above: PROVIDENCE conducted or attempted to conduct financial transactions (to wit, receiving and depositing health care payments) involving the proceeds of specified unlawful activity (to wit, a scheme to submit false health care claims, in violation of RCW 48.80.030; theft by deception under RCW 9A.56.030 and 9A.56.040; the federal offenses of scheming to commit or attempt to commit health care fraud under 18 U.S.C. § 1347;[6] false claims under 18 U.S.C. § 287; for presenting a "false, fictitious, or fraudulent" claim;[7] and money

---

[6] The elements of a health care fraud claim are that the defendant: "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." *United States v. Anderson*, 67 F.4th 755, 770 (6th Cir. 2023) (quoting *United States v. Semrau*, 693 F.3d 510, 524 (6th Cir. 2012), *cert. denied,* 144 S. Ct. 552, 217 L. Ed. 2d 294 (2024). The defendant "need not have actual knowledge of this section or specific intent to commit a violation of this section." 18 U.S.C. § 1347(b).

[7] The elements of a false claims are: "(1) presenting a claim against the United States, and (2) knowing such claim to be false." *United States v. Causey*, 835 F.2d 1289, 1292 (9th Cir. 1987). Whether materiality is an element of a section 287 offense is unresolved in this Circuit, *U.S. v. St. Luke's Subacute Care Hosp., Inc.*, 178 Fed. Appx. 711, 713 (9th Cir. 2006) (citing *United States v. Taylor*, 66 F.3d 254, 255 (9th Cir. 1995)), and Plaintiffs submit not. *See, e.g., United States v. Saybolt*, 577 F.3d 195, 199-200 (3rd Cir. 2009) (materiality unnecessary).

COMPLAINT
PAGE 43 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

laundering offenses for conducting transactions in criminally derived property under 18 U.S.C. § 1957(a)[8] and promotional money laundering under 18 U.S.C. § 1956(a)(1)(A)(i)[9] involving a Federal health care offense as defined under 18 U.S.C. § 1956(7))(F) and 18 U.S.C. § 24(a), both as principals and as aiders and abettors under 18 U.S.C. § 2 and RCW 9A.08.020, knowing the property was proceeds of that specified unlawful activity and intending to promote the carrying on of specified unlawful activity.  The health care fraud specified unlawful activity (18 U.S.C. § 1347) consisted of hundreds of health care claims and therefore separate offenses by PROVIDENCE.  *United States v. Awad*, 551 F.3d 930, 937-938 (9th Cir. 2009) (each claim "chargeable as a separate count").  Each federal felony falls within Washington's money laundering statute's definition of specified unlawful activity

---

[8] The elements of a violation of 18 U.S.C. § 1957 are that a defendant (1) knowingly engaged or attempted to engage in a monetary transaction; (2)  knew the transaction involved criminally derived property; (3) that had a value greater than $10,000; and (4) was, in fact, derived from a specified unlawful activity. United States v. Rogers, 321 F.3d 1226, 1229 (9th Cir. 2003); 9th Cir.  Model Criminal Jury Instruction 8.150.

[9] The elements of promotional money laundering via 18 U.S.C. §1956(a)(1)(A) are that a defendant (1) "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity,"  (2) "conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity," (3) "with the intent to promote the carrying on of specified unlawful activity." *United States v. Wilkes*, 662 F.3d 524, 548 (9th Cir. 2011) (quoting *United States v. Cedeno-Perez*, 579 F.3d 54, 57 (1st Cir. 2009)).

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    under RCW 9A.83.010(7).[10] Further, the use of these unlawful proceeds to purchase

2    real estate violates RCW 9A.82.080(1), as does the investment of these proceeds in

3    the operation of the enterprises, including through medical staff compensation. In

4    addition, PROVIDENCE knew that the transactions with Plaintiffs' and the health

5    care payors (*i.e.*, Medicare) were designed in whole or in part to conceal or disguise

6    the nature, location, source, ownership, or control of the proceeds of specified

7    unlawful activity, and acted recklessly as to whether the property was proceeds of

8    specified unlawful activity, in violation of RCW 9A.83.020(1)(b).

9        8.20   In particular, the government and private health care insurers to which

10   PROVIDENCE presented, or caused to be presented, false health care claims

11   constitute health care benefit programs pursuant to 18 U.S.C. § 24(b).

12   PROVIDENCE knowingly and willfully executed or attempted to execute a scheme

13   or artifice to defraud these health care benefit programs, including but not limited to

14   Medicare, to obtain, by means of false or fraudulent pretenses or representations

15   money or property owned by, or under the custody or control of a health care benefit

16   program in connection with the delivery of, or payment for, health care benefits,

17   items, or services, in violation of 18 U.S.C. § 1347, 18 U.S.C. § 2, and RCW

18

19   _____

[10] Under Washington's money laundering statute, "Proceedings under this chapter shall be in addition to any other

20   criminal penalties, civil penalties, or forfeitures authorized under state law."  RCW 9A.83.020(6).

COMPLAINT
PAGE 45 OF 61

9A.08.020.  Actual knowledge is not required, *id.*, and PROVIDENCE's affirmative acts of concealment establish their knowledge.  Further, deliberate ignorance is sufficient because the known and warned circumstances of the voluminous sustained claim submissions in the late 90% percentiles nationally generating more than a third of PROVIDENCE's SMMC profits would have put any reasonable person on notice that there was a high probability that the conduct was illegal. PROVIDENCE's subsequent investment and use of these unlawful proceeds of health care fraud violates RCW 9A.83.020 and RCW 9A.08.020 and 18 U.S.C. § 1957(a).

8.21   These acts constitute money laundering in violation of RCW 9A.83.020(1)(a)&(b), RCW 9A.08.020, and 18 U.S.C. §§ 1957(a) & 2, with remedies see e.g., RCW 9A.83.020(5).

### Predicate Acts
### Theft by Deception, RCW 9A.56.030 & 9A.56.040 & 9A.08.020

8.22   As set forth herein above: PROVIDENCE, used a common scheme and plan knowingly to defraud Plaintiffs, the health insurance programs and/or governmental insurance entities (*e.g.*, Medicare/Medicaid), to wrongfully obtain property (including financial payments of false health care claims) by knowingly misrepresenting information about the health care provided, the medical necessity of it, and/or other improper issues, with the intent to deprive them of that property. Through a common scheme and plan of false pretenses and material omissions,

GILBERT LAW FIRM, P.S.
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

PROVIDENCE intended to, and did, deprive plaintiffs of their property, including payments of money and earned entitlement to health care insurance benefits.

8.23   The property or services described herein exceed $750 in value.

8.24   These acts constituted theft in the first or second degree, in violation of RCW 9A.56.030 & 9A.56.040 & 9A.08.020.

### Pattern of Related Profiteering Acts

8.25   PROVIDENCE engaged in a pattern of related criminal profiteering offenses, as described in this claim, repeatedly and continuously during the relevant time period, including three or more acts of profiteering violations of RCW 9A.56.030, RCW 48.80.030, and 9A.83.020(1)(a) & (b), and RCW 9A.08.020.

8.26   The multiple acts of profiteering activity had the same or similar intents, results, accomplices, victims, and methods of commission. Alternatively, they are otherwise interrelated by distinguishing characteristics, and these characteristics include a nexus to the same enterprises alleged herein of PROVIDENCE insurance payors, and/or governmental insurance entities. None of the acts of profiteering are isolated incidents.

8.27   The last such criminal profiteering activity occurred within five years after the prior incident of profiteering activity.

8.28   The criminal profiteering acts had similar purposes: *e.g.*, financial gain to PROVIDENCE.

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

8.29   Each of the PROVIDENCE's criminal profiteering acts yielded similar results and caused similar injuries to the Plaintiffs to their person, property and/or business, including damage to their physical being and their finances (both as, *inter alia,* to medical expenses and as to lost wages).

8.30   Because of PROVIDENCE's failures to disclose and affirmative acts of concealment, the pattern of criminal profiteering activity was not discoverable until April 12, 2022, when the U.S. Attorney publicly announced its investigative findings regarding PROVIDENCE, Dr. Dreyer and Dr. Elskens about the misconduct undertaken in combination to commit the profiteering alleged herein.

### The Enterprise

8.31   Although an enterprise is not a necessary element of a claim under either RCW 9A.82.100 **or** RCW 9A82.080, to the extent applicable, Plaintiffs allege the following enterprises.   An enterprise "includes any individual, sole proprietorship, partnership, corporation, business trust, or other profit or nonprofit legal entity, and includes any … group of individuals associated in fact although not a legal entity, and both illicit and licit enterprises and governmental and nongovernmental entities." RCW 9A.82.010(8

8.32   Enterprises consist of ongoing organizations, formal or informal, with various associates function as a continuing unit. *See Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn. 2d 820, 839, 355 P.3d 1100 (2015).

COMPLAINT
PAGE 48 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

8.33   The enterprises used in, and with a nexus to, the pattern of criminal profiteering activity under RCW 9A.82.100 include health care insurance providers for the Plaintiffs, including government health care insurers (*i.e.,* "governmental" entities U.S. Department of Health and Human Services (HHS); the Defense Health Agency (DHA), acting on behalf of the TRICARE Program; the Federal Health Benefits Program; the U.S. Department of Veterans Affairs (VA) which administers the VA Community Program, and the Washington Health Care Authority (HCA)) and private insurers whose payments promoted the medically unnecessary surgeries and related health care.

8.34   In the alternative, the enterprise used in, and with a nexus to, the pattern of criminal profiteering under RCW 9A.82.100 is PROVIDENCE. PROVIDNCE is a legal corporation or group of interrelated legal entities, making them an enterprise under RCW 9A.82.010(8).  Their association-in-fact had a common purpose of engaging in the aforesaid course of conduct, through an ongoing organization, and with associates functioning as continuing unit.

8.35   Independent motives and stakes of Dr. Dreyer are sufficient to form the basis of an independent conspirator.

8.36   Independent motives and stakes of JANE DOES and JOHN DOES, including in respect to concealment and failing to report, are sufficient to form the basis of an independent conspirator.

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

8.37   Each of these aforementioned enterprises is a legal entity, that is, a partnership, corporation, business trust, or other profit or nonprofit legal entity, governmental and nongovernmental entities, or an association or group of individuals associated in fact although not a legal entity within the meaning of RCW 9A.82.010(8).   Each alleged enterprise is an ongoing organization, formal or informal, with various associates functioning as a continuing unit.

## **Causation / Injury and Remedies**

8.38   As a direct and proximate result of PROVIDENCE's acts or omissions related to the RICO violation discussed herein, Plaintiffs have suffered injuries to their person, business, or property including but not limited to economic loss, pain, suffering, emotional distress, and injury to their physical being, including injuries compensable under RCW 9A.82.080 and 9A.82.100 and 9A.08.020. These injuries include damages from the investment of proceeds in, or for the maintenance, establishment, or operation of the enterprise under RCW 9A.82.080.

8.39   Plaintiffs are entitled to an award of damages including but not limited to: compensation for their actual damages; treble damages; a civil penalty of $250,000; injunctive, equitable, disgorgement, and forfeiture relief as set forth in RCW 9A.82.100(2), (3) and (4), and (4)(f); and costs and investigative and attorneys' fees as authorized by RCW 9A.82.100(1)(a).

8.40   The equitable relief includes, but is not limited to, disgorgement of ill-

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

gotten gains obtained from the profiteering in order to prevent, restrain, and deter future unlawful conduct by PROVIDENCE,[11] including by use of the bonus incentive compensation scheme.

## IX.    CAUSE OF ACTION: WASHINGTON CONSUMER PROTECTION ACT (RCW 19.86)

9.1    Plaintiffs re-allege paragraphs 1.1 through 8.40 as though fully set forth herein.

9.2    As set forth herein above, PROVIDENCE used false or deceiving marketing practices and otherwise engaged in unfair or deceptive acts or practices to entice Plaintiffs, and others similarly situated to engage in medical care services at PROVIDENCE. This constitutes an unfair or deceptive act or practice under RCW 19.86.

9.3    These acts or omissions of occurred in furtherance of trade or commerce.

9.4    The unfair or deceptive act or practice as set forth herein above constitute fraud which affects the public interest and violates the Washington Consumer Protection Act.

---

[11] *See e.g., Creel v. Says, 2022 WL 4490141 (E.D. Tex. Sept. 27, 2022)* (the law does not allow a person to profit from wrongdoing at the expense of another, and disgorgement can be a proper equitable remedy under RICO laws to, *inter alia*, prevent, restrain and deter future unlawful conduct).

COMPLAINT
PAGE 51 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

9.5    As a direct and proximate result of PROVIDENCE's violations of the Act, as set forth herein above, Plaintiffs suffered damages.

9.6    PROVIDENCE is now liable for those damages in an amount to be fully set forth at trial, but include damages to property and business, the trebling of same, and reasonable attorney fees and costs, including as allowed under RCW 9.35.060.

## X.    <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS and OUTRAGE</u>

10.1    Plaintiffs re-allege paragraphs 1.1 through 9.6 as though fully set forth herein.

10.2    PROVIDENCE owed Plaintiffs a common law duty not to engage in conduct that would cause the Plaintiffs severe emotional distress.

10.3    By misleading Plaintiffs, concealing evidence of negligent, violative, unethical, and fraudulent treatment practices, performing unnecessary and ill-advised medical procedures, and operating below the standard of care, PROVIDENCE negligently inflicted emotional distress upon Plaintiffs.

10.4    Additionally, PROVIDENCE's conduct as set forth herein constituted extreme and outrageous conduct that would shock the conscious of an ordinary, reasonable person; which outrageous conduct resulted in Plaintiffs suffering severe emotional distress.

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

# XI.  **LOSS OF CONSORTIUM**

11.1   Plaintiffs re-allege paragraphs 1.1 through 10.4 as though fully set forth herein.

11.2   As a direct and proximate result of PROVIDENCE's negligence as set forth hereinabove, Plaintiffs MIDGE HARRIS, MARCUS COLE, MELISSA NEHLS and STEPHAN HAHN have suffered a loss of love, affection, and consortium in respect to the marital relationship with their respective husbands and wives, and are thereby damaged and entitled to compensation for those damages.

# XII.  **DISCOVERY RULE**

12.1   Plaintiff re-alleges paragraphs 1.1 through 11.2 as fully set forth herein.

12.2   The Discovery Rule regarding statute of limitations applies to individual plaintiffs. *See Pickett v. Holland Am. Line-West*ours, 145 Wn. 2d 178, 188, 35 P.3d (2001).

12.3   As set forth herein above, Plaintiffs, as lay persons and common patients of PROVIDENCE and their employed neurosurgeon, Jason A. Dreyer, DO, had absolutely no way of ever discovering that the surgery performed on them by Dr. Dreyer was unnecessary/excessive or otherwise negligently performed; that they were not a medically suitable patient for the surgery to be performed; or that they were not billed properly for the surgery. As such, until the Government disclosed the existence of the pattern of fraudulent and negligent conduct in April, 2022,

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1  Plaintiffs would have had no way of ever knowing they had a right of claim against

2  PROVIDENCE.

3      12.4   For the claims under the criminal profiteering statute, discovery of the

4  pattern of criminal profiteering activity could not reasonably have occurred until the

5  public revelation of the Settlement Agreement in April 2022.  For all claims,

6  discovery was prevented due to intentional concealment and/or fraud and/or the

7  continuing care doctrine until the public revelation of the Settlement Agreement in

8  April 2022.

9      12.5   Here, through their acts and omissions in choosing to secret the

10  existence of Dr. Jason Dreyer's (and John/Jane Doe's) misconduct, PROVIDENCE

11  deprived Plaintiffs of the opportunity to discover the factual bases for these causes

12  of action until they were made public. Further tolling of the statute exists through

13  the filing of the class action lawsuit of which Plaintiffs were and are putative

14  members.

15  **XIII.  LIMITED WAIVER OF PHYSICIAN-PATIENT PRIVILEGE**

16      13.1   Plaintiffs re-allege paragraphs 1.1 through 12.5 as though fully set forth

17  herein.

18      13.2   Plaintiffs, pursuant to RCW 5.60.060(4)(b), as amended by the 1986

19  Washington Laws, Chapter 306, and reenacted and amended by Washington Laws

20  1989, Chapter 271, § 301, effective May 7, 1989, hereby waive the physician-patient

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1 privilege, effective 89 days after the filing of their Complaint, but only to the extent

2 required by law as a prerequisite to the assertion of a claim based on personal injuries

3 as explained below.  The scope of this waiver is as follows: this waiver applies only

4 to the privilege that exists under RCW 5.60.060(4)(b).  Specifically, Plaintiffs do not

5 waive the protection of any other source of physician patient confidentiality; this

6 waiver is subject to any limitations that have been imposed or may be imposed by

7 this court; this waiver does not grant PROVIDENCE any rights greater that those

8 conferred by the discovery provisions of the Superior Court Civil Rules.   In

9 particular, Plaintiffs do not consent to being discussed in private meetings or

10 conversations, outside the presence of their attorneys, nor do they consent to being

11 the subject of written correspondence with anyone other than their attorneys, except

12 in furtherance of medical treatment.  This waiver is made solely to comply with the

13 obligation required by the 1989 amendments to RCW 5.60.060 requiring such

14 waiver within ninety days of the filing of an action for personal injuries, is given for

15 no other purpose and is limited thereby.

16  13.3   Plaintiffs do not waive the physician-patient privilege in any respect

17 broader than that privilege as set forth in *Loudon v. Mhyre*, 110 Wn.2d 675 (1988).

18       **XIV.  VICARIOUS LIABILITY**

19  14.1   Plaintiffs reallege and incorporate by reference paragraphs 1.1 through

20 13.3 as if fully set forth herein.

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

14.2   Upon information and belief, employees and agents of PROVIDENCE, implicated in this cause of action were at all times relevant to this cause of action acting within their official capacity and scope of employment with and for PROVIDENCE.

14.3   Upon information and belief, physicians, employees, or agents alleged to have been negligent in the treatment/care of Plaintiff(s) in this case were either employees, agents in fact, or alternatively, ostensible agents.

14.4   PROVIDENCE is liable for injuries/damage suffered by Plaintiff(s) as a result of the intentional and negligent acts or omissions of their employees, owners, managers, agents, or ostensible agents under the theory of *Respondeat Superior.*

## XV.   BREACH OF FIDUCIARY DUTY / FRAUD / MISREPRESENTATION

15.1   Plaintiffs reallege and incorporate by reference paragraphs 1.1 through 14.4 as if fully set forth herein.

15.2   PROVIDENCE owed a fiduciary duty to their patients based upon their position of trust, confidence, greater expertise, duty of candor, and dependence. Specifically, PROVIDENCE had a fiduciary relationship to the Plaintiffs that gave rise to a duty of care, candor, and loyalty to them requiring PROVIDENCE to exercise the utmost good faith in dealing with Plaintiffs, including to fulfill their duty of loyalty to their patients.  As a result of this fiduciary duty, Plaintiffs had a

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

right to rely upon PROVIDENCE to perform their duties, and this eliminates any burden to establish individual reliance. *Walden v. Bank of New York*, 2024 WL 1556937. *14 (W.D. Pa. April 10, 2024) (fiduciary duty establishes reliance "as a matter of law"); *Wolfe v. Allstate*, 2011 WL 13160292, *3 (M.D. Pa. Jan. 10, 2011); *Seplow v. Closing Pro, Inc*., 717 F.Supp.3d 427, 437 (E.D. Pa. 2024); *Katlin v. Tremologlie*, 1999 WL 1577980 (Pa. Comm., June 29, 1999). Alternatively, it creates a presumption of reliance or justified a common-sense inference of reliance, especially given that PROVIDENCE violated this duty by failing to disclose their scheme to profit from false claims. *Waldrup v. Countrywide Financial Corporation,* 2018 WL 799156 (C.D. Cal. Feb. 6, 2018); *In re Morning Song Bird Food Litigation*, 320 F.R.D. 540,555 (S.D. Cal. 2017).

15.3   As set forth herein above, PROVIDENCE engaged in acts or omissions breaching these fiduciary duties, which directly and proximately caused damages to Plaintiffs.  Plaintiffs relied upon PROVIDENCE's fiduciary duties in following their advice on the need for medical treatment.

15.4   PROVIDENCE has statutory and common law duties to inform patients of risks of medical care, and all information needed for patients to make informed healthcare decisions.

15.5   PROVIDENCE was required to inform patients about the substantially increased risk of treatment by Dr. Dreyer due to his history of performing medically

GILBERT LAW FIRM, P.S.
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

unnecessary and otherwise improper procedures, their submission of false claims to insurers, and the financial incentives created by PROVIDENCE to promote false claims. Instead, PROVIDENCE failed to respond to repeated concerns about Dr. Dreyer dating back to the inception of his employment in 2013. Without this information, Plaintiffs were deprived of material facts to inform their treatment decisions.

15.6    PROVIDENCE knew that in withholding material facts, they were affirmatively misrepresenting information to Plaintiffs.

15.7    PROVIDENCE intended for Plaintiffs to rely on PROVIDENCE, and PROVIDENCE's concealments, to make informed healthcare decisions.

15.8    Upon information and belief, PROVIDENCE further engaged in false or misleading reporting in medical reports in an effort to conceal evidence of negligent, violative, unethical, and fraudulent treatment practices.

15.9    Plaintiffs did not know PROVIDENCE was concealing material facts and had the right to and did reasonably rely on PROVIDENCE to meet its statutory and common law duty to inform them of material facts. PROVIDENCE's failure to inform Plaintiffs, in the face of a legal duty to do so, constitutes fraud by concealment, as specifically identified herein.

15.10 PROVIDENCE committed fraud by, without limitation, submitting fraudulent medical billing to patients and insurers. Which fraudulent billing was

COMPLAINT
PAGE 58 OF 61

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

relied upon by Plaintiffs and their insurers as being true and correct. Which fraudulent billing was paid by Plaintiffs and their insurers – causing Plaintiffs' damages in an amount o be set forth at trial.

15.11 In all respects and without limitation, Plaintiffs suffered damages as a result of a reasonable reliance on PROVIDENCE's fraud and misrepresentations in an amount to be set forth at trial.

## XVI.  UNJUST ENRICHMENT

16.1   Plaintiffs reallege and incorporate by reference paragraphs 1.1 through 15.11 as if fully set forth herein.

16.2   With each and every payment received as described herein, PROVIDENCE received a benefit at a Plaintiff's expense, and the circumstances make it unjust for PROVIDENCE to retain the benefit without payment.

16.3   PROVIDENCE is liable for the damages to Plaintiff for unjust enrichment, including restitution and disgorgement.

## XVII. DISGORGEMENT

17.1   Plaintiffs reallege and incorporate by reference paragraphs 1.1 through 16.3 as if fully set forth herein.

17.2   In violation of their common law, equitable, and statutory duties, *see e.g.,* RCW 9A.82 *et seq* and RCW 9A.83.020(5) as alleged herein, PROVIDENCE profited from their wrongful conduct, and these profits must be disgorged in order

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

to deter the continuation of this wrongful conduct.

17.3   PROVIDENCE has obtained ill-gotten profits from its misconduct, including payments from federal and state governments, and from health insurers and the Plaintiffs named herein. These payments are proximately caused by the aforesaid violations, and can be reasonably approximated.

17.4   Disgorgement of these ill-gotten profits is necessary to deter further violations.

## XVIII.        PRAYER FOR RELIEF

18.1   Plaintiffs re-allege paragraphs 1.1 through 17.4 as though fully set forth herein.

18.2   NOW WHEREFORE, Plaintiffs pray for judgment against PROVIDENCE as follows:

18.2.1   For an award of all compensatory damages available under the law;

18.2.2   For an award of attorneys' fees and costs if available;

18.2.3   For an award of statutory, exemplary, or punitive damages if available;

18.2.4   For an award of prejudgment and post-judgment interest;

18.2.5   For private forfeiture relief, RCW 9A.82.100(4)(f);

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315

1    18.2.6   For restitution and/or disgorgement of ill-gotten gains obtained

2    as a result of PROVIDENCE's breach of their duties to the Plaintiffs, including

3    through criminal profiteering, breach of fiduciary or statutory duty, or benefitting

4    from unjust enrichment;

5    18.2.7   For such other and further relief, as the court deems just and

6    equitable.

7    18.3   Plaintiffs reserves the right to amend the Complaint pursuant to the

8    Court rules.

9    Demand for trial by Jury:   Plaintiff hereby demands that this case be tried to

10   a jury.

11   DATED THIS 11th day of March, 2024.

12

13   GILBERT LAW FIRM, P.S.

14

15   _____
     William A. Gilbert, WSBA #30592

16   Beth M. Bollinger, WSBA #26645
     Ashley Richards, WSBA #33047
     Attorneys for Plaintiffs

17

18

19

20

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
(509) 321-0750 • FAX (509) 343-3315