1    Jennifer K. Oetter, WA Bar No. 26140
Jennifer.Oetter@lewisbrisbois.com
2    Andrew S. Gard, WA Bar No. 62204
Andrew.Gard@lewisbrisbois.com
3    LEWIS BRISBOIS BISGAARD &
SMITH LLP
4    888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
5    Phone 971.712.2800
Fax 971.712.2801
6
Attorneys for Defendants
7
UNITED STATES DISTRICT COURT
8    EASTERN DISTRICT OF WASHINGTON
AT SPOKANE
9

10   TRADEEN GOOLD; CAL ALVIN          Civil Action No. 4:25-cv-5025-SAB
     HARRIS and MIDGE HARRIS,
11   husband and wife; CHRISTINA       **DECLARATION OF JENNIFER K.**
     COLE and MARCUS COLE, wife and    **OETTER IN SUPPORT OF**
12   husband; JEFFERY NEHLS and        **DEFENDANT PROVIDENCE ST.**
     MELISSA NEHLS, husband and wife;  **JOSEPH HEALTH; PROVIDENCE**
13   SANDEE HAHN and STEPHEN           **HEALTH & SERVICES -**
     HAHN wife and husband,            **WASHINGTON dba**
                                       **PROVIDENCE ST. MARY**
14           Plaintiffs,               **MEDICAL CENTER; and**
                                       **PROVIDENCE MEDICAL GROUP**
15       vs.                           **SOUTHEAST WASHINGTON**
                                       **NEUROSURGERY aka PMG**
16   Dr. JASON A. DRYER, DO, and       **NEUROSCIENCE INSTITUTE dba**
     LAURA DREYER, husband and wife    **PROVIDENCE'S REPLY IN**
17   and the marital community thereof; **SUPPORT OF MOTION TO**
     PROVIDENCE ST. JOSEPH            **DISMISS FIRST TO FILE**
18   HEALTH; PROVIDENCE HEALTH
     & SERVICES; PROVIDENCE
19   HEALTH & SERVICES -
     WASHINGTON d/b/a PROVIDENCE
20   ST. MARY MEDICAL CENTER; and
     PROVIDENCE MEDICAL GROUP
21   d/b/a PROVIDENCE MEDICAL
     GROUP SOUTHEAST
22   WASHINGTON NEUROSURGERY,
     a/ka PMG NEUROSCIENCE
23   INSTITUTE, WALLA WALLA a/k/a
     NEUROSCIENCE INSTITUTE d/b/a
24   PROVIDENCE, and JANE AND
     JOHN DOES 1 - 6,
25
             Defendants.
26

27

DECLARATION OF JENNIFER K. OETTER IN SUPPORT OF
DEFENDANT PROVIDENCE ST. JOSEPH HEALTH;
PROVIDENCE HEALTH & SERVICES - WASHINGTON dba
PROVIDENCE ST. MARY MEDICAL CENTER; and
PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON
NEUROSURGERY aka PMG NEUROSCIENCE INSTITUTE dba
PROVIDENCE'S REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST TO FILE - 1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
971.712.2800

I, Jennifer Oetter, declare under penalty of perjury in and for the State of Washington that the following is true and correct:

1.      I am an attorney with Lewis Brisbois Bisgaard & Smith, LLP, attorneys of record for Providence Defendants ("Defendants"). I am over the age of eighteen and competent to testify in the matters set forth below and do so based upon my personal knowledge.

2.      In the *Palmer* case, there are have been tens of discovery motions, including motions for sanctions filed by plaintiffs against all defendants.  When it was raised in the *Batten*  case, we chose to focus on the issues and not relitigate the motions and what led up to sanctions.  In this instance and because the sanctions are being weaponized to create a false impression, we'd offer the following very brief background.  One motion related to document production of hundreds of thousands of pages that required review of each page to determine if there was non-party patient information and redaction of the same.  That was often in emails.  We sought clarification of the discovery master's ruling in good faith and upon receipt began review and rolling production of the materials sought.  One motion related to the deposition of the CEO Emiritus of Providence.  There was a prior order that required plaintiff's counsel to confer if there was going to be [another] request of his deposition.  We believed that order was not filed and filed a motion for protective order.  The discovery master denied that order, we got notice at 4:30 p.m. for a deposition noted the next day (which was also a day unilaterally chosen by plaintiff's counsel and conflicted with defense counsel's calendar). That sanction order is pending review by the trial judge.

3.      In the previously filed related cases, plaintiffs' counsel has repeatedly sent voluminous requests for production, including requests for previously produced documents for other related cases. This tactic places undue burden upon

DECLARATION OF JENNIFER K. OETTER IN SUPPORT OF
DEFENDANT PROVIDENCE ST. JOSEPH HEALTH;
PROVIDENCE HEALTH & SERVICES - WASHINGTON dba
PROVIDENCE ST. MARY MEDICAL CENTER; and
PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON
NEUROSURGERY aka PMG NEUROSCIENCE INSTITUTE dba
PROVIDENCE'S REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST TO FILE - 2

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
971.712.2800

Defendant as it requires multiple rounds of duplicative work in reproducing documents already produced in other cases.

4.      Attached as **Exhibit A** is a true and correct copy of Plaintiffs' First Interrogatories and Requests for Production in *Angulo*.

5.      Attached as **Exhibit B** is a true and correct copy of Plaintiffs' Second Interrogatories and Requests for Production in *Angulo*.

6.      Attached as **Exhibit C** is a true and correct copy of Plaintiffs' Third Interrogatories and Requests for Production in *Angulo*.

7.      Attached as **Exhibit D** is a true and correct copy of Plaintiffs' Fourth Interrogatories and Requests for Production in *Angulo*.

8.      Attached as **Exhibit E** is a true and correct copy of Plaintiffs' Fifth Interrogatories and Requests for Production in *Angulo*.

**I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND THEY ARE MADE FOR USE AS EVIDENCE.**

DECLARATION OF JENNIFER K. OETTER IN SUPPORT OF
DEFENDANT PROVIDENCE ST. JOSEPH HEALTH;
PROVIDENCE HEALTH & SERVICES - WASHINGTON dba
PROVIDENCE ST. MARY MEDICAL CENTER; and
PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON
NEUROSURGERY aka PMG NEUROSCIENCE INSTITUTE dba
PROVIDENCE'S REPLY IN SUPPORT OF MOTION TO
DISMISS FIRST TO FILE - 3

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
971.712.2800

1

DATED this 11th day of June, 2025

LEWIS BRISBOIS BISGAARD & SMITH LLP

2

3

4

*s/ Jennifer K. Oetter*

Jennifer K. Oetter, WA Bar No. 26140

5

Jennifer.Oetter@lewisbrisbois.com

Andrew S. Gard, WA Bar No. 62204

6

Andrew.Gard@lewisbrisbois.com

7

888 SW Fifth Avenue, Suite 900

8

Portland, Oregon 97204-2025

Phone 971.712.2800

9

Fax 971.712.2801

10

11

*Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF JENNIFER K. OETTER IN SUPPORT OF DEFENDANT PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE HEALTH & SERVICES - WASHINGTON dba PROVIDENCE ST. MARY MEDICAL CENTER; and PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON NEUROSURGERY aka PMG NEUROSCIENCE INSTITUTE dba PROVIDENCE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST TO FILE - 4

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
971.712.2800



1  William A. Gilbert, WSBA #30592
   Gilbert Law Firm, P.S.
2  421 W. Riverside Ave, Suite 353
   Spokane, WA  99201
3  T: 509·321·0750
   F: 509·343·3315
4  E: bill@wagilbert.com
   Attorney for Plaintiffs

5

6

7

8
                                                    The Honorable Tana Lin
9
                  UNITED STATES DISTRICT COURT OF THE WESTERN
10                 DISTRICT OF WASHINGTON AT SEATTLE

11  CAROLINE ANGULO, a single person, ERIC     NO.  22-CV-00915-TL
    KELLER, a single person, and ISABEL
12  LINDSEY and CHARLES LINDSEY, a             **PLAINTIFFS' FIRST**
    married couple,                            **INTERROGATORIES AND**
13                                             **REQUESTS FOR PRODUCTION**
                          Plaintiffs.          **PROPOUNDED UPON**
14                                             **PROVIDENCE HEALTH &**
              v.                               **SERVICES WASHINGTON**
15  PROVIDENCE HEALTH & SERVICES
    WASHINGTON, a non-profit Washington
16  Corporation, also d/b/a PROVIDENCE ST.
    MARY MEDICAL CENTER; Dr. JASON A.
17  DREYER, DO, and JANE DOE DREYER,
    husband and wife and the marital community
18  thereof; Dr. DANIEL ELSKENS DO, and
    JANE DOE ELSKENS, husband and wife and
19  the marital community thereof; and
    JOHN/JANE DOES 1-10, and any marital
20  communities thereof,                       ORIGINAL

21                        Defendants.

22

23  NO. 22-CV-00915-TL                         **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' FIRST INTERROGATORIES AND      421 W. RIVERSIDE, AVE., SUITE 353
24  REQUESTS FOR PRODUCTION PROPOUNDED          SPOKANE, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES           T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 1 OF 24

EXHIBIT A
1 of 81

1    TO:    PROVIDENCE HEALTH & SERVICES WASHINGTON, a non-profit Washington

2           Corporation, Defendant; and

3    TO:    Kenneth E. Payson, Attorney for Defendant PROVIDENCE HEALTH & SERVICES

4           WASHINGTON.

5           Pursuant to Rules 26, 33 and 34 of the federal rules of civil procedure, plaintiffs submit the

6    following interrogatories and requests for production to be answered separately and fully under

7    oath within thirty (30) days from the date of service of said discovery upon you.[1] In answering this

8    discovery, you are required to furnish such information as is available to you, not merely the

9    information which you know of your personal knowledge. This is intended to include any

10   information in the possession of the agent or attorney or any investigator for the answering party.

11          Respond To:   William A. Gilbert
                          Gilbert Law Firm, P.S.
12                        421 W. Riverside, Ste 353
                          Spokane, WA 99201
13
14          Court rule requires the answers be preceded by questions and thus extra copies of these

15   interrogatories are being served upon you in order to expedite the answering thereof. You may

16   type your answers immediately after the question and thus avoid retyping the question.

17          If you claim that any information requested is protected from disclosure / discovery by

18   privilege or the work product doctrine you must identify such document or thing in your written

19   response, giving the following information: (a) date of document; (b) author of document; (c)

20   addressee of document; (d) nature of document; such as memorandum, letter, etc.; (e) anyone who

21

22   ──────────────────
     [1] For the First Set of Discovery, however, the interrogatory is optional. See Footnotes 2, 3.

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIRST INTERROGATORIES AND               421 W. RIVERSIDE, AVE., SUITE 353
24   REQUESTS FOR PRODUCTION PROPOUNDED                         SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES                   T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 2 OF 24

1  has received a copy of the document; and (f) the general subject matter of the document.  You

2  must preserve the information stated above as well as the documents themselves in a privilege log.

3  Failure to do so may lead to sanctions or other admonishment by the court.

4      **Protective Order:**  If you are claiming that any information responsive to these

5  Interrogatories and Requests for Production is confidential or contains information which the

6  defendant claims is proprietary or otherwise requires protection from disclosure to individuals or

7  entities other than the parties to this law suit please confirm with our office as soon as the necessity

8  of a protective order is recognized and an order as stipulated by the parties will be duly entered

9  with the Court prior to dissemination of the information.

10                                          **DEFINITIONS**

11      As used herein:

12      **Plaintiff(s)** means Caroline Angulo, Eric Keller, Isabel and Charles Lindsey, and the

13  putative class members known and unknown as identified and outlined in the Complaint.

14      **Defendant** means PROVIDENCE HEALTH & SERVICES WASHINGTON, including

15  d/b/a ST. MARY MEDICAL CENTER (collectively "PROVIDENCE"), its subsidiaries, its

16  employees, agents and assigns, including parties, attorneys, investigators, adjusters, insurance

17  companies or others standing in a representative relationship to Defendant PROVIDENCE.

18  PROVIDENCE also includes the defendant as identified in the Settlement Agreement (see Exhibit

19  2 of the Complaint filed in King County Superior Court on May 16, 2022 in the instant action and

20  as defined below) and as further described in its Corporate Disclosure Statement of June 30, 2022

21  (Docket Entry 2 in the federal removal action).

NO. 22-CV-00915-TL
PLAINTIFFS' FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 3 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **Settlement Agreement** is the agreement among PROVIDENCE as defined herein and the

2    United States and the State of Washington with an effective date of March 17, 2022, a copy of

3    which is attached as Exhibit 2 to the Complaint.

4    **Recital** refers to the paragraph enumeration within the "Factual Recitals" of the Settlement

5    Agreement.

6    **Yam Litigation** is federal case *Yam v. Providence Health and Services*, 4:20-cv-05004-

7    SMJ, which is identified in Recital G of the Settlement Agreement.

8    **Dates:** Relevant Time Period for discovery is June 2013 through November 2018, and

9    through to the present.

10   **You or Your**:  Means any party to whom these interrogatories are addressed, and your

11   attorneys, agents, employees, officers, representatives, adjusters, investigators, and any other

12   "person" who has knowledge of information, or is in possession of evidence or things, responsive

13   to any request herein.

14   **Knowledge or Information**:  Where knowledge or information in the possession of a party

15   is requested, such request includes knowledge of the party's agents, representatives, employees

16   and, unless privileged, his attorneys. When the answer is made by a corporate defendant, state the

17   name, address and title of the person supplying the information, and title of the person supplying

18   the information, and making the affidavit, and the source of his information.

19   **"Document(s)" or "Information"** means all materials within the scope of Federal Civil

20   Rule of Procedure 34, including, without limitation, all writings, drawings, graphs, charts,

21   photographs, sound recordings, images, and other data or data compilations, including

22   electronically-stored information (ESI), that are stored in any medium whatsoever from which

23
24   NO. 22-CV-00915-TL
     PLAINTIFFS' FIRST INTERROGATORIES AND
     REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 4 OF 24

     **GILBERT LAW FIRM, P.S.**
     421 W. RIVERSIDE, AVE., SUITE 353
     SPOKANE, WA 99201
     T: (509) 321-0750 • F: (509) 343-3315

1   information can be obtained either directly or, if necessary, after translation by the responding

2   party into a reasonably usable form, as well as any tangible things. A draft or non-identical copy

3   of a document is a separate document within the meaning of this term. A document includes all

4   appendices, schedules, exhibits, and other attachments. The term "Document(s)" or "Information"

5   includes but is not limited to emails and other types of messages (including but not limited to text,

6   instant, and direct messages), social media or other online content, data generated and stored by

7   devices connected to the Internet of Things (IoT), communications generated and stored in

8   workplace collaboration tools or ephemeral messaging applications, and all associated data and

9   metadata.

10      **Possession or Control**: The act or condition of having in, or taking into one's control or

11   having at one's disposal or the power or authority to access, guide, manage, direct or restrain any

12   document or thing.

13      **"Identify"** with respect to a person means to give, to the extent known, the person's (a)

14   full name; (b) present or last known address; and (c) current or last known place of employment.

15      **"Identify"** with respect to a document means to give, to the extent known, the (a) type of

16   document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and

17   recipient(s). In the alternative, the responding party may produce the documents, together with

18   identifying information sufficient to satisfy FRCP 33.

19      **"Identify"** with respect to communications means to give, to the extent known, (a) a

20   description of the substance of the communication; (b) the form of the communication (e.g.,

21   telephone, facsimile, email, etc.); (c) the identity of all parties to and/or present at the time of the

22   communication, as well as the full name, present or last known address, and the current or last

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 5 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    known place of employment of each person; (d) the identity of the person whom you contend

2    initiated the communication; and (e) the time, date, and place of the communication.

3         **"Person"** means any natural person or any legal entity, including, without limitation, any

4    business or governmental entity, organization, or association.

5         **Archive**:  Means the storage of any electronically produced material that has been down

6    loaded or backed-up from any of the Defendant's computers, or servers, or a copy of data on a

7    computer drive, or on a portion of a drive, or on any other storage media readily accessible that is

8    maintained for historical reference.

9         **Backup**:  A copy of active data, intended for use in restoration of data – the downloading

10   of information stored in computer or server hard drives, soft discs, CD ROMS, or tapes onto

11   storage discs, tapes or CD-ROM for the purpose of preserving that data.

12        **Computer**: Includes but is not limited to network servers, desktops, laptops, notebook

13   computers, employees' home computers, mainframes, PDAs, smartphones, BlackBerry devices

14   and pagers.

15        **Data**:  Any and all information stored on media that may be accessed by a computer.

16        **E-mail**: Means electronically transmitted messages sent from one computer to another

17   computer or a series of computers by a person or persons. Deleted E-mail data remains in the

18   computer system storage drive until the system runs out of space for the data. This material is

19   retrievable and any request for E-mail should include deleted material retrieved from the

20   computer's storage system.

21        **Electronic Message:** any form of electronic messaging, including but not limited to text,

22   instant; direct messages; Facebook Messenger; Snapchat; Twitter; etc.

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 6 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **Investigate**: Means to inquire into.  As in *inquiring* into allegations, concerns, or issues

2    presented by employees, agents or assigns of Defendant.

3    **Media**: Means the method of creating and storing electronically transmitted data; i.e. hard

4    drive; floppy disc; compact disc, server, etc.

5    **Metadata**: That electronic data associated with the responsive data – i.e.: ancillary

6    electronic information that relates to electronic data, such as information that would indicate

7    whether and when the responsive electronic data was created, edited, sent, received and/or opened.

8    Typically referred to as the data that provides all relevant information about the data (document).

9    **"Audit Trail" or "Audit Log":**  An audit log or audit trail is a security-relevant

10   chronological record that provides documentary evidence of, among other events, who accessed

11   an electronic medical record system, when they accessed it, from where, and exactly what they

12   did, such as enter new data, modify or remove existing data, view a part of the chart, obtain a

13   printout, etc. If "You" are using EMR / EHR records systems, you are required to have security

14   systems in place to access this information.

15   **"Revision History":** used to evaluate changes made in the medical record over time

16   (comparable to the Microsoft Word "track changes" feature). It is a chronological listing of

17   document versions or data versions showing the changes over time.

18   **Personnel Files**:  Documents, whether stored in physical form, such as in paper files or

19   electronically, such as on computer disk or hard drive or computer server, which in any way reflect

20   the employment history, employment status, work assignments, credentialing, compensation,

21   supervisory relationships, promotion, reassignment, discipline, and termination, for whatever

22   reason, of the named individual for which they are requested. Any request for personnel files

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 7 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    encompasses all files maintained at all locations that collectively reflect the employment history

2    of the named individual, including files maintained at locations others than Defendant's facilities

3    where the named individual was employed.

4        **Possession or Control**: The act or condition of having in, or taking into one's control or

5    having at one's disposal or the power or authority to access, guide, manage, direct or restrain any

6    document or thing.

7        **"Relate" "related"** or **"relating"** means, in addition to their usual and customary

8    meanings, concerning, referring to, reflecting, regarding, pertaining to, addressing, discussing,

9    alluding to, describing, evidencing, constituting, or otherwise having any logical or factual

10   connection with the subject matter addressed.

11       The words **"and"** and **"or"** shall be construed disjunctively or conjunctively to bring

12   within the scope of each interrogatory all responses which otherwise might be construed to be

13   outside the scope of an interrogatory.

14       The word **"any"** shall be construed to include "all" and vice versa.

15       The word **"each"** shall be construed to include "every" and vice versa.

16       **All other terms used herein are common usage. If you have any questions or concerns**

17   **about any definitions of any terms contained herein, please contact our office at once to clear**

18   **up any confusion.**

19       The undersigned certifies pursuant to the FRCP 26(g) that this Discovery is propounded in

20   good faith pursuant to the rules of civil procedure.

21   //

22   //

23   NO. 22-CV-00915-TL

24   PLAINTIFFS' FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 8 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 353
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    //

2    Dated this 2nd day of September 2022.

3    GILBERT LAW FIRM, P.S.

4

5    _____
     WILLIAM A. GILBERT, WSBA # 30592
6    Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    NO. 22-CV-00915-TL                           GILBERT LAW FIRM, P.S.
      PLAINTIFFS' FIRST INTERROGATORIES AND       421 W. RIVERSIDE, AVE., SUITE 353
24    REQUESTS FOR PRODUCTION PROPOUNDED                SPOKANE, WA 99201
      UPON PROVIDENCE HEALTH & SERVICES         T: (509) 321-0750 • F: (509) 343-3315
      WASHINGTON - PAGE 9 OF 24

1    **INTERROGATORIES AND REQUESTS FOR PRODUCTION**[2]

2    **INTERROGATORY NO. 1 (OPTIONAL AT THIS TIME):**[3] Please identify the name,

3    phone number, and address (including State of residence), of patients whose medical care is the

4    subject of the Settlement Agreement, including but not limited to the patients for whom restitution

5    was agreed in paragraph 1 of its Terms and Conditions and who reasonably will be identified via

6    the Settlement Agreement via identification of Unallowable Costs, and via the Corporate Integrity

7    Agreement, provided separately herein and labeled Exhibit A, that is part and parcel to the

8    Settlement Agreement.

9        **ANSWER:**

10

11

12

13

14

15

16

17

18

19

20    _____

21    [2] Through these pre-discovery conference requests, we seek only the production of documents as permitted under

22    FRCP 26(d)(2)(A). As an alternative, however, we also propound one optional interrogatory which would reduce the burdensomeness of compliance to the document requests while still producing the required information needed for consideration of your Removal of this action from state to federal court.

23    [3] See footnote 1 above.
    NO. 22-CV-00915-TL                                      **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' FIRST INTERROGATORIES AND                   421 W. RIVERSIDE, AVE., SUITE 353

24    REQUESTS FOR PRODUCTION PROPOUNDED                      SPOKANE, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES                        T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 10 OF 24

1     **REQUEST FOR PRODUCTION NO. 1:**  Produce documents containing the name,

2   phone number, and address (including State of residence) of patients whose medical care is the

3   subject of the Settlement Agreement, including but not limited to the patients for whom restitution

4   was agreed in paragraph 1 of its Terms and Conditions and who reasonably will be identified via

5   the Settlement Agreement via identification of Unallowable Costs, and via the Corporate Integrity

6   Agreement, provided separately herein and labeled Exhibit A, that is part and parcel to the

7   Settlement Agreement.

8     **RESPONSE:**

9

10

11

12

13     **REQUEST FOR PRODUCTION NO. 2:**  Produce documents containing the name,

14   phone number, and address (including State of residence) of patients whom the *qui tam* Plaintiffs

15   in the Yam litigation contended are subject to the Settlement Agreement.

16     **RESPONSE:**

17

18

19

20

21

22

23   NO. 22-CV-00915-TL                        **GILBERT LAW FIRM, P.S.**
       PLAINTIFFS' FIRST INTERROGATORIES AND      421 W. RIVERSIDE, AVE., SUITE 353

24   REQUESTS FOR PRODUCTION PROPOUNDED       SPOKANE, WA 99201
       UPON PROVIDENCE HEALTH & SERVICES      T: (509) 321-0750 • F: (509) 343-3315
       WASHINGTON - PAGE 11 OF 24

1    **REQUEST FOR PRODUCTION NO. 3:**  Produce documents relating to claims of the

2    State of Washington, the State of Washington Medicaid program, the Washington State

3    Department of Health, the Washington Attorney General, or the Washington Health Care

4    Authority, in the Yam litigation, including but not limited to those described in Recitals C, D, E,

5    and F of the Settlement Agreement.

6    **RESPONSE:**

7

8

9

10

11

12    **REQUEST FOR PRODUCTION NO. 4:**  Produce documents relating to the application

13    of the personal productivity metric described in Recital C on page 2 of the Settlement Agreement

14    to patients who are residents of Washington.

15    **RESPONSE:**

16

17

18

19

20

21

22

23    NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
      PLAINTIFFS' FIRST INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 353
24    REQUESTS FOR PRODUCTION PROPOUNDED                       SPOKANE, WA 99201
      UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
      WASHINGTON - PAGE 12 OF 24

1     **REQUEST FOR PRODUCTION NO. 5:** Produce documents relating to patients of Dr.

2   A (understood to be Jason A. Dreyer, DO) or Dr. B (understood to be Daniel Elskens) in Recitals

3   C and D of the Settlement Agreement who are residents of Washington.

4     **RESPONSE:**

5

6

7

8

9

10     **REQUEST FOR PRODUCTION NO. 6:** Produce documents relating to patients of Dr.

11   A (understood to be Jason A. Dreyer, DO) or Dr. B (understood to be Daniel Elskens) in Recitals

12   C and D of the Settlement Agreement who are residents of Oregon.

13     **RESPONSE:**

14

15

16

17

18

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 13 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **REQUEST FOR PRODUCTION NO. 7:** Produce documents relating to patients of Dr.

2    A (understood to be Jason A. Dreyer, DO) or Dr. B (understood to be Daniel Elskens) in Recitals

3    C and D of the Settlement Agreement who are residents of states other than Washington or Oregon

4    with the non-Washington, non-Oregon state identified.

5    **RESPONSE:**

6

7

8

9

10    **REQUEST FOR PRODUCTION NO. 8:**  Produce documents relating to the location of

11    the compliance programs or offices of Providence with responsibility for the conduct at issue in

12    the Settlement Agreement.

13    **RESPONSE:**

14

15

16

17

18

19

20

21

22

23    NO. 22-CV-00915-TL
     PLAINTIFFS' FIRST INTERROGATORIES AND
24    REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 14 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1  **REQUEST FOR PRODUCTION NO. 9:** Produce documents relating to the identity and

2  residence of all patients upon which Providence relies to claim under 28 U.S.C. § 1332(d)(5)(B)

3  that the proposed class has not less than 100 members.

4  **RESPONSE:**

5

6

7

8

9  **REQUEST FOR PRODUCTION NO. 10:** As the party who filed this Removal, it is your

10  evidentiary burden to prove the federal jurisdictional element of more than 100 members to this

11  class action litigation.  See e.g., 28 U.S.C. § 1332(d)(5)(b).  Please produce documents that support

12  your claim in your Removal petition that there are more than 100 class members in this class action

13  lawsuit.

14  **RESPONSE:**

15

16

17

18

19

20

21

22

23  NO. 22-CV-00915-TL                                       **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' FIRST INTERROGATORIES AND                   421 W. Riverside, Ave., Suite 353
24  REQUESTS FOR PRODUCTION PROPOUNDED                       Spokane, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES                        T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 15 OF 24

1      **REQUEST FOR PRODUCTION NO. 11:** Produce a copy of all documents and data you

2    provided to the US Attorney General, and WA Attorney General in response to, or in relationship

3    with the government's investigation into False Claims Act violations and other related claims as

4    pled in U.S. ex rel. David Yam, M.D. v. Providence Health & Services d/b/a Providence  St. Mary

5    Medical Center, filed in the Eastern District of Washington: Case No.: 4:20-cv-05004-SMJ.

6      **RESPONSE:**

7

8

9

10      **REQUEST FOR PRODUCTION NO. 12:** Produce a copy of all email related to medical

11    services covered in the Settlement Agreement, and/or related to the personal productivity metric

12    described in Recital C of the Settlement Agreement, that was sent to or received by any of the

13    following individuals on any Providence email account:

14      Dr. David Yam, M.D.;

15      Dr. Daniel Elskens, D.O.

16      Dr. Jason Dreyer, D.O.

17      Which email was sent or received at any time between June 1, 2013, and January 1, 2019.

18      **RESPONSE:**

19

20

21

22

23    NO. 22-CV-00915-TL                                      **GILBERT LAW FIRM, P.S.**
      PLAINTIFFS' FIRST INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 353
24    REQUESTS FOR PRODUCTION PROPOUNDED                       SPOKANE, WA 99201
      UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
      WASHINGTON - PAGE 16 OF 24

1    **REQUEST FOR PRODUCTION NO. 13:** Produce a copy of all email sent to or received

2  by Susan Blackburn on any Providence email account which email contains any of the following

3  terms in the heading or text of the email:

4    Yam;

5    Elskens;

6    Dreyer;

7    Negligence;

8    Malpractice;

9    Fraud;

10    MQAC.

11    Which email was sent or received at any time between June 1, 2013, and the date of this

12  request.

13    **RESPONSE:**

14

15

16

17

18

19

20

21

22

23    NO. 22-CV-00915-TL                                        **GILBERT LAW FIRM, P.S.**
       PLAINTIFFS' FIRST INTERROGATORIES AND               421 W. RIVERSIDE, AVE., SUITE 353
24    REQUESTS FOR PRODUCTION PROPOUNDED                     SPOKANE, WA 99201
       UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
       WASHINGTON - PAGE 17 OF 24

1    **REQUEST FOR PRODUCTION NO. 14:** Produce a copy of all email related to medical

2    services covered in the Settlement Agreement, and/or related to the personal productivity metric

3    described in Recital C of the Settlement Agreement that was sent or received on any Providence

4    email account that contains any of the following terms:

5    Yam;

6    Elskens;

7    Dreyer;

8    Blackburn;

9    Negligence;

10    Malpractice;

11    Fraud;

12    MQAC.

13    Which email was sent or received at any time between June 1, 2013, and the date of this

14    request.

15    **RESPONSE:**

16

17

18

19

20

21

22

23    NO. 22-CV-00915-TL
       PLAINTIFFS' FIRST INTERROGATORIES AND
24    REQUESTS FOR PRODUCTION PROPOUNDED
       UPON PROVIDENCE HEALTH & SERVICES
       WASHINGTON - PAGE 18 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **REQUEST FOR PRODUCTION NO. 15:** Produce a copy of any document or data

2    exchanged by / between you and any employee or agent of MultiCare which document or data was

3    exchanged with the purpose of discussing or illustrating the performance or employment of Dr.

4    Jason Dreyer while he was employed by Providence.

5    **RESPONSE:**

6

7

8

9    **REQUEST FOR PRODUCTION NO. 16:** Produce a copy of all documents and data you

10   provided to or received from the Washington State Department of Health or Medical Quality

11   Assurance Commission in any investigation by these agencies which targeted alleged substandard

12   care or ethical concerns involving any neurosurgeon employed by Providence St. Mary Medical

13   Center neurosurgeons.

14   This request is limited in time to January 1, 2014 and the date of this request.

15   **RESPONSE:**

16

17

18

19

20

21

22

23   NO. 22-CV-00915-TL

24   PLAINTIFFS' FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 19 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1     **REQUEST FOR PRODUCTION NO. 17:** Produce a copy of any letter or email sent to

2   any patient of Dr. Dreyer or Dr. Elskens which letter discussed concerns about care provided by

3   Dr. Elskens or Dr. Dreyer, or resolving any potential claims against these physicians or resolving

4   any potential claims with Providence St. Mary Medical Center evolving out of care by these

5   physicians.

6     **RESPONSE:**

7

8

9

10

11

12     **REQUEST FOR PRODUCTION NO. 18:** Produce a copy of any communication

13   relating to the personal productivity metric described in Recital C of the Settlement Agreement

14   that identify a patient or medical service being subject to the metric. This request is limited in time

15   to January 1, 2013 and the date of this request.

16     **RESPONSE:**

17

18

19

20

21

22

23   NO. 22-CV-00915-TL

24   PLAINTIFFS' FIRST INTERROGATORIES AND
     REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 20 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

## **CERTIFICATION OF COUNSEL**

2          ANSWERS AND OBJECTIONS SUBMITTED this ____ day of _____, 2022.

3   The undersigned attorney has read the foregoing responses to these discovery requests, and they

4   comply with FRCP 26(g).

5          DATED this _____ day of _____, 2022.

6                                          Davis Wright Tremaine LLP
                                           Attorneys for Defendant Providence Health &
7                                          Services – Washington

8                                          By s/ Kenneth E. Payson_____
                                           Kenneth E. Payson, WSBA #26369
9                                          Ross Siler, WSBA #46486
                                           Olivia Powar, WSBA #59504
10                                         920 Fifth Avenue, Suite 3300
                                           Seattle, WA 98104-1610
11                                         Telephone: (206) 622-3150
                                           Fax: (206) 757-7700
12                                         Email: kenpayson@dwt.com
                                           ross.siler@dwt.com
13                                         oliviapower@dwt.com

14                                         Lewis Brisbois Bisgaard & Smith LLP
                                           Attorneys for Defendant Providence Health &
15                                         Services – Washington

16                                         By s/ Jennifer K. Oetter
                                           Jennifer K. Oetter, WSBA #26140
17                                         888 SW Fifth Avenue, Suite 900
                                           Portland, OR 97204
18                                         Telephone: (971) 712-2800
                                           Fax: (971) 712-2801
19                                         Email: jennifer.oetter@lewisbrisbois.com

20

21

22

23   NO. 22-CV-00915-TL                                **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIRST INTERROGATORIES AND           421 W. Riverside, Ave., Suite 353
24   REQUESTS FOR PRODUCTION PROPOUNDED                    Spokane, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES           T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 21 OF 24

**CERTIFICATION OF DEFENDANT PROVIDENCE HEALTH & SERVICES WASHINGTON ALSO D/B/A ST MARY MEDICAL CENTER ("PROVIDENCE")**

_____, being first duly sworn on oath, deposes and says: I am the designated speaking agent for Providence Health & Services Washington with authority to bind Providence Health & Services Washington by my signature herein. I have read the above and foregoing responses thereto, know the contents thereof, have done my due diligence in researching the responses, and believe the same to be true, correct, and complete.

_____

SUBSCRIBED AND SWORN to before me this _____ Day of _____, 2022.

_____
(Notary Signature)
_____
(Type or Print Name of Notary)
NOTARY PUBLIC for the State of
Washington, residing at _____
My appointment expires: _____

NO. 22-CV-00915-TL
PLAINTIFFS' FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 22 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

## <u>CERTIFICATE OF SERVICE</u>

2          The undersigned hereby certifies under penalty of perjury under the laws of the state of

3    Washington, that I am now, and at all times material hereto, a citizen of the United States, a resident

4    of the state of Washington, over the age of 18 years, not a party to, nor interested in the above-

5    entitled action, and competent to be a witness herein. I caused to be served on this date the

6    foregoing document in the manner indicated to the parties listed below:

7    *Counsel for Defendants Dr. Jason A.*
     *Dreyer, DO and Jane Doe Dreyer:*

8

9    Ryan M. Beaudoin, WSBA #30598         ☐    **HAND DELIVERY**
     Jeffrey R. Galloway, WSBA #44059      ☐    **U.S. FIRST CLASS MAIL**
     WITHERSPOON  BRAJCICH  MCPHEE,        ☒    **U.S. PRIORITY MAIL**

10   PLLC                                  ☐    **ELECTRONIC MAIL**
     601 W Main, Ste. 1400

11   Spokane, WA 99201
     rbeaudoin@workwith.com

12   jgalloway@workwith.com

13   *Counsel  for  Defendants  Dr.  Daniel*
     *Elskens, DO and Jane Doe Elskens:*

14

15   Stephen M. Lamberson, WSBA #12985     ☐    **HAND DELIVERY**
     Ronald A. Van Wert, WSBA #32050       ☐    **U.S. FIRST CLASS MAIL**
     ETTER,  MCMAHON,  LAMBERSON,          ☒    **U.S. PRIORITY MAIL**

16   VAN WERT & ORESKOVICH, P.C.           ☐    **ELECTRONIC MAIL**
     618 W. Riverside Ave., Ste. 210

17   Spokane, WA 99201
     lambo@ettermcmahon.com

18   rvw@ettermcmahon.com

19

20

21

22

23   NO. 22-CV-00915-TL                          **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIRST INTERROGATORIES AND       421 W. RIVERSIDE, AVE., SUITE 353

24   REQUESTS FOR PRODUCTION PROPOUNDED           SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES           T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 23 OF 24

1

*Co-Counsel for Defendant Providence Health & Services Washington:*

2

3   Kenneth E. Payson, WSBA #26369          ☐   **HAND DELIVERY**
    Ross Siler, WSBA #46486                  ☐   **U.S. FIRST CLASS MAIL**
    Olivia Powar, WSBA #59504                ☒   **U.S. PRIORITY MAIL**

4   DAVIS WRIGHT TREMAINE LLP                ☐   **ELECTRONIC MAIL**
    920 Fifth Ave., Ste. 3300

5   Seattle, WA 98104-1610
    kenpayson@dwt.com

6   ross.siler@dwt.com
    oliviapowar@dwt.com

7

8   *Co-Counsel for Defendant Providence Health & Services Washington:*

9   Jennifer K. Oetter, WSBA #26140          ☐   **HAND DELIVERY**
    LEWIS BRISBOIS BISGAARD & SMITH          ☐   **U.S. FIRST CLASS MAIL**

10  LLP                                      ☒   **U.S. PRIORITY MAIL**
    888 SW Fifth Ave., Ste. 900                  **ELECTRONIC MAIL**

11  Portland, OR 97204-2025
    jennifer.oetter@lewisbrisbois.com

12
    DATED this 2nd day of September 2022.

13

14

15                                          _____
                                            JOEL CHAVEZ, Case Manager

16

17

18

19

20

21

22

23  NO. 22-CV-00915-TL                          **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' FIRST INTERROGATORIES AND       421 W. RIVERSIDE, AVE., SUITE 353
24  REQUESTS FOR PRODUCTION PROPOUNDED          SPOKANE, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES           T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 24 OF 24

**EXHIBIT A**

**CORPORATE INTEGRITY AGREEMENT
BETWEEN THE
OFFICE OF INSPECTOR GENERAL
OF THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES
AND
PROVIDENCE HEALTH & SERVICES-WASHINGTON**

## I.   <u>PREAMBLE</u>

Providence Health & Services-Washington (Providence) hereby enters into this Corporate Integrity Agreement (CIA) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS) to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) (Federal health care program requirements). Contemporaneously with this CIA, Providence is entering into a Settlement Agreement with the United States.

Prior to the Effective Date as defined below, Providence represents that it established compliance, quality assurance, and performance improvement programs that include the following elements: a Compliance Officer, Regional Compliance Directors and Hospital Compliance Leads, a Compliance Committee, written compliance standards and policies, a Risk Assessment and Internal Review Process, a Disclosure Program that includes a process for anonymous disclosure and emphasizes non-retaliation and non-retribution, a screening process and policy regarding ineligible persons, a process for identifying and addressing Overpayments, a Chief Quality Officer, regional quality officers, a Quality Division, a Quality Operations Committee, and Patient Safety, Quality Assessment, Performance Improvement, and Patient Safety programs (collectively "Compliance, Quality and Patient Safety Program"). Providence may modify its Compliance, Quality and Patient Safety Program as appropriate. However, at a minimum, Providence shall ensure that during the term of this CIA, it shall maintain a Compliance, Quality and Patient Safety Program in accordance with the obligations set forth in the CIA.

II.    **TERM AND SCOPE OF THE CIA**

A.    The Effective Date of this CIA shall be the date on which the final signatory of the CIA executes this CIA.  The term of this CIA shall be five years from the Effective Date.  Each one-year period, beginning with the one-year period following the Effective Date, shall be referred to as a "Reporting Period."

B.    This CIA applies to any hospital in which Providence has an ownership or control interest, as defined in 42 U.S.C. § 1320a -3(a)(3), and any hospital that Providence manages or operates ("Providence Hospital(s)").

C.    Sections VII, X, and XI shall expire no later than 120 days after OIG's receipt of:  (1) Providence's final Annual Report; or (2) any additional materials submitted by Providence pursuant to OIG's request, whichever is later.

D.    For purposes of this CIA, the term "Covered Persons" includes:

1.    all owners, officers, directors of Providence, and any employees of Providence who have oversight of Providence Hospitals;

2.    all owners, officers, directors, and employees of Providence Hospitals;

3.    All contractors, subcontractors, agents, and other persons who furnish patient care items or services or who perform billing or coding functions on behalf of Providence Hospitals excluding vendors whose sole connection with Providence Hospitals is selling or otherwise providing medical supplies or equipment to Providence Hospitals; and

4.    All physicians and other non-physician practitioners who are members of Providence Hospitals' active medical staffs.

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

### III.  <u>COMPLIANCE PROGRAM REQUIREMENTS</u>

Providence shall establish and maintain a compliance program that includes the following elements:

#### A.    <u>Compliance Management and Oversight</u>

1.  *Compliance Officer*.  Within 90 days after the Effective Date, Providence shall appoint a Compliance Officer and shall maintain a Compliance Officer for the term of the CIA.  The Compliance Officer must have sufficient compliance and quality assurance experience to effectively oversee the implementation of the requirements of this CIA.  The Compliance Officer shall be an employee and a member of senior management of Providence, shall report directly to the Chief Executive Officer of Providence, and shall not be or be subordinate to the General Counsel, Chief Financial Officer, or Chief Operating Officer, or have any responsibilities that involve acting in any capacity as legal counsel or supervising legal counsel functions for Providence.  The Compliance Officer shall be responsible for, without limitation:

    a.    developing and implementing policies, procedures, and practices designed to ensure compliance with the requirements set forth in this CIA and Federal health care program requirements;

    b.    making periodic (at least quarterly) reports regarding compliance matters in person to the Board of Directors of Providence (Board), or the Board CIA Committee, and shall be authorized to report on such matters to the Board or Board CIA Committee at any time.  Written documentation of the Compliance Officer's reports to the Board or Board CIA Committee shall be made available to OIG upon request; and

    c.    Monitoring the day-to-day compliance activities engaged in by Providence and any reporting requirements created under this CIA, and ensuring that Providence is appropriately identifying and correcting quality of care problems.

3

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

Any noncompliance job responsibilities of the Compliance Officer shall be limited and must not interfere with the Compliance Officer's ability to perform the duties outlined in this CIA.

Providence shall report to OIG, in writing, any changes in the identity of the Compliance Officer, or any actions or changes that would affect the Compliance Officer's ability to perform the duties necessary to meet the requirements in this CIA, within five business days after such a change.

2. *Regional Compliance Directors and Hospital Compliance Leads*. Providence shall appoint and maintain during the term of the CIA individuals to serve as Regional Compliance Directors as well as Hospital Compliance Leads The Regional Compliance Directors shall be responsible for implementing policies, procedures, and practices designed to ensure compliance with requirements set forth in this CIA and with Federal health care program requirements for the applicable regional office, and shall monitor the day-to-day compliance activities of the applicable regional office. Each Hospital Compliance Lead shall be responsible for implementing policies, procedures, and practices designed to ensure compliance with requirements set forth in this CIA and with Federal health care program requirements for the applicable hospital, and shall monitor the day-to-day compliance activities of the applicable hospital. The Regional Compliance Directors shall be members of the Compliance Department and shall be independent from Providence's Legal Department. The Hospital Compliance Leads shall report to the assigned Regional Compliance Directors for ethics and compliance purposes, and shall be independent from Providence's Legal Department.

Providence shall report to OIG, in writing, any changes in the identity of the Regional Compliance Directors or Hospital Compliance Leads, or any actions or changes that would affect the Regional Compliance Directors' or Hospital Compliance Leads' ability to perform the duties necessary to meet the requirements in this CIA, within five business days after such a change.

3. *Chief Quality Officer*. Within 90 days of the Effective Date, Providence will appoint a Covered Person to serve as its Chief Quality Officer. Providence shall maintain, during the term of the CIA, a Covered Person to serve as its Chief Quality Officer. The Chief Quality Officer shall be responsible for developing and implementing policies, procedures, and practices designed to ensure compliance with professionally recognized standards of care and patient safety. The Chief Quality Officer shall be a member of senior management of

4

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

Providence, shall report directly to the Chief Executive Officer of Providence, shall make periodic (at least quarterly) reports regarding quality assurance matters directly to the Board or Board CIA Committee and shall be authorized to report on such matters to the Board or Board CIA Committee, at any time. The Chief Quality Officer shall not be subordinate to the General Counsel or Chief Financial Officer. The Chief Quality Officer shall be responsible for monitoring the day to day quality of care and patient safety activities engaged in by Providence.

Any non-quality assurance job responsibilities of the Chief Quality Officer shall be limited and must not interfere with the Chief Quality Officer's ability to perform the activity outlined in this CIA. The Chief Quality Officer shall have sufficient clinical quality assurance experience to perform the responsibilities described in this paragraph.

Providence shall report to OIG, in writing, any change in the identity of the Chief Quality Officer, or any actions or changes that would affect the Chief Quality Officer's ability to perform the duties necessary to meet the obligations in this CIA, within five business days after such a change.

4.    *Clinical Quality Department*. Providence shall maintain a Clinical Quality Department comprised of the Chief Quality Officer, and other clinical quality staff. The Chief Quality Officer will have responsibility for the Clinical Quality Department. The Clinical Quality Department is responsible for monitoring: 1) clinical quality at Providence, 2) the Quality of Care and Patient Safety Program, 3) physician credentialing, privileging, and peer review programs, 4) evidence-based medicine programs, 5) standards of clinical excellence, 6) utilization management and review, and 7) other quality performance standards.

5.    *Quality of Care and Patient Safety Program*. The Clinical Quality Department shall ensure that, within 90 days after the Effective Date, Providence establishes and implements a program for performing internal quality audits and reviews (hereinafter "Quality of Care and Patient Safety Program"). The Quality of Care and Patient Safety Program shall make findings as to:

a.    Whether the patients at Providence are receiving the quality of care consistent with professionally recognized standards of care and any other applicable Federal and State statutes, regulations, and directives;

b.    whether Providence is effectively reviewing quality of

5

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

care and patient safety related complaints and/or incidents and completing root cause analyses; and

c.    whether Providence's action plans in response to identified quality of care and patient safety problems are appropriate, timely, implemented, and enforced.

6.    *Compliance Committee*. Within 90 days after the Effective Date, Providence shall appoint a Compliance Committee.

a.    *General Responsibilities*. The Compliance Committee shall, at a minimum, include the Compliance Officer and other members of senior management necessary to meet the requirements of this CIA (e.g., representatives from among senior personnel responsible for clinical operations and quality of care, human resources, operations, including the corporate Medical Director). The Compliance Officer shall chair the Compliance Committee and the Compliance Committee shall support the Compliance Officer in fulfilling his/her/their responsibilities (e.g., developing and implementing policies, procedures, and practices designed to ensure compliance with the requirements set forth in this CIA, Federal health care program requirements, and professionally recognized standards of care; monitoring the day-to-day compliance activities engaged in by Providence; monitoring any reporting requirements created under this CIA; and ensuring that Providence is appropriately identifying and correcting quality of care problems).

The Compliance Committee shall meet, at a minimum, every month. For each scheduled Compliance Committee meeting, Providence Chief Quality Officer or their designee shall report to the Compliance Committee on the adequacy of care being provided by Providence. The minutes of the Compliance Committee meetings shall be made available to the OIG upon request.

6

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

Providence shall report to OIG, in writing, any actions or changes that would affect the Compliance Committee's ability to perform the duties necessary to meet the requirements in this CIA, within 15 business days after such a change.

7.    *Board Oversight*.  The Board or Board CIA Committee,  shall be responsible for the review and oversight of matters related to compliance with the requirements of this CIA, Federal health care program requirements, and professionally recognized standards of care.  The Board or Board CIA Committee must include independent (i.e., non-employee and non-executive) members.  The Board or Board CIA Committee shall be readily available to the Compliance Officer to respond to any issues or questions that might arise.

The Board or Board CIA Committee shall, at a minimum, be responsible for the following:

    a.    meeting at least quarterly to review and oversee Providence's Compliance Program, including, but not limited to, the performance of the Compliance Officer and the Compliance Committee;

    b.    reviewing and overseeing Providence's Quality Program, including but not limited to the performance of the Chief Quality Officer and the Clinical Quality Department;

    c.    ensuring that Providence adopts and implements policies, procedures, and practices designed to ensure compliance with:

        i.    the requirements set forth in this CIA and Federal health care program requirements

        ii.    professionally recognized standards of care and patient safety;

        iii.    credentialing, privileging, and peer review requirements.

7

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

d.      for each Reporting Period of the CIA, adopting a resolution, signed by each member of the Board or Board CIA Committee summarizing its review and oversight of Providence's compliance with the requirements of this CIA, Federal health care program requirements, professionally recognized standards of care and patient safety, and credentialing, privileging, and peer review requirements.

At a minimum, the resolution shall include the following language:

"The Board [ or Board CIA Committee] has made a reasonable inquiry into the operations of Providence's Compliance Program, including the performance of the Compliance Officer, Regional Compliance Directors , the Compliance Committee, the Chief Quality Officer, and the Quality of Care and Patient Safety Program.  The Board [or Board CIA Committee] has also provided oversight on professionally recognized standards of care, patient safety, credentialing, privileging, and peer review issues.  Based on its inquiry and review, the Board [or Board CIA Committee] has concluded that, to the best of its knowledge, Providence has implemented effective Compliance, Quality of Care, and Patient Safety Programs to meet the requirements of the CIA, Federal health care program requirements, and professionally recognized standards of care and patient safety."

If the Board or Board CIA Committee is unable to provide such a conclusion in the resolution, the Board or Board CIA Committee shall include in the resolution a written explanation of the reasons why it is unable to provide the conclusion and the steps it is taking to implement effective Compliance, Quality of Care, and Patient Safety Program at Providence.

Providence shall report to OIG, in writing, any changes in the composition of the Board or Board CIA Committee, or any actions or changes that would affect the Board or Board CIA Committee's ability to perform the duties necessary to meet the requirements in this CIA, within 15 business days after such a change.

8

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

8.    *Management Certifications.*  In addition to the responsibilities set forth in this CIA for all Covered Persons, certain Providence employees (Certifying Employees) are expected to monitor and oversee activities within their areas of authority and shall annually certify that the applicable Providence department is in compliance with applicable Federal health care program requirements, with the requirements of this CIA, and with professionally recognized standards of healthcare and patient safety.  These Certifying Employees shall include, at a minimum, the following: Providence's Chief Executive Officer, Chief Medical Officers, and Chief Nursing Officers.  For each Reporting Period, each Certifying Employee shall sign a certification that states:

"I have been trained on and understand the compliance requirements and responsibilities as they relate to [insert name of department], an area under my supervision.  My job responsibilities include ensuring compliance with regard to the [insert name of department] with all applicable Federal health care program requirements, requirements of the Corporate Integrity Agreement, and Providence policies, and I have taken steps to promote such compliance.  To the best of my knowledge, the [insert name of department] of Providence is in compliance with all applicable Federal health care program requirements, the requirements of the Corporate Integrity Agreement, and all professionally recognized standards of care and patient safety.  I understand that this certification is being provided to and relied upon by the United States."

If any Certifying Employee is unable to provide such a certification, the Certifying Employee shall provide a written explanation of the reasons why he/she/they is/are unable to provide the certification outlined above.

Within 90 days after the Effective Date, Providence shall develop and implement a written process for Certifying Employees to follow for the purpose of completing the certification required by this section (e.g., reports that must be reviewed, assessments that must be completed, sub-certifications that must be obtained, etc. prior to the Certifying Employee making the required certification).

B.    Written Standards

Within 90 days after the Effective Date, Providence shall develop and implement Policies and Procedures regarding the operation of Providence's Compliance Program, Clinical Quality Department, and Quality of Care and Patient Safety Program, including the compliance program requirements outlined

9

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

in this CIA and Providence's compliance with Federal health care program requirements and professionally recognized standards of care and patient safety. Throughout the term of this CIA, Provider shall enforce its Policies and Procedures and shall make compliance with them an element of evaluating the performance of all employees.

      1.    *Clinical Quality Standards*.  Providence's Policies and Procedures shall also be designed to promote the delivery of patient care items or services at Providence that meet professionally recognized standards of care and patient safety, and that are reasonable and appropriate to the needs of Federal health care program beneficiaries.  These Policies and Procedures shall include the following:

    a.    ensuring the appropriate documentation of medical records;

    b.    measuring, analyzing, and tracking quality indicators, including adverse patient events, and other aspects of performance that relate to processes of care, hospital services, and operations, and to identify opportunities for improvement and changes that will lead to improvement;

    c.    setting priorities for performance improvement activities that:  (1) focus on high risk, high-volume, or problem-prone areas; (2) consider the incidence, prevalence, and severity of problems in those areas; and (3) affect health outcomes, patient safety, and quality of care;

    d.    tracking medical errors and adverse patient events, analyzing their causes, and implementing preventive actions and mechanism that include feedback and learning throughout Providence;

    e.    conducting quality assessment and performance improvement projects, including periodic clinical quality audits;

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

f.   periodically reporting quality assessment and performance improvement data to the Quality of Care and Patient Safety Program;

g.   collecting, verifying, and assessing current licensure, education, relevant training, experience, ability, and current competence to perform requested privileges;

h.   monitoring practitioners with current privileges by the review of clinical practice patterns, ongoing case review, proctoring, and discussion with other individuals involved in the care of patients;

i.   implementing and monitoring medical staff peer review; and

j.   implementing effective responses when clinical quality problems are discovered.

All Policies and Procedures shall be made available to OIG upon request.

C.   <u>Training and Education</u>

Within 90 days after the Effective Date, Providence shall develop a written plan (Training Plan) that outlines the steps that Providence will take to ensure that all Covered Persons receive the following training.

1.   *Covered Persons Training.*  Covered Persons shall receive:

a.   at least annual training regarding Providence's CIA requirements and Compliance Program, and

b.   adequate on-going training regarding:

i.   policies, procedures, and other requirements applicable to the documentation of medical records;

11

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

ii.    the policies implemented pursuant to Section III.B of this CIA, as appropriate for the job category of each Covered Person;

iii.    policies, procedures, and other requirements relating to clinical quality, including but not limited to comprehensive clinical audits, physician credentialing, privileging, and peer review programs, evidence based medicine programs, standards of clinical excellence, utilization management and review, and clinical quality measures;

iv.    the personal obligation of each individual to ensure that care is appropriate and meets professionally recognized standards of care; and

v.    the reporting requirements and legal sanctions for violations of the Federal health care program requirements.

The Training Plan shall also include training to address quality of care problems identified by the Compliance Committee and Quality of Care and Patient Safety Program. In determining what training should be performed, the Compliance Officer, Chief Quality Officer, and Compliance Committee shall review the complaints received, and the findings, reports, and recommendations of the Quality Review Organization required under Section III.D of this CIA.

Training required in this section shall be competency-based. Specifically, the training must be developed and provided in such a way as to focus on Covered Persons achieving learning outcomes to a specified competency and to place emphasis on what a Covered Person has learned as a result of the training.

2.    *Board Training.* In addition to the training described in Section III.C.1, within 90 days after the Effective Date, each member of the Board or Board CIA Committee, shall receive training regarding the corporate governance responsibilities of board members, and the responsibilities of board

12

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

members with respect to review and oversight of the Compliance Program. Specifically, the training shall address the unique responsibilities of health care board members, including the risks, oversight areas, and strategic approaches to conducting oversight of a health care entity. This training may be conducted by an outside compliance expert hired by the Board or Board CIA Committee, and should include a discussion of the OIG's guidance on board member responsibilities.

New members of the Board or Board CIA Committee shall receive the Board training described above within 30 days after becoming a member or within 90 days after the Effective Date, whichever is later.

3.   *Training Records*.  Providence shall make available to OIG, upon request, training materials and records verifying that the training described in Sections III.C.1 and III.C.2 has been provided as required.

D.   Review Procedures

Within 90 days after the Effective Date, Providence shall engage an entity (or entities), such as an accounting, auditing, or consulting firm (hereinafter "Independent Review Organization" or "IRO"), to perform the reviews listed in Section III.D.1.  The applicable requirements relating to the IRO(s) are outlined in Appendix A to this CIA. Within 90 days of the Effective Date, Providence shall also retain an entity, selected by OIG after consultation with Providence, (hereinafter "Quality Review Organization" or "QRO"), to perform the review listed in Section III.D.2.  The applicable requirements relating to the QRO are outlined in Appendix C to this CIA.

1.   *Claims Review*.  The IRO shall review Providence's coding, billing, and claims submission to the Federal health care programs and the reimbursement received (Claims Review) and shall prepare a Claims Review Report, as outlined in Appendix B to this CIA.

2.   *Clinical Quality Systems Review*.  The QRO shall assess the effectiveness, reliability, and thoroughness of Providence's quality of care and patient safety, credentialing, privileging, and peer review processes, as outlined in Appendix D to this CIA.

3.   *Retention of Records*.  The IRO, QRO, and Providence shall retain and make available to OIG, upon request, all work papers, supporting

13

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

documentation, correspondence, and draft reports (those exchanged between the IRO and QRO and Providence) related to the reviews.

E.    Risk Assessment and Internal Review Process

Within 90 days after the Effective Date, Providence shall develop and implement a centralized annual risk assessment and internal review process to identify and address risks associated with Providence's participation in the Federal health care programs, including but not limited to the risks associated with standards of care and the submission of claims for items and services furnished to Medicare and Medicaid program beneficiaries.  The Compliance Committee shall be responsible for implementation and oversight of the risk assessment and internal review process.  The risk assessment and internal review process shall be conducted at least annually and shall require Providence to: (1) identify and prioritize risks, (2) develop internal audit work plans related to the identified risk areas, (3) implement the internal audit work plans, (4) develop corrective action plans in response to the results of any internal audits performed, and (5) track the implementation of the corrective action plans in order to assess the effectiveness of such plans.  Providence shall maintain the risk assessment and internal review process for the term of the CIA.

F.    Disclosure Program

Within 90 days after the Effective Date, Providence shall establish a Disclosure Program that includes a mechanism (e.g., a toll-free compliance telephone line) to enable individuals to disclose, to the Compliance Officer or some other person who is not in the disclosing individual's chain of command, any identified issues or questions associated with Providence's policies, conduct, practices, or procedures with respect to quality of care or a Federal health care program believed by the individual to be a potential violation of criminal, civil, or administrative law.  Providence shall appropriately publicize the existence of the disclosure mechanism (e.g., via periodic e-mails to employees or by posting the information in prominent common areas).

The Disclosure Program shall emphasize a nonretribution, nonretaliation policy, and shall include a reporting mechanism for anonymous communications for which appropriate confidentiality shall be maintained.  The Disclosure Program also shall include a requirement that all of Providence's Covered Persons shall be expected to report suspected violations of any Federal health care program requirements to the Compliance Officer or other appropriate individual designated

14

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

by Providence.  Upon receipt of a disclosure, the Compliance Officer (or designee) shall gather all relevant information from the disclosing individual.  The Compliance Officer (or designee) shall make a preliminary, good faith inquiry into the allegations set forth in every disclosure to ensure that he/she/they has/have obtained all of the information necessary to determine whether a further review should be conducted.  For any disclosure that is sufficiently specific so that it reasonably:  (1) permits a determination of the appropriateness of the alleged improper practice; and (2) provides an opportunity for taking corrective action, Providence shall conduct an internal review of the allegations set forth in the disclosure and ensure that proper follow-up is conducted.  If the inappropriate or improper practice places patients at risk of harm, then Providence will ensure that the practice ceases immediately and that appropriate action is taken.

The Compliance Officer (or designee) shall maintain a disclosure log and shall record all disclosures, whether or not related to a potential violation of criminal, civil, or administrative law related to the Federal health care programs, in the disclosure log within two business days of receipt of the disclosure.  The disclosure log shall include a summary of each disclosure received (whether anonymous or not), the individual or department responsible for reviewing the disclosure, the status of the review, and any corrective action taken in response to the review.

     G.    <u>Ineligible Persons</u>

          1.    *Definitions*.  For purposes of this CIA:

              a.    an "Ineligible Person" shall include an individual or entity who:

                    i.    is currently excluded from participation in any Federal health care program; or

                    ii.    has been convicted of a criminal offense that falls within the scope of 42 U.S.C. § 1320a-7(a), but has not yet been excluded.

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

b.    "Exclusion List" means the HHS/OIG List of Excluded Individuals/Entities (LEIE) (available through the Internet at http://www.oig.hhs.gov).

2.    *Screening Requirements.*  Providence shall ensure that all prospective and current Covered Persons are not Ineligible Persons, by implementing the following screening requirements.

a.    Providence shall screen all prospective Covered Persons against the Exclusion List prior to engaging their services and, as part of the hiring or contracting process, or medical staff credentialing process, shall require such Covered Persons to disclose whether they are Ineligible Persons.

b.    Providence shall screen all current Covered Persons against the Exclusion List within 90 days after the Effective Date and on a monthly basis thereafter.

c.    Providence shall implement a policy requiring all Covered Persons to disclose immediately if they become an Ineligible Person.

Nothing in this Section III.G affects Providence's responsibility to refrain from (and liability for) billing Federal health care programs for items or services furnished, ordered, or prescribed by an excluded person.  Providence understands that items or services furnished, ordered, or prescribed by excluded persons are not payable by Federal health care programs and that Providence may be liable for overpayments and/or criminal, civil, and administrative sanctions for employing or contracting with an excluded person regardless of whether Providence meets the requirements of Section III.G.

3.    *Removal Requirement.*  If Providence has actual notice that a Covered Person has become an Ineligible Person, Providence shall remove such Covered Person from responsibility for, or involvement with, Providence's business operations related to the Federal health care program(s) from which such Covered Person has been excluded and shall remove such Covered Person from any position for which the Covered Person's compensation or the items or services furnished, ordered, or prescribed by the Covered Person are paid in whole or part,

16

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

directly or indirectly, by any Federal health care program(s) from which the Covered Person has been excluded at least until such time as the Covered Person is reinstated into participation in such Federal health care program(s).

     4.    *Pending Charges and Proposed Exclusions*.  If Providence has actual notice that a Covered Person is charged with a criminal offense that falls within the scope of 42 U.S.C. §§ 1320a-7(a), 1320a-7(b)(1)-(3), or is proposed for exclusion during the Covered Person's employment or contract term, Providence shall take all appropriate actions to ensure that the responsibilities of that Covered Person have not and shall not adversely affect the quality of care rendered to any beneficiary or the accuracy of any claims submitted to any Federal health care program.

    H.    <u>Notification of Government Investigation or Legal Proceeding</u>

     Within 30 days after discovery, Providence shall notify OIG, in writing, of any ongoing investigation or legal proceeding known to Providence conducted or brought by a governmental entity or its agents involving an allegation that Providence has committed a crime or has engaged in fraudulent activities.  This notification shall include a description of the allegation, the identity of the investigating or prosecuting agency, and the status of such investigation or legal proceeding.  Providence also shall provide written notice to OIG within 30 days after the resolution of the matter, and a description of the findings and/or results of the investigation or proceeding, if any.

     In addition, within 15 days after notification, Providence shall notify OIG, in writing, of any adverse final determination made by a federal, state, or local government agency or accrediting or certifying agency (<u>e.g.</u>, Joint Commission) relating to quality of care issues.

    I.    <u>Overpayments</u>

     1.    *Definition of Overpayment*.  An "Overpayment" means any funds that Providence receives or retains under any Federal health care program to which Providence, after applicable reconciliation, is not entitled under such Federal health care program.

     2.    *Overpayment Policies and Procedures.*  Within 90 days after the Effective Date, Providence shall develop and implement written policies and

17

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

procedures regarding the identification, quantification, and repayment of Overpayments received from any Federal health care program.

    J.    <u>Reportable Events</u>

    1.    *Definition of Reportable Event*. For purposes of this CIA, a "Reportable Event" means anything that involves:

    a.    a substantial Overpayment;

    b.    a matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any Federal health care program for which penalties or exclusion may be authorized;

    c.    the employment of or contracting with, or having as a member of the active medical staff, a Covered Person who is an Ineligible Person as defined by Section III.G.1.a; or

    d.    the filing of a bankruptcy petition by Providence.

A Reportable Event may be the result of an isolated event or a series of occurrences.

    2.    *Reporting of Reportable Events*. If Providence determines (after a reasonable opportunity to conduct an appropriate review or investigation of the allegations) through any means that there is a Reportable Event, Providence shall notify OIG, in writing, within 30 days after making the determination that the Reportable Event exists.

    3.    *Reportable Events under Section III.J.1.a and III.J.1.b*. For Reportable Events under Section III.J.1.a and b, the report to OIG shall include:

    a.    a complete description of all details relevant to the Reportable Event, including, at a minimum, the types of claims, transactions or other conduct giving rise to the Reportable Event; the period during which the conduct occurred; and the names of individuals and

18

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

entities believed to be implicated, including an explanation of their roles in the Reportable Event;

b.   a statement of the Federal criminal, civil or administrative laws that are probably violated by the Reportable Event, if any;

c.   the Federal health care programs affected by the Reportable Event;

d.   a description of the steps taken by Providence to identify and quantify any Overpayments; and

e.   a description of Providence's actions taken to correct the Reportable Event and prevent it from recurring.

If the Reportable Event involves an Overpayment, within 60 days of identification of the Overpayment, Providence shall repay the Overpayment, in accordance with the requirements of 42 U.S.C. § 1320a-7k(d) and any applicable CMS guidance and provide OIG with a copy of the notification and repayment.

4.   *Reportable Events under Section III.J.1.c.*   For Reportable Events under Section III.J.1.c, the report to OIG shall include:

a.   the identity of the Ineligible Person and the job duties performed by that individual;

b.   the dates of the Ineligible Person's employment or contractual relationship or medical staff membership;

c.   a description of the Exclusion List screening that Providence completed before and/or during the Ineligible Person's employment, contract, or medical staff membership, and any flaw or breakdown in the screening process that led to the hiring or contracting with or credentialing the Ineligible Person;

d.   a description of how the Ineligible Person was identified; and

19

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

e.      a description of any corrective action implemented to prevent future employment or contracting with, or credentialing, an Ineligible Person.

5.      *Reportable Events under Section III.J.1.d.*  For Reportable Events under Section III.J.1.d, the report to OIG shall include:

a.      a complete description of the Reportable Event;

b.      a description of Providence's action taken to ensure that the Reportable Event does not adversely impact patient care;

c.      any further steps Providence plans to take to address the Reportable Event;

d.      if the Reportable Event involves the filing of a bankruptcy petition, documentation of the bankruptcy filing and a description of any Federal health care program requirements implicated; and

e.      if the Reportable Event involves the appointment of a receiver, documentation regarding the receivership, including, but not limited to, the identification and contact information of the receiver.

6.      *Reportable Events Involving the Stark Law.*  Notwithstanding the reporting requirements outlined above, any Reportable Event that involves solely a probable violation of section 1877 of the Social Security Act, 42 U.S.C. §1395nn (the Stark Law) should be submitted by Providence to CMS through the self-referral disclosure protocol (SRDP), with a copy to the OIG.  If Providence identifies a probable violation of the Stark Law and repays the applicable Overpayment directly to the CMS contractor, then Providence is not required by this Section III.J to submit the Reportable Event to CMS through the SRDP.

## IV.    <u>SUCCESSOR LIABILITY</u>

In the event that, after the Effective Date, Providence proposes to (a) sell any or all of its business, business units, or locations (whether through a sale of assets, sale of stock, or other type of transaction) relating to the furnishing of items

20

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

or services that may be reimbursed by a Federal health care program, or (b) purchase or establish a new business, business unit, or location relating to the furnishing of items or services that may be reimbursed by a Federal health care program, the CIA shall be binding on the purchaser of any business, business unit, or location and any new business, business unit, or location (and all Covered Persons at each new business, business unit, or location) shall be subject to the applicable requirements of this CIA, unless otherwise determined and agreed to in writing by OIG.  Providence shall give notice of such sale or purchase to OIG at least 30 days prior to the closing of the transaction.

If, in advance of a proposed sale or a proposed purchase, Providence wishes to obtain a determination by OIG that the proposed purchaser or the proposed acquisition will not be subject to the requirements of the CIA, Providence must notify OIG in writing of the proposed sale or purchase and include the following information at least 30 days in advance:  a description of the business, business unit, or location to be sold or purchased, a brief description of the terms of the transaction and, in the case of a proposed sale, the name and contact information of the prospective purchaser.

## V.    **IMPLEMENTATION AND ANNUAL REPORTS**

A.    Implementation Report.

Within 120 days after the Effective Date, Providence shall submit a written report to OIG summarizing the status of its implementation of the requirements of this CIA (Implementation Report).  The Implementation Report shall, at a minimum, include:

1.    the name, business address, business phone number, and position description of the Compliance Officer required by Section III.A.1, the Regional Compliance Directors required by Section III.A.2, and the Chief Quality Officer as required by Section III.A.3, and a summary of other noncompliance job responsibilities those individuals may have;

2.    a description of the Clinical Quality Department required by Section III.A.4;

3.    a description of the Quality of Care and Patient Safety Program required by Section III.A.5;

21

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

4.    the names and positions of the members of the Compliance Committee required by Section III.A.6;

5.    the names of the Board or Board CIA Committee members who are responsible for satisfying the Board compliance requirements described in Section III.A.7;

6.    the names and positions of the Certifying Employees required by Section III.A.8 and a copy of the written process for Certifying Employees to follow in order to complete the certification required by Section III.A.8;

7.    a list of all Policies and Procedures required by Section III.B;

8.    the Training Plan required by Section III.C and a description of the Board training required by Section III.C.3 (including a summary of the topics covered, the length of the training, and when the training was provided);

9.    the following information regarding the IRO(s): (a) identity, address, and phone number; (b) a copy of the engagement letter; (c) information to demonstrate that the IRO has the qualifications outlined in Appendix A to this CIA; and (d) a certification from the IRO regarding its professional independence and objectivity with respect to Providence that includes a summary of all current and prior engagements between Providence and the IRO.

10.    a description of the risk assessment and internal review process required by Section III.E;

11.    a description of the Disclosure Program required by Section III.F;

12.    a description of the Ineligible Persons screening and removal process required by Section III.G;

13.    copy of Providence's policies and procedures regarding the identification, quantification, and repayment of Overpayments required by Section III.I;

14.    a description of Providence's corporate structure, including identification of any individual owners and investors, parent and sister companies, subsidiaries, affiliates, and their respective lines of business;

22

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

15.     a listing of all Providence Hospital locations (including locations and mailing addresses), the corresponding name under which each location is doing business, and the location's Medicare and state Medicaid program provider number and/or supplier number(s); and

16.     the certifications required by Section V.C.

B.     <u>Annual Reports</u>.  Providence shall submit to OIG a report on its compliance with the CIA requirements for each of the five Reporting Periods (Annual Report).

Each Annual Report shall include, at a minimum, the following information:

1.     any change in the identity, position description, or other noncompliance job responsibilities of the Compliance Officer, Regional Compliance Directors , Chief Quality Officer, and a current list of the Compliance Committee members, a current list of the Board or Board CIA Committee members who are responsible for satisfying the Board compliance requirements, and a current list of the Certifying Employees, along with the identification of any changes made during the Reporting Period to the Compliance Committee, Clinical Quality Department, Quality of Care and Patient Safety Program, Board or Board CIA Committee, and Certifying Employees;

2.     a description of any changes to the written process for Certifying Employees to follow in order to complete the certification required by Section III.A.8;

3.     the dates of each report made by the Compliance Officer and Chief Quality Officer to the Board or Board CIA Committee (written documentation of such reports shall be made available to OIG upon request);

4.     a summary of activities and findings under Providence's Clinical Quality Department and a summary of any corrective action taken in response to any problems identified through its Quality of Care and Patient Safety Program as required by Section III.A.5;

23

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

5.      a summary of the Compliance Committee's measurement, analysis, and tracking of the performance, Providence's progress towards its quality improvement goals, and activities, assessments, recommendations, and findings related to quality and patient safety and Providence's response to those findings;

6.      the Board or Board CIA Committee resolution required by Section III.A.7 and a description of the documents and other materials reviewed by the Board or Board CIA Committee, as well as any additional steps taken, in its oversight of the compliance program and in support of making the resolution;

7.      a list of any new or revised Policies and Procedures developed during the Reporting Period;

8.      a description of any changes to Providence's Training Plan developed pursuant to Section III.C and summary of any Board training provided during the Reporting Period;

9.      a complete copy of all reports prepared pursuant to Section III.D and Providence's response to the reports, along with corrective action plan(s) related to any issues raised by the reports, including Providence's determination of whether the CMS overpayment rule requires the repayment of an extrapolated Overpayment (as defined in Appendix B);

10.     a certification from the IRO regarding its professional independence and objectivity with respect to Providence, including a summary of all current and prior engagements between Providence and the IRO;

11.     Providence's response and action plan(s) related to any written recommendations of the QRO pursuant to Section III.D;

12.     a description of any changes to the risk assessment and internal review process required by Section III.E, including the reasons for such changes;

13.     a summary of the following components of the risk assessment and internal review process during the Reporting Period: (a) work plans developed, (b) internal audits performed, (c) corrective action plans developed in response to internal audits, and (d) steps taken to track the implementation of the corrective action plans. Copies of any work plans, internal

24

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

audit reports, and corrective action plans shall be made available to OIG upon request;

       14.    a summary of the disclosures in the disclosure log required by Section III.F that relate to Federal health care programs and the delivery of patient care, including at least the following information: (a) a description of the disclosure, (b) the date the disclosure was received, (c) the resolution of the disclosure, and (d) the date the disclosure was resolved (if applicable). The complete disclosure log shall be made available to OIG upon request;

       15.    a summary of Reportable Events (as defined in Section III.J) identified during the Reporting Period and the status of any corrective and preventative action relating to all such Reportable Events;

       16.    a description of any changes to the Ineligible Persons screening and removal process required by Section III.G, including the reasons for such changes;

       17.    a description of any changes to the Overpayment policies and procedures required by Section III.I, including the reasons for such changes;

       18.    a summary describing any ongoing investigation or legal proceeding required to have been reported pursuant to Section III.H. The summary shall include a description of the allegation, the identity of the investigating or prosecuting agency, and the status of such investigation or legal proceeding;

       19.    a description of all changes to the most recently provided list of Providence Hospital locations as required by Section V.A.15;

       20.    a description of any changes to Providence's corporate structure, including any individual owners and investors, parent and sister companies, subsidiaries, affiliates, and their respective lines of business; and

       21.    the certifications required by Section V.C.

    The first Annual Report shall be received by OIG no later than 60 days after the end of the first Reporting Period. Subsequent Annual Reports shall be received by OIG no later than the anniversary date of the due date of the first Annual Report.

25

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

C.    <u>Certifications</u>

1.    *Certifying Employees.*  In each Annual Report, Providence shall include the certifications of Certifying Employees as required by Section III.A.8;

2.    *Compliance Officer, Chief Quality Officer, and Chief Executive Officer.*  The Implementation Report and each Annual Report shall include a certification by the Compliance Officer, Chief Quality Officer, and Chief Executive Officer that:

a.    to the best of his/her/their knowledge, except as otherwise described in the report, Providence has implemented and is in compliance with all of the requirements of this CIA;

b.    he/she/they has/have reviewed the report and has/have made reasonable inquiry regarding its content and believes that the information in the report is accurate and truthful; and

c.    he/she/they understands that the certification is being provided to and relied upon by the United States.

D.    <u>Designation of Information</u>.  Providence shall clearly identify any portions of its submissions that it believes are trade secrets, or information that is commercial or financial and privileged or confidential, and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Providence shall refrain from identifying any information as exempt from disclosure if that information does not meet the criteria for exemption from disclosure under FOIA.

26

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

## VI.    <u>NOTIFICATIONS AND SUBMISSION OF REPORTS</u>

Unless otherwise stated in writing after the Effective Date, all notifications and reports required under this CIA shall be submitted to the following entities:

<u>OIG</u>:
Administrative and Civil Remedies Branch
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services
Cohen Building, Room 5527
330 Independence Avenue, S.W.
Washington, DC 20201
Telephone: 202.619.2078
Facsimile: 202.205.0604

<u>Providence</u>:
Sharon Cockrum
Executive Director, Compliance
Providence Health & Services - Washington
1801 Lind Avenue SW
Renton, Washington 98057
Telephone: 360.726.9907
Email Address: Sharon.cockrum@providence.org

Unless otherwise specified, all notifications and reports required by this CIA may be made by electronic mail, overnight mail, hand delivery, or other means, provided that there is proof that such notification was received. Upon request by OIG, Providence may be required to provide OIG with an additional copy of each notification or report required by this CIA in OIG's requested format (electronic or paper).

## VII.    <u>OIG INSPECTION, AUDIT, AND REVIEW RIGHTS</u>

In addition to any other rights OIG may have by statute, regulation, or contract, OIG or its duly authorized representative(s) may conduct interviews, examine and/or request copies of or to copy Providence's books, records, and other documents and supporting materials and conduct on-site reviews of any of

27
*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

Providence's locations for the purpose of verifying and evaluating: (a) Providence's compliance with the terms of this CIA; and (b) Providence's compliance with the requirements of the Federal health care programs. The documentation described above shall be made available by Providence to OIG or its duly authorized representative(s) at all reasonable times for inspection, audit, and/or reproduction. Furthermore, for purposes of this provision, OIG or its duly authorized representative(s) may interview any of Providence's owners, employees, contractors, and directors who consent to be interviewed at the individual's place of business during normal business hours or at such other place and time as may be mutually agreed upon between the individual and OIG. Providence shall assist OIG or its duly authorized representative(s) in contacting and arranging interviews with such individuals upon OIG's request. Providence's owners, employees, contractors, and directors may elect to be interviewed with or without a representative of Providence present.

## VIII.  **DOCUMENT AND RECORD RETENTION**

Providence shall maintain for inspection all documents and records relating to reimbursement from the Federal health care programs and to compliance with this CIA, for six years (or longer if otherwise required by law) from the Effective Date.

## IX.  **DISCLOSURES**

Consistent with HHS's FOIA procedures, set forth in 45 C.F.R. Part 5, OIG shall make a reasonable effort to notify Providence prior to any release by OIG of information submitted by Providence pursuant to its requirements under this CIA and identified upon submission by Providence as trade secrets, or information that is commercial or financial and privileged or confidential, under the FOIA rules. With respect to such releases, Providence shall have the rights set forth at 45 C.F.R. § 5.42(a).

## X.  **BREACH AND DEFAULT PROVISIONS**

A.  <u>Specific Performance</u>. The parties agree that, if OIG determines that Providence is failing to comply with a provision of this CIA, OIG may seek specific performance of that provision. OIG shall provide Providence with prompt written notification of such determination. (This notification shall be referred to as the "Noncompliance Notice.") Within 30 days after the date of the

28

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

Noncompliance Notice, Providence shall either: (1) come into compliance; or (2) request a hearing before an HHS administrative law judge (ALJ) to dispute OIG's determination of noncompliance, pursuant to the provisions set for in Section X.F of this CIA.

      B.   <u>Stipulated Penalties</u>. OIG may assess:

      1.   A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.A;

      2.   A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.B;

      3.   A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.C;

      4.   A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.D;

      5.   A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.E;

      6.   A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.F;

29

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

7.     A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.G;

8.     A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.H;

9.     A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.I;

10.     A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section III.J;

11.     A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section IV;

12.     A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section V;

13.     A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section VII;

14.     A Stipulated Penalty of up to $2,500 for each day Providence fails to comply with Section VIII; or

15.     A Stipulated Penalty of up to $50,000 for each false certification or false statement made to OIG by or on behalf of Providence under this CIA.

C.     <u>Timely Written Requests for Extensions</u>.  Providence may, in advance of the due date, submit a timely written request for an extension of time to perform any act or file any notification or report required by this CIA.  If OIG grants the timely written request with respect to an act, notification, or report, Stipulated Penalties for failure to perform the act or file the notification or report shall not begin to accrue until one day after Providence fails to meet the revised deadline set by OIG.  If OIG denies such a timely written request, Stipulated Penalties for failure to perform the act or file the notification or report shall not begin to accrue until three business days after Providence receives OIG's written denial of such request or the original due date, whichever is later.  A "timely written request" is defined as a request in writing received by OIG at least five

30

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

business days prior to the date by which any act is due to be performed or any notification or report is due to be filed.

    D.    <u>Payment of Stipulated Penalties</u>

    1.    *Demand Letter*.  If OIG determines that a basis for Stipulated Penalties under Section X.A exists, OIG shall notify Providence of:  (a) Providence's failure to comply; and (b) OIG's demand for payment of Stipulated Penalties.  (This notification shall be referred to as the "Demand Letter.")

    2.    *Response to Demand Letter.*  Within 15 business days after the date of the Demand Letter, Providence shall either:  (a) pay the applicable Stipulated Penalties or (b) request a hearing before an ALJ to dispute OIG's determination of noncompliance, pursuant to the agreed upon provisions set forth below in Section X.F.

    3.    *Form of Payment*.  Payment of the Stipulated Penalties shall be made by electronic funds transfer to an account specified by OIG in the Demand Letter.

    E.    <u>Exclusion for Material Breach of this CIA</u>

    1.    *Definition of Material Breach*.  A material breach of this CIA means:

    a.    failure to comply with any of the requirements of this CIA for which OIG has previously issued a demand for Stipulated Penalties under Section X.D;

    b.    failure to comply with Section III.A.1;

    c.    failure to comply with Section III.D;

    d.    failure to comply with Section III.J;

    e.    failure to comply with Section V;

    f.    a failure to respond to a Noncompliance Notice in accordance with Section X.A;

31

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

g.    a failure to respond to a Demand Letter in accordance with Section X.D;

h.    failure to pay Stipulated Penalties within 20 days after an ALJ issues a decision ordering Providence to pay the Stipulated Penalties or within 20 days after the HHS Departmental Appeals Board (DAB) issues a decision upholding the determination of OIG; or

i.    failure to come into compliance with a requirement of this CIA for which OIG has demanded Stipulated Penalties pursuant to the deadlines listed in Section X.F.3.

2.    *Notice of Material Breach and Intent to Exclude*.  The parties agree that a material breach of this CIA by Providence constitutes an independent basis for Providence's exclusion from participation in the Federal health care programs.  The length of the exclusion shall be in the OIG's discretion, but not more than five years for each material breach.  Upon a preliminary determination by OIG that Providence has materially breached this CIA, OIG shall notify Providence of:  (a) Providence's material breach; and (b) OIG's intent to exclude Providence.  (This notification shall be referred to as the "Notice of Material Breach and Intent to Exclude.")  The exclusion may be directed at one or more of Providence's facilities or corporate entities, depending upon the facts of the breach.

3.    *Response to Notice*.  Providence shall have 30 days from the date of the Notice of Material Breach and Intent to Exclude to submit any information and documentation for OIG to consider before it makes a final determination regarding exclusion.

4.    *Exclusion Letter*.  If OIG determines that exclusion is warranted, OIG shall notify Providence in writing of its determination to exclude Providence.  (This letter shall be referred to as the "Exclusion Letter.")  Subject to the Dispute Resolution provisions in Section X.F, below, the exclusion shall go into effect 30 days after the date of the Exclusion Letter.  The exclusion shall have national effect.  The effect of the exclusion shall be that no Federal health care program payment may be made for items or services furnished, ordered, or

32

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

prescribed by Providence, including administrative and management services, except as stated in regulations found at 42 C.F.R. § 1001.1901(c). Reinstatement to program participation is not automatic. At the end of the period of exclusion, Providence may apply for reinstatement by submitting a written request for reinstatement in accordance with the provisions at 42 C.F.R. §§ 1001.3001-.3004.

F.    Dispute Resolution

1.    *Review Rights.* Upon OIG's issuing a Noncompliance Notice, Demand Letter, or Exclusion Letter to Providence, and as an agreed-upon remedy for the resolution of disputes arising under this CIA, Providence shall be afforded certain review rights comparable to the ones that are provided in 42 U.S.C. § 1320a-7(f) and 42 C.F.R. Part 1005. Specifically, OIG's determination to demand specific performance, payment of Stipulated Penalties, or to seek exclusion shall be subject to review by an HHS ALJ and, in the event of an appeal, the DAB, in a manner consistent with the provisions in 42 C.F.R. § 1005.2-1005.21, but only to the extent this CIA does not provide otherwise. Notwithstanding the language in 42 C.F.R. § 1005.2: (a) the request for a hearing involving specific performance or Stipulated Penalties shall be made within 15 business days after the date of Noncompliance Notice or the Demand Letter and the request for a hearing involving exclusion shall be made within 25 days after the date of the Exclusion Letter; and (b) no discovery shall be available to the parties. The procedures relating to the filing of a request for a hearing can be found at http://www.hhs.gov/dab/division/civil/procedures/divisionprocedures.html.

2.    *Specific Performance Review.* Notwithstanding any provision of Title 42 of the United States Code or Title 42 of the Code of Federal Regulations, the only issues in a proceeding for specific performance of CIA requirements shall be whether Providence is full compliance with the requirements of this CIA for which OIG seeks specific performance. Providence shall have the burden of proving its full and timely compliance. If the ALJ upholds the OIG's determination that Providence was not in compliance with this CIA and orders Providence to come into compliance, Providence must take the actions OIG deems necessary to come into compliance within 20 days after the ALJ issues such a decision, unless Providence properly and timely requests review of the ALJ decision by the DAB. If the ALJ decision is timely and properly appealed to the DAB and the DAB upholds the determination of OIG, Providence must take the

33

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

actions OIG deems necessary to come into compliance within 20 days after the DAB issues its decision.

3.    *Stipulated Penalties Review*.  Notwithstanding any provision of Title 42 of the United States Code or Title 42 of the Code of Federal Regulations, the only issues in a proceeding for Stipulated Penalties under this CIA shall be:  (a) whether Providence was in full and timely compliance with the requirements of this CIA for which OIG demands payment; and (b) the period of noncompliance.  Providence shall have the burden of proving its full and timely compliance.  If the ALJ upholds the OIG's determination that Providence has breached this CIA and orders Providence to pay Stipulated Penalties, Providence must (a) come into compliance with the requirement(s) of the CIA that resulted in the OIG imposing Stipulated Penalties and (b) pay the Stipulated Penalties within 20 days after the ALJ issues a decision, unless Providence properly and timely requests review of the ALJ decision by the DAB.  If the ALJ decision is properly and timely appealed to the DAB and the DAB upholds the determination of OIG, Providence must (a) come into compliance with the requirement(s) that resulted in the OIG imposing Stipulated Penalties and (b) pay the Stipulated Penalties within 20 days after the DAB issues its decision.

4.    *Exclusion Review*.  Notwithstanding any provision of Title 42 of the United States Code or Title 42 of the Code of Federal Regulations, the only issues in a proceeding for exclusion based on a material breach of this CIA shall be whether Providence was in material breach of this CIA.  If the ALJ sustains the OIG's determination of material breach, the exclusion shall take effect 20 days after the ALJ issues the decision.  If the DAB finds in favor of OIG after an ALJ decision adverse to OIG, the exclusion shall take effect 20 days after the DAB decision.  Providence shall waive its right to any notice by OIG of the exclusion if a decision upholding the exclusion is rendered by the ALJ or DAB.  If the DAB finds in favor of Providence, Providence shall be reinstated effective on the date of the exclusion.

5.    *Finality of Decision*.  The review by an ALJ or DAB provided for above shall not be considered to be an appeal right arising under any statutes or regulations.  The parties to this CIA agree that the DAB's decision (or the ALJ's decision if not appealed) shall be considered final for all purposes under this CIA and Providence agrees not to seek additional review of the DAB's decision (or the ALJ's decision if not appealed) in any judicial forum.

34

## XI.    **EFFECTIVE AND BINDING AGREEMENT**

Providence and OIG agree as follows:

A.    This CIA shall become final and binding on the date the final signature is obtained on the CIA.

B.    This CIA constitutes the complete agreement between the parties and may not be amended except by written consent of the parties to this CIA.

C.    OIG may agree to a suspension of Providence's requirements under this CIA based on a certification by Providence that it is no longer providing health care items or services that will be billed to any Federal health care program and it does not have any ownership or control interest, as defined in 42 U.S.C. § 1320a-3, in any entity that bills any Federal health care program.  If Providence is relieved of its CIA requirements, Providence shall be required to notify OIG in writing at least 30 days in advance if Providence plans to resume providing health care items or services that are billed to any Federal health care program or to obtain an ownership or control interest in any entity that bills any Federal health care program.  At such time, OIG shall evaluate whether the CIA will be reactivated or modified.

D.    All requirements and remedies set forth in this CIA are in addition to and do not affect (1) Providence's responsibility to follow all applicable Federal health care program requirements or (2) the government's right to impose appropriate remedies for failure to follow applicable Federal health care program requirements.

E.    The undersigned Providence signatories represent and warrant that they are authorized to execute this CIA.  The undersigned OIG signatories represent that they are signing this CIA in their official capacities and that they are authorized to execute this CIA.

F.    This CIA may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same CIA.  Electronically-transmitted copies of signatures shall constitute acceptable, binding signatures for purposes of this CIA.

35

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

**ON BEHALF OF PROVIDENCE HEALTH & SERVICES-WASHINGTON**

/Gregory D. Hoffman/                                    March 15, 2022

GREGORY HOFFMAN                                         DATE
President and Chief Executive Officer
Providence Health & Services - Washington

36

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

**ON BEHALF OF THE OFFICE OF INSPECTOR GENERAL
OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES**


/Lisa M. Re/                                                    3/17/22
_____                          _____

LISA M. RE                                                      DATE
Assistant Inspector General for Legal Affairs
Office of Inspector General
U. S. Department of Health and Human Services


/Felicia Heimer/                                                3/17/22
_____                          _____

FELICIA E. HEIMER                                              DATE
Senior Counsel
Office of Inspector General
U. S. Department of Health and Human Services


37

*Providence Health & Services - Washington
Corporate Integrity Agreement*

## APPENDIX A

## INDEPENDENT REVIEW ORGANIZATION

This Appendix contains the requirements relating to the Independent Review Organization (IRO) required by Section III.D of the CIA.

A.    IRO Engagement

     1.    Providence shall engage an IRO that possesses the qualifications set forth in Paragraph B, below, to perform the responsibilities in Paragraph C, below. The IRO shall conduct the review in a professionally independent and objective fashion, as set forth in Paragraph E.  Within 30 days after OIG receives the information identified in Section V.A.9 of the CIA or any additional information submitted by Providence in response to a request by OIG, whichever is later, OIG will notify Providence if the IRO is unacceptable.  Absent notification from OIG that the IRO is unacceptable, Providence may continue to engage the IRO.

     2.    If Providence engages a new IRO during the term of the CIA, that IRO must also meet the requirements of this Appendix.  If a new IRO is engaged, Providence shall submit the information identified in Section V.A.9 of the CIA to OIG within 30 days of engagement of the IRO.  Within 30 days after OIG receives this information or any additional information submitted by Providence at the request of OIG, whichever is later, OIG will notify Providence if the IRO is unacceptable.  Absent notification from OIG that the IRO is unacceptable, Providence may continue to engage the IRO.

B.    IRO Qualifications

    The IRO shall:

     1.    assign individuals to conduct the Claims Review who have expertise in the Medicare and state Medicaid program requirements applicable to the claims being reviewed;

     2. assign individuals to design and select the Claims Review sample who are

38

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

knowledgeable about the appropriate statistical sampling techniques;

     3.     assign individuals to conduct the coding review portions of the Claims Review who have a nationally recognized coding certification and who have maintained this certification (e.g., completed applicable continuing education requirements);

     4.     assign licensed nurses or physicians with relevant education, training and specialized expertise (or other licensed health care professionals acting within their scope of practice and specialized expertise) to make the medical necessity determinations required by the Claims Review; and

     5.     have sufficient staff and resources to conduct the reviews required by the CIA on a timely basis.

C.     <u>IRO Responsibilities</u>

     The IRO shall:

     1.     perform each Claims Review in accordance with the specific requirements of the CIA;

     2.     follow all applicable Medicare and state Medicaid program rules and reimbursement guidelines in making assessments in the Claims Review;

     3.     request clarification from the appropriate authority (e.g., Medicare contractor), if in doubt of the application of a particular Medicare or state Medicaid program policy or regulation;

     4.     respond to all OIG inquires in a prompt, objective, and factual manner; and

     5.     prepare timely, clear, well-written reports that include all the information required by Appendix B to the CIA.

39

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

D.    Providence Responsibilities

Providence shall ensure that the IRO has access to all records and personnel necessary to complete the reviews listed in III.D of this CIA and that all records furnished to the IRO are accurate and complete.

E.    IRO Independence and Objectivity

The IRO must perform the Claims Review in a professionally independent and objective fashion, as defined in the most recent Government Auditing Standards issued by the U.S. Government Accountability Office.

F.    IRO Removal/Termination

1.    *Providence and IRO.*  If Providence terminates its IRO or if the IRO withdraws from the engagement during the term of the CIA, Providence must submit a notice explaining (a) its reasons for termination of the IRO or (b) the IRO's reasons for its withdrawal to OIG, no later than 30 days after termination or withdrawal.  Providence must engage a new IRO in accordance with Paragraph A of this Appendix and within 60 days of termination or withdrawal of the IRO.

2.    *OIG Removal of IRO.*  In the event OIG has reason to believe the IRO does not possess the qualifications described in Paragraph B, is not independent and objective as set forth in Paragraph E, or has failed to carry out its responsibilities as described in Paragraph C, OIG shall notify Providence in writing regarding OIG's basis for determining that the IRO has not met the requirements of this Appendix.  Providence shall have 30 days from the date of OIG's written notice to provide information regarding the IRO's qualifications, independence or performance of its responsibilities in order to resolve the concerns identified by OIG.  If, following OIG's review of any information provided by Providence regarding the IRO, OIG determines that the IRO has not met the requirements of this Appendix, OIG shall notify Providence in writing that Providence shall be required to engage a new IRO in accordance with Paragraph A of this Appendix.  Providence must engage a new IRO within 60 days of its receipt of OIG's written notice.  The final determination as to whether or not to require Providence to engage a new IRO shall be made at the sole discretion of OIG.

40

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

**APPENDIX B**

**CLAIMS REVIEW**

A.          Claims Review.  The IRO shall perform the Claims Review annually to cover each of the five Reporting Periods.  The IRO shall perform all components of each Claims Review.  The Claims Review shall be conducted at two Providence Hospitals locations or 10% of Providence Hospitals, , whichever is greater, for each Reporting Period.

      1.     *Definitions*.  For the purposes of the Claims Review, the following definitions shall be used:

           a.     Overpayment:  The amount of money Providence has received in excess of the amount due and payable under Medicare or any state Medicaid program requirements, as determined by the IRO in connection with the Claims Review performed under this Appendix B.

           b.     Paid Claim:  A claim submitted by Providence and for which Providence has received reimbursement from the Medicare program or a state Medicaid program.

B.          Population:  The Population shall be defined as all Paid Claims during the 12-month period covered by the Claims Review.  In OIG's discretion, OIG may limit the Population to one or more subset(s) of Paid Claims to be reviewed and shall notify Providence and the IRO of its selection of the Population at least 30 days prior to the end of each Reporting Period. In connection with limiting the Population, OIG also may select the Providence Hospitals that will be subject to the Claims Review in each Reporting Period.  In order to facilitate OIG's selection, at least 90 days prior to the end of the Reporting Period, Providence shall furnish to OIG the following information for each Providence Hospital for the prior calendar year: (1) Federal health care program revenues, (2) Federal health care program patient census, and (2) Federal health care program payor mix.

41

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

Providence, or its IRO on behalf of Providence, may submit proposals identifying suggestions for the subset(s) of Paid Claims to be reviewed and the Providence Hospitals to be reviewed at least 90 days prior to the end of each Reporting Period. In connection with limiting the Population, OIG may consider (1) proposals submitted by Providence or its IRO, (2) information furnished to OIG regarding the results of Providence's internal risk assessment and internal auditing, or (3) other information obtained by OIG. The determination of whether, and in what manner, to limit the Population shall be made at the sole discretion of OIG.

1.    *Claims Review Sample.* The IRO shall randomly select and review a sample of 100 Paid Claims (Claims Review Sample) at each Providence Hospital location selected for review. The Paid Claims shall be reviewed based on the supporting documentation available at Providence's office or under Providence's control and applicable Medicare and state Medicaid program requirements to determine whether the items and services furnished were medically necessary and appropriately documented and whether the claim was correctly coded, submitted, and reimbursed. For each Paid Claim in the Claims Review Sample that results in an Overpayment, the IRO shall review the system(s) and process(es) that generated the Paid Claim and identify any problems or weaknesses that may have resulted in the identified Overpayments. The IRO shall provide its observations and recommendations on suggested improvements to the system(s) and the process(es) that generated the Paid Claim.

2.    *Other Requirements.*

a.    <u>Supplemental Materials</u>. The IRO shall request all documentation and materials required for its review of the Paid Claims in the Claims Review Sample and Providence shall furnish such documentation and materials to the IRO prior to the IRO initiating its review of the Claims Review Sample. If the IRO accepts any supplemental documentation or materials from Providence after the IRO has completed its initial review of the Claims Review Sample (Supplemental Materials), the IRO shall identify in the Claims Review Report the Supplemental Materials, the date the Supplemental Materials were accepted, and the relative weight the IRO gave to the Supplemental Materials in its review. In addition, the IRO shall

42

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

include a narrative in the Claims Review Report describing the process by which the Supplemental Materials were accepted and the IRO's reasons for accepting the Supplemental Materials.

b.    <u>Paid Claims without Supporting Documentation</u>.  Any Paid Claim for which Providence cannot produce documentation shall be considered an error and the total reimbursement received by Providence for such Paid Claim shall be deemed an Overpayment. Replacement sampling for Paid Claims with missing documentation is not permitted.

c.    <u>Use of First Samples Drawn</u>.  For the purposes of the Claims Review Sample discussed in this Appendix, the first set of Paid Claims selected shall be used (<u>i.e.</u>, it is not permissible to generate more than one list of random samples and then select one for use with the Claims Review Sample).

3.    *Repayment of Identified Overpayments.*  Providence shall repay within 60 days any Overpayment(s) identified by the IRO in the Claims Review Sample, in accordance with the requirements of 42 U.S.C. § 1320a-7k(d) and any applicable regulations and Centers for Medicare and Medicaid Services (CMS) guidance (the "CMS overpayment rule").  If Providence determines that the CMS overpayment rule requires that an extrapolated Overpayment be repaid, Providence shall repay that amount at the mean point estimate as calculated by the IRO.  Providence shall make available to OIG all documentation that reflects the refund of any Overpayment(s) to the payor.  OIG, in its sole discretion, may refer the findings of the Claims Review Sample (and any related work papers) received from Providence to the appropriate Medicare or state Medicaid program contractor for appropriate follow up by that payor.

C.    <u>Claims Review Report</u>.  The IRO shall prepare a Claims Review Report as described in this Appendix for each Claims Review performed.  The following information shall be included in the Claims Review Report.

43

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

1.   *Claims Review Methodology.*

    a.    <u>Claims Review Population</u>.  A description of the Population subject to the Claims Review.

    b.    <u>Claims Review Objective</u>.  A clear statement of the objective intended to be achieved by the Claims Review.

    c.    <u>Source of Data</u>.  A description of (1) the process used to identify Paid Claims in the Population and (2) the specific documentation relied upon by the IRO when performing the Claims Review (<u>e.g.</u>, medical records, physician orders, certificates of medical necessity, requisition forms, local medical review policies (including title and policy number), CMS program memoranda (including title and issuance number), Medicare carrier or intermediary manual or bulletins (including issue and date), other policies, regulations, or directives).

    d.    <u>Review Protocol</u>.  A narrative description of how the Claims Review was conducted and what was evaluated.

    e.    <u>Supplemental Materials</u>.  A description of any Supplemental Materials as required by Section A.3.a., above.

2.   *Statistical Sampling Documentation.*

    a.    A copy of the printout of the random numbers generated by the "Random Numbers" function of the statistical sampling software used by the IRO.

    b.    A description or identification of the statistical sampling software package used by the IRO.

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

3.   *Claims Review Findings.*

    a.   <u>Narrative Results</u>.

        i.   A description of Providence's billing and coding system(s), including the identification, by position description, of the personnel involved in coding and billing.

        ii.   A description of controls in place at Providence to ensure that all items and services billed to Medicare or a state Medicaid program are medically necessary and appropriately documented.

        iii.   A narrative explanation of the IRO's findings and supporting rationale (including reasons for errors, patterns noted, etc.) regarding the Claims Review, including the results of the Claims Review Sample.

    b.   <u>Quantitative Results</u>.

        i.   Total number and percentage of instances in which the IRO determined that the coding of the Paid Claims submitted by Providence differed from what should have been the correct coding and in which such difference resulted in an Overpayment to Providence.

        ii.   Total number and percentage of instances in which the IRO determined that a Paid Claim was not appropriately documented and in which such documentation errors resulted in an Overpayment to Providence.

        iii.   Total number and percentage of instances in which the IRO determined that a Paid Claim was for items or services that were not

45

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

        medically necessary and resulted in an Overpayment to Providence.

iv.    Total dollar amount of all Overpayments in the Claims Review Sample.

v.    Total dollar amount of Paid Claims included in the Claims Review Sample.

vi.    Error Rate in the Claims Review Sample. The Error Rate shall be calculated by dividing the Overpayment in the Claims Review Sample by the total dollar amount associated with the Paid Claims in the Claims Review Sample.

vii.    An estimate of the actual Overpayment in the Population at the mean point estimate.

viii.    A spreadsheet of the Claims Review results that includes the following information for each Paid Claim: Federal health care program billed, beneficiary health insurance claim number, date of service, code submitted (e.g., DRG, CPT code, etc.), code reimbursed, allowed amount reimbursed by payor, correct code (as determined by the IRO), correct allowed amount (as determined by the IRO), dollar difference between allowed amount reimbursed by payor and the correct allowed amount.

ix.    <u>Recommendations</u>. The IRO's report shall include any recommendations for improvements to Providence's billing and coding system or to Providence's controls for ensuring that all items and services billed to Medicare or a state Medicaid program are medically necessary and appropriately documented, based on the findings of the Claims Review.

46

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

*4.    Credentials.*  The names and credentials of the individuals who: (1) designed the statistical sampling procedures and the review methodology utilized for the Claims Review and (2) performed the Claims Review.

47

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

## APPENDIX C

## QUALITY REVIEW ORGANIZATION

A.     Quality Review Organization Engagement

1.     Within 60 days after the Effective Date, Providence shall retain an appropriately qualified monitoring team, the QRO, selected by OIG after consultation with Providence.  The QRO may retain additional personnel, including but not limited to independent consultants, if needed to help meet the QRO's obligations under this CIA.  The QRO may confer and correspond with Providence or OIG individually or together.  The QRO and Providence shall not negotiate or enter into a financial relationship, other than the monitoring engagement required by this section, until after the date of OIG's CIA closure letter to Providence or six months after the expiration of this CIA, whichever is later.

2.     The QRO is not an agent of OIG.  However, the QRO may be removed by OIG at its sole discretion.  If the QRO resigns or is removed for any other reasons prior to the termination of the CIA, Providence shall retain, within 60 days of the resignation or removal, another QRO selected by OIG after consultation with Providence, with the same functions and authorities.

B.     QRO Responsibilities.  The QRO shall:

1.     perform a Clinical Quality Systems Review, in accordance with the specific requirements of  Appendix D;

2.     apply professionally recognized standards of care and patient safety in making assessments in the Clinical Quality Systems Review;

3.     respond to all OIG inquires in a prompt, objective, and factual manner; and

4.     prepare timely, clear, well-written reports that include all the information required by Appendix D to the CIA.

C.     QRO Qualifications. The QRO's employees shall have expertise in evaluating clinical quality management in the acute care setting, professionally-recognized standards of care and patient safety, credentialing, privileging and peer review.

48

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

## APPENDIX D

## CLINICAL QUALITY SYSTEMS REVIEW

The QRO shall perform a Clinical Quality Systems Review annually to cover each of the five Reporting Periods. The QRO shall perform all components of each Clinical Quality Systems Review.

    A.    <u>Clinical Quality Systems Review</u>

The QRO shall perform a Clinical Quality Systems Review to assess the effectiveness, reliability, and thoroughness of Providence's quality management infrastructure and systems throughout Providence. The QRO shall assess Providence's efforts to achieve compliance with its Clinical Quality Policies and Procedures described in Section III.B, the Medicare Conditions of Participation, and other standards designed to ensure that the delivery of patient care items or services at Providence meet professionally recognized standards of health care and patient safety, and are reasonable and appropriate to the needs of Federal health care program beneficiaries. The Clinical Quality Systems Review will be undertaken at all relevant levels of the organization. The QRO shall assess, among other things, the effectiveness, reliability, and thoroughness of the following:

        1.    Providence's quality management infrastructure, including but not limited to an assessment of:

            a.    The accuracy of Providence's internal reports, data, and assessments required by the Clinical Quality Policies and Procedures;

            b.    Providence's ability to analyze outcome measures and other data;

            c.    The extent to which reviews under Providence's Quality of Care and Patient Safety Program and other reviews are occurring to identify and address quality management issues at Providence;

            d.    Providence's compliance with the Clinical Quality Training requirements, Clinical Quality Policies and

49

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

Procedures, and performance standards of Section III.B of the CIA;

e.    The extent to which Providence's Clinical Quality Training program is effective, thorough, and competency-based;

f.    The extent to which Providence's communication systems are effective and results of decisions are transmitted to the proper individuals in a timely fashion;

g.    The extent to which Providence has implemented an effective Quality of Care and Patient Safety Program as required under Section III.A.5 of this CIA

h.    The extent to which Providence's credentialing and privileging process is effective and thorough;

i.    The extent to which Providence monitors practitioners with current privileges by the review of clinical practice patterns, ongoing case review, proctoring, and discussion with other individuals involved in the care of patients; and

j.    Providence's implementation and monitoring of medical staff peer review.

2.    Providence's response to quality of care issues, which shall include an assessment of:

a.    Providence's ability to identify the problem;

b.    Providence's ability to determine the scope of the problem (e.g., systemic or isolated);

c.    Providence's ability to conduct a root cause analysis;

d.    Providence's ability to create a corrective action plan to respond to the problem;

50

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

    e.     Providence's ability to execute the corrective action plan;

    f.     Providence's ability to operate in a timely and effective manner; and

    g.     Providence's ability to monitor and evaluate whether the assessment, corrective action plan, and execution of that plan were effective, reliable, thorough, and maintained.

3.    Providence's proactive steps to ensure that each patient receives care in accordance with:

    a.     professionally recognized standards of health care and patient safety;

    b.     State and local statutes, regulations, and other directives or guidelines; and

    c.     the Policies and Procedures adopted by Providence, including those implemented under Section III.B of this CIA.

B.    <u>Reportable Quality Events</u>

1.    *Definition of Reportable Quality Event*.  For purposes of this CIA, a "Reportable Quality Event" means anything that involves:

    a.     An incident in which items or services furnished to a patient are substantially in excess of the needs of such patients or of a quality which fails to meet professionally recognized standards of health care; and

    b.     Any other incident that involves or causes actual harm to a patient when such incident is required to be reported to any local, State, or Federal government agency.

2.    If Providence determines (after a reasonable opportunity to conduct an appropriate review or investigation of the allegations) through any

51

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

means that there is a Reportable Quality Event, Providence shall notify the QRO, in writing, within 60 days after making the determination that the Reportable Quality Event exists.

       3.     For Reportable Quality Events, the report to the QRO shall include:

       a.     a complete description of the Reportable Quality Event, including the relevant facts, persons involved, and legal and Federal health care program authorities implicated;

       b.     a description of Providence's actions taken to correct the Reportable Quality Event;

       c.     any further steps Providence plans to take to address the Reportable Quality Event and prevent it from recurring; and

       d.     if the Reportable Quality Event has resulted in an Overpayment, a description of the steps taken by Providence to identify and quantify the Overpayment.

       4.     Providence shall provide all reports to the QRO of Reportable Quality Events to its Compliance Committee, Clinical Quality Department, Audit and Compliance Committee, and Quality of Care and Patient Safety Committee.

   C.     <u>Access</u>.  The QRO shall have:

       1.     immediate access to Providence, at any time and without prior notice, to assess the effectiveness of the internal quality assurance mechanisms, and to ensure that the data being generated is accurate;

       2.     immediate access to:

       a.     internal or external surveys, assessments, or reports;

       b.     Reportable Quality Event disclosures;

       c.     documents related to any clinical quality training;

52

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

     d.     Clinical Quality Policies and Procedures;

     e.     staffing data;

     f.     reports of abuse, neglect, or an incident that resulted in patient harm;

     g.     reports of any incident involving a patient that prompts a full internal investigation;

     h.     patient records;

     i.     documents in the possession or control of any quality assurance committee, peer review committee, medical review committee, or other such committee; and

     j.     any other data in the format the QRO determines relevant to fulfilling the duties required under this CIA;

     3.     immediate access to patients and Covered Persons for interviews outside the presence of Providence supervisory staff or counsel, provided such interviews are conducted in accordance with all applicable laws and the rights of such individuals. The QRO shall give full consideration to an individual's clinical condition before interviewing a patient.

     D.     <u>Clinical Quality Systems Review Report</u>

     The QRO shall prepare a report based upon each Clinical Quality Systems Review performed (Clinical Quality Systems Review Report).

     1.     The Clinical Quality Systems Report shall set forth, at a minimum:

     a.     a summary of the QRO's activities in conducting the assessment;

     b.     the QRO's findings regarding the effectiveness, reliability, scope, and thoroughness of each of the systems described in Section A of this Appendix;

53

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

    c.      the QRO's recommendations to Providence as to how to improve the effectiveness, reliability, scope, and thoroughness of the systems described in Section III.A of this Appendix; and

    d.      an assessment of Providence's response to the QRO's prior recommendations.

E.    <u>Financial Requirements of Providence and the QRO.</u>

    1.    Providence shall be responsible for all reasonable costs incurred by the QRO in connection with this engagement, including but not limited to labor costs (direct and indirect); consultant and subcontract costs; materials cost (direct and indirect); and other direct costs (travel, other miscellaneous).

    2.    Providence shall pay the QRO's bills within 30 days of receipt. Failure to pay the QRO within 30 calendar days of submission of the QRO's invoice for services previously rendered shall constitute a basis to impose stipulated penalties or exclude Providence, as provided under Section X of this CIA. While Providence must pay all of the QRO's bills within 30 days, Providence may bring any disputed QRO's costs or bills to OIG's attention.

    3.    The QRO shall charge a reasonable amount for its fees and expenses, and shall submit monthly invoices to Provider with a reasonable level of detail reflecting all key category costs billed.

    4.    The QRO shall submit a written report for each Reporting Period representing an accounting of its costs throughout the year to Providence and to OIG by the submission deadline of Providence's Annual Report. This report shall reflect, on a cumulative basis, all key category costs included on monthly invoices.

F.    <u>Additional Providence Requirements.</u>  Providence shall:

    1.    within 30 days after receipt of each Clinical Quality Systems Review Report, submit to OIG and the QRO a written response to each recommendation contained in those reports stating what action Providence took in response to each recommendation or why Providence has not to take action based on the recommendation;

54

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

2.      provide to its Compliance Committee and Board or Board CIA Committee copies of all documents and reports provided to the QRO;

3.      ensure the QRO's immediate access to facilities, Covered Persons, and documents, and assist in obtaining full cooperation by Providence's current employees, contractors, and agents;

4.      provide access to current patients consistent with the rights of such individuals under state or federal law, and not impede their cooperation with the QRO;

5.      not sue or otherwise bring any action against the QRO related to any findings made by the QRO or related to any exclusion or other sanction of Providence under this CIA; provided, however, that this clause shall not apply to any suit or other action based solely on the dishonest or illegal acts of the QRO, whether acting alone or in collusion with others.

G.      <u>Additional QRO Obligations</u>.  The QRO shall:

1.      abide by all State and Federal laws and regulations concerning the privacy, dignity, and employee rights of all Covered Persons and patients;

2.      abide by the legal requirements of Providence to maintain the confidentiality of each patient's personal and clinical records.  Nothing in this subsection, however, shall limit or affect the QRO's obligation to provide information, including information from patient clinical records, to OIG and, when legally or professionally required, to other agencies;

3.      where independently required to do so by applicable law or professional licensing standards, report any finding to an appropriate regulatory or law enforcement authority, and simultaneously submit copies of such reports to OIG and to Providence;

4.      not be bound by any other private or governmental agency's findings or conclusions, including but not limited to the Joint Commission, CMS, or the state survey agency.  Likewise, such private and governmental agencies shall not be bound by the QRO's findings or conclusions.  The QRO's reports

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

shall not be the sole basis for determining deficiencies by the state survey agencies. The parties agree that CMS and its contractors shall not introduce any material generated by the QRO, or any opinions, testimony, or conclusions from the QRO as evidence into any proceeding involving a Medicare or Medicaid survey, certification, or other enforcement action against Providence, and Providence shall similarly be restricted from using material generated by the QRO, or any opinions, testimony, or conclusions from the QRO as evidence in any of these proceedings. Nothing in the previous sentence, however, shall preclude OIG or Providence from using any material generated by the QRO, or any opinions, testimony, or conclusions from the QRO in any action under the CIA or pursuant to any other OIG authorities or in any other situations not explicitly excluded in this subsection;

5.      abide by the provisions of the Health Insurance Portability and Accountability Act (HIPAA) of 1996 to the extent required by law including, without limitation, entering into a business associate agreement with Providence; and

6.      if the QRO has concerns about systemic problems that could affect Providence's ability to render quality care to its patients, then the QRO shall:

a.      report such concerns in writing to OIG; and

b.      simultaneously provide notice and a copy of the report to Providence's Compliance Committee, Clinical Quality Department, and Quality of Care and Patient Safety Committee referred to in Section III.A of this CIA.

*Providence Health & Services - Washington*
*Corporate Integrity Agreement*

1   William A. Gilbert, WSBA #30592
    Gilbert Law Firm, P.S.
2   421 W. Riverside Ave, Suite 353
    Spokane, WA  99201
3   T: 509·321·0750
    F: 509·343·3315
4   E: bill@wagilbert.com
    Attorney for Plaintiffs

5

6

7

8
                                                    The Honorable Tana Lin
9
                  UNITED STATES DISTRICT COURT OF THE WESTERN
10                    DISTRICT OF WASHINGTON AT SEATTLE

11  CAROLINE ANGULO, a single person, ERIC      NO.  22-CV-00915-TL
    KELLER, a single person, and ISABEL
12  LINDSEY and CHARLES LINDSEY, a              **PLAINTIFFS' SECOND
    married couple,                            INTERROGATORIES AND
13                                             REQUESTS FOR PRODUCTION
                                               PROPOUNDED UPON
14              Plaintiffs.                     PROVIDENCE HEALTH &
                                               SERVICES WASHINGTON**
        v.
15
    PROVIDENCE HEALTH & SERVICES
16  WASHINGTON, a non-profit Washington
    Corporation, also d/b/a PROVIDENCE ST.
17  MARY MEDICAL CENTER; Dr. JASON A.
    DREYER, DO, and JANE DOE DREYER,
18  husband and wife and the marital community
    thereof; Dr. DANIEL ELSKENS DO, and
19  JANE DOE ELSKENS, husband and wife and
    the marital community thereof; and
20  JOHN/JANE DOES 1-10, and any marital
    communities thereof,

21              Defendants.

22

23  NO. 22-CV-00915-TL
    PLAINTIFFS' SECOND INTERROGATORIES AND          **GILBERT LAW FIRM, P.S.**
24  REQUESTS FOR PRODUCTION PROPOUNDED              421 W. RIVERSIDE, AVE., SUITE 353
    UPON PROVIDENCE HEALTH & SERVICES                    SPOKANE, WA 99201
    WASHINGTON - PAGE 1 OF 15                    T: (509) 321-0750 • F: (509) 343-3315

1  TO:    PROVIDENCE HEALTH & SERVICES WASHINGTON, a non-profit Washington

2  Corporation, Defendant; and

3  TO:    Kenneth E. Payson, Attorney for Defendant PROVIDENCE HEALTH & SERVICES

4  WASHINGTON.

5  Pursuant to Rules 26, 33 and 34 of the federal rules of civil procedure, plaintiffs submit the

6  following interrogatories and requests for production to be answered separately and fully under

7  oath within thirty (30) days from the date of service of said discovery upon you. In answering this

8  discovery, you are required to furnish such information as is available to you, not merely the

9  information which you know of your personal knowledge. This is intended to include any

10  information in the possession of the agent or attorney or any investigator for the answering party.

11  Respond To:    William A. Gilbert
                    Gilbert Law Firm, P.S.
12                  421 W. Riverside, Ste 353
                    Spokane, WA 99201
13

14  Court rule requires the answers be preceded by questions and thus extra copies of these

15  interrogatories are being served upon you in order to expedite the answering thereof. You may

    type your answers immediately after the question and thus avoid retyping the question.
16

17  If you claim that any information requested is protected from disclosure / discovery by

    privilege or the work product doctrine you must identify such document or thing in your written
18

19  response, giving the following information: (a) date of document; (b) author of document; (c)

20  addressee of document; (d) nature of document; such as memorandum, letter, etc.; (e) anyone who

    has received a copy of the document; and (f) the general subject matter of the document.  You
21

22  must preserve the information stated above as well as the documents themselves in a privilege log.

23  Failure to do so may lead to sanctions or other admonishment by the court.

    NO. 22-CV-00915-TL                                      **GILBERT LAW FIRM, P.S.**
24  PLAINTIFFS' SECOND INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 353
    REQUESTS FOR PRODUCTION PROPOUNDED                        SPOKANE, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES                  T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 2 OF 15

1    **Protective Order:** If you are claiming that any information responsive to these

2    Interrogatories and Requests for Production is confidential or contains information which the

3    defendant claims is proprietary or otherwise requires protection from disclosure to individuals or

4    entities other than the parties to this law suit please confirm with our office as soon as the necessity

5    of a protective order is recognized and an order as stipulated by the parties will be duly entered

6    with the Court prior to dissemination of the information.

7                                **DEFINITIONS**

8        As used herein:

9        **Plaintiff(s)** means Caroline Angulo, Eric Keller, Isabel and Charles Lindsey, and the

10    putative class members known and unknown as identified and outlined in the Complaint.

11        **Defendant** means PROVIDENCE HEALTH & SERVICES WASHINGTON, including

12    d/b/a ST. MARY MEDICAL CENTER (collectively "PROVIDENCE"), its subsidiaries, its

13    employees, agents and assigns, including parties, attorneys, investigators, adjusters, insurance

14    companies or others standing in a representative relationship to Defendant PROVIDENCE.

15    PROVIDENCE also includes the defendant as identified in the Settlement Agreement (see Exhibit

16    2 of the Complaint filed in King County Superior Court on May 16, 2022 in the instant action and

17    as defined below) and as further described in its Corporate Disclosure Statement of June 30, 2022

18    (Docket Entry 2 in the federal removal action).

19        **Settlement Agreement** is the agreement among PROVIDENCE as defined herein and the

20    United States and the State of Washington with an effective date of March 17, 2022, a copy of

21    which is attached as Exhibit 2 to the Complaint.

22

23    NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
      PLAINTIFFS' SECOND INTERROGATORIES AND              421 W. Riverside, Ave., Suite 353
24    REQUESTS FOR PRODUCTION PROPOUNDED                        Spokane, WA 99201
      UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
      WASHINGTON - PAGE 3 OF 15

1      **Recital** refers to the paragraph enumeration within the "Factual Recitals" of the Settlement

2  Agreement.

3      **Yam Litigation** is federal case *Yam v. Providence Health and Services*, 4:20-cv-05004-

4  SMJ, which is identified in Recital G of the Settlement Agreement.

5      **Dates:** Relevant Time Period for discovery is June 2013 through November 2018, and

6  through to the present.

7      **You or Your**:  Means any party to whom these interrogatories are addressed, and your

8  attorneys, agents, employees, officers, representatives, adjusters, investigators, and any other

9  "person" who has knowledge of information, or is in possession of evidence or things, responsive

10  to any request herein.

11      **Knowledge or Information**:  Where knowledge or information in the possession of a party

12  is requested, such request includes knowledge of the party's agents, representatives, employees

13  and, unless privileged, his attorneys. When the answer is made by a corporate defendant, state the

14  name, address and title of the person supplying the information, and title of the person supplying

15  the information, and making the affidavit, and the source of his information.

16      **"Document(s)" or "Information"** means all materials within the scope of Federal Civil

17  Rule of Procedure 34, including, without limitation, all writings, drawings, graphs, charts,

18  photographs, sound recordings, images, and other data or data compilations, including

19  electronically-stored information (ESI), that are stored in any medium whatsoever from which

20  information can be obtained either directly or, if necessary, after translation by the responding

21  party into a reasonably usable form, as well as any tangible things. A draft or non-identical copy

22  of a document is a separate document within the meaning of this term. A document includes all

23

24
  NO. 22-CV-00915-TL
  PLAINTIFFS' SECOND INTERROGATORIES AND
  REQUESTS FOR PRODUCTION PROPOUNDED
  UPON PROVIDENCE HEALTH & SERVICES
  WASHINGTON - PAGE 4 OF 15

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1  appendices, schedules, exhibits, and other attachments. The term "Document(s)" or "Information"

2  includes but is not limited to emails and other types of messages (including but not limited to text,

3  instant, and direct messages), social media or other online content, data generated and stored by

4  devices connected to the Internet of Things (IoT), communications generated and stored in

5  workplace collaboration tools or ephemeral messaging applications, and all associated data and

6  metadata.

7  **Possession or Control**: The act or condition of having in, or taking into one's control or

8  having at one's disposal or the power or authority to access, guide, manage, direct or restrain any

9  document or thing.

10  **"Identify"** with respect to a person means to give, to the extent known, the person's (a)

11  full name; (b) present or last known address; and (c) current or last known place of employment.

12  **"Identify"** with respect to a document means to give, to the extent known, the (a) type of

13  document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and

14  recipient(s). In the alternative, the responding party may produce the documents, together with

15  identifying information sufficient to satisfy FRCP 33.

16  **"Identify"** with respect to communications means to give, to the extent known, (a) a

17  description of the substance of the communication; (b) the form of the communication (e.g.,

18  telephone, facsimile, email, etc.); (c) the identity of all parties to and/or present at the time of the

19  communication, as well as the full name, present or last known address, and the current or last

20  known place of employment of each person; (d) the identity of the person whom you contend

21  initiated the communication; and (e) the time, date, and place of the communication.

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' SECOND INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 5 OF 15

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 353
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **"Person"** means any natural person or any legal entity, including, without limitation, any

2    business or governmental entity, organization, or association.

3    **Archive**:  Means the storage of any electronically produced material that has been down

4    loaded or backed-up from any of the Defendant's computers, or servers, or a copy of data on a

5    computer drive, or on a portion of a drive, or on any other storage media readily accessible that is

6    maintained for historical reference.

7    **Backup**:  A copy of active data, intended for use in restoration of data – the downloading

8    of information stored in computer or server hard drives, soft discs, CD ROMS, or tapes onto

9    storage discs, tapes or CD-ROM for the purpose of preserving that data.

10    **Computer**: Includes but is not limited to network servers, desktops, laptops, notebook

11    computers, employees' home computers, mainframes, PDAs, smartphones, BlackBerry devices

12    and pagers.

13    **Data**:  Any and all information stored on media that may be accessed by a computer.

14    **E-mail**: Means electronically transmitted messages sent from one computer to another

15    computer or a series of computers by a person or persons. Deleted E-mail data remains in the

16    computer system storage drive until the system runs out of space for the data. This material is

17    retrievable and any request for E-mail should include deleted material retrieved from the

18    computer's storage system.

19    **Electronic Message:** any form of electronic messaging, including but not limited to text,

20    instant; direct messages; Facebook Messenger; Snapchat; Twitter; etc.

21    **Investigate**: Means to inquire into.  As in *inquiring* into allegations, concerns, or issues

22    presented by employees, agents or assigns of Defendant.

23    NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' SECOND INTERROGATORIES AND          421 W. RIVERSIDE, AVE., SUITE 353
24    REQUESTS FOR PRODUCTION PROPOUNDED                    SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES            T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 6 OF 15

1    **Media**: Means the method of creating and storing electronically transmitted data; i.e. hard

2    drive; floppy disc; compact disc, server, etc.

3    **Metadata**: That electronic data associated with the responsive data – i.e.: ancillary

4    electronic information that relates to electronic data, such as information that would indicate

5    whether and when the responsive electronic data was created, edited, sent, received and/or opened.

6    Typically referred to as the data that provides all relevant information about the data (document).

7    **"Audit Trail" or "Audit Log":**  An audit log or audit trail is a security-relevant

8    chronological record that provides documentary evidence of, among other events, who accessed

9    an electronic medical record system, when they accessed it, from where, and exactly what they

10   did, such as enter new data, modify or remove existing data, view a part of the chart, obtain a

11   printout, etc. If "You" are using EMR / EHR records systems, you are required to have security

12   systems in place to access this information.

13   **"Revision History":** used to evaluate changes made in the medical record over time

14   (comparable to the Microsoft Word "track changes" feature). It is a chronological listing of

15   document versions or data versions showing the changes over time.

16   **Personnel Files**:  Documents, whether stored in physical form, such as in paper files or

17   electronically, such as on computer disk or hard drive or computer server, which in any way reflect

18   the employment history, employment status, work assignments, credentialing, compensation,

19   supervisory relationships, promotion, reassignment, discipline, and termination, for whatever

20   reason, of the named individual for which they are requested. Any request for personnel files

21   encompasses all files maintained at all locations that collectively reflect the employment history

22

23   NO. 22-CV-00915-TL
     PLAINTIFFS' SECOND INTERROGATORIES AND
24   REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 7 OF 15

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT B
7 of 15

1 of the named individual, including files maintained at locations others than Defendant's facilities

2 where the named individual was employed.

3     **Possession or Control**: The act or condition of having in, or taking into one's control or

4 having at one's disposal or the power or authority to access, guide, manage, direct or restrain any

5 document or thing.

6     **"Relate" "related"** or **"relating"** means, in addition to their usual and customary

7 meanings, concerning, referring to, reflecting, regarding, pertaining to, addressing, discussing,

8 alluding to, describing, evidencing, constituting, or otherwise having any logical or factual

9 connection with the subject matter addressed.

10     The words **"and"** and **"or"** shall be construed disjunctively or conjunctively to bring

11 within the scope of each interrogatory all responses which otherwise might be construed to be

12 outside the scope of an interrogatory.

13     The word **"any"** shall be construed to include "all" and vice versa.

14     The word **"each"** shall be construed to include "every" and vice versa.

15     **All other terms used herein are common usage. If you have any questions or concerns**

16 **about any definitions of any terms contained herein, please contact our office at once to clear**

17 **up any confusion.**

18     The undersigned certifies pursuant to the FRCP 26(g) that this Discovery is propounded in

19 good faith pursuant to the rules of civil procedure.

20 //

21 //

22 //

23

24
NO. 22-CV-00915-TL
PLAINTIFFS' SECOND INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 8 OF 15

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    Dated this 2nd day of September 2022.

2                                              GILBERT LAW FIRM, P.S.

3

4                                              _____
                                               WILLIAM A. GILBERT, WSBA # 30592
5                                              Attorney for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   NO. 22-CV-00915-TL
     PLAINTIFFS' SECOND INTERROGATORIES AND              GILBERT LAW FIRM, P.S.
24   REQUESTS FOR PRODUCTION PROPOUNDED                  421 W. RIVERSIDE, AVE., SUITE 353
     UPON PROVIDENCE HEALTH & SERVICES                   SPOKANE, WA 99201
     WASHINGTON - PAGE 9 OF 15                           T: (509) 321-0750 • F: (509) 343-3315

1          **INTERROGATORIES AND REQUESTS FOR PRODUCTION**

2          **REQUEST FOR PRODUCTION NO. 1:**  In the first set of interrogatories and requests

3      for documents propounded on or about July 22, 2022, Plaintiffs asked Defendant for production

4      of documents related to the audit report, due 90 days after execution of the Settlement Agreement,

5      or sometime in June 2022.  *Please see the Settlement Agreement at paragraph 11(c) regarding the*

6      *due date for this audit of "Unallowable Costs" as defined in the Settlement Agreement at*

7      *paragraph 11. See also the option Interrogatory No. 1 and, e.g., Requests for Production Nos. 1*

8      *and 2 in the first set of discovery propounded upon Defendant on or about July 22, 2022.*

9          <u>**Please produce the results of this audit, as already requested.**</u>

10         **RESPONSE:**

11

12

13

14

15

16

17

18

19

20

21

22

23     NO. 22-CV-00915-TL
       PLAINTIFFS' SECOND INTERROGATORIES AND
24     REQUESTS FOR PRODUCTION PROPOUNDED
       UPON PROVIDENCE HEALTH & SERVICES
       WASHINGTON - PAGE 10 OF 15

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **REQUEST FOR PRODUCTION NO. 2:**  On or about August 15, 2022, you submitted

2    a declaration from Mary Crawford in which Ms. Crawford alleges the review, gathering, and/or

3    investigation of documents by her and by others, from which she reaches certain conclusions.

4    <u>**Please produce copies of the documents, including patient records, from which the**</u>

5    <u>**Mary Crawford declaration was prepared**</u>.

6    **RESPONSE:**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' SECOND INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 11 OF 15

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

## CERTIFICATION OF COUNSEL

2    ANSWERS AND OBJECTIONS SUBMITTED this _____ day of _____, 2022.

3    The undersigned attorney has read the foregoing responses to these discovery requests, and they

4    comply with FRCP 26(g).

5    DATED this _____ day of _____, 2022.

6    Davis Wright Tremaine LLP
     Attorneys for Defendant Providence Health &
7    Services – Washington

8    By s/ Kenneth E. Payson_____
     Kenneth E. Payson, WSBA #26369
9    Ross Siler, WSBA #46486
     Olivia Powar, WSBA #59504
10   920 Fifth Avenue, Suite 3300
     Seattle, WA 98104-1610
11   Telephone: (206) 622-3150
     Fax: (206) 757-7700
12   Email: kenpayson@dwt.com
     ross.siler@dwt.com
13   oliviapower@dwt.com

14   Lewis Brisbois Bisgaard & Smith LLP
     Attorneys for Defendant Providence Health &
15   Services – Washington

16   By s/ Jennifer K. Oetter
     Jennifer K. Oetter, WSBA #26140
17   888 SW Fifth Avenue, Suite 900
     Portland, OR 97204
18   Telephone: (971) 712-2800
     Fax: (971) 712-2801
19   Email: jennifer.oetter@lewisbrisbois.com

20

21

22

23   NO. 22-CV-00915-TL
     PLAINTIFFS' SECOND INTERROGATORIES AND
24   REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 12 OF 15

     **GILBERT LAW FIRM, P.S.**
     421 W. RIVERSIDE, AVE., SUITE 353
     SPOKANE, WA 99201
     T: (509) 321-0750 • F: (509) 343-3315

**CERTIFICATION OF DEFENDANT PROVIDENCE HEALTH & SERVICES WASHINGTON ALSO D/B/A ST MARY MEDICAL CENTER ("PROVIDENCE")**

_____, being first duly sworn on oath, deposes and says: I am the designated speaking agent for Providence Health & Services Washington with authority to bind Providence Health & Services Washington by my signature herein. I have read the above and foregoing responses thereto, know the contents thereof, have done my due diligence in researching the responses, and believe the same to be true, correct, and complete.

_____

SUBSCRIBED AND SWORN to before me this _____ Day of _____, 2022.

_____
(Notary Signature)

_____
(Type or Print Name of Notary)
NOTARY PUBLIC for the State of
Washington, residing at _____
My appointment expires: _____

NO. 22-CV-00915-TL
PLAINTIFFS' SECOND INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 13 OF 15

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 353
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

## CERTIFICATE OF SERVICE

2    The undersigned hereby certifies under penalty of perjury under the laws of the state of

3    Washington, that I am now, and at all times material hereto, a citizen of the United States, a resident

4    of the state of Washington, over the age of 18 years, not a party to, nor interested in the above-

5    entitled action, and competent to be a witness herein. I caused to be served on this date the

6    foregoing document in the manner indicated to the parties listed below:

7    ***Counsel for Defendants Dr. Jason A.***
     ***Dreyer, DO and Jane Doe Dreyer:***

8

9    Ryan M. Beaudoin, WSBA #30598          ☐   **HAND DELIVERY**
     Jeffrey R. Galloway, WSBA #44059       ☐   **U.S. FIRST CLASS MAIL**
     WITHERSPOON BRAJCICH MCPHEE,           ☒   **U.S. PRIORITY MAIL**
10   PLLC                                   ☐   **ELECTRONIC MAIL**
     601 W Main, Ste. 1400
11   Spokane, WA 99201
     rbeaudoin@workwith.com
12   jgalloway@workwith.com

13   ***Counsel for Defendants Dr. Daniel***
     ***Elskens, DO and Jane Doe Elskens:***

14

15   Stephen M. Lamberson, WSBA #12985      ☐   **HAND DELIVERY**
     Ronald A. Van Wert, WSBA #32050        ☐   **U.S. FIRST CLASS MAIL**
     ETTER, MCMAHON, LAMBERSON,             ☒   **U.S. PRIORITY MAIL**
16   VAN WERT & ORESKOVICH, P.C.            ☐   **ELECTRONIC MAIL**
     618 W. Riverside Ave., Ste. 210
17   Spokane, WA 99201
     lambo@ettermcmahon.com
18   rvw@ettermcmahon.com

19

20

21

22

23   NO. 22-CV-00915-TL                          **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' SECOND INTERROGATORIES AND      421 W. RIVERSIDE, AVE., SUITE 353
24   REQUESTS FOR PRODUCTION PROPOUNDED                  SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES       T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 14 OF 15

1

*Co-Counsel for Defendant Providence Health & Services Washington:*

2

3    Kenneth E. Payson, WSBA #26369    ☐ **HAND DELIVERY**
     Ross Siler, WSBA #46486            ☐ **U.S. FIRST CLASS MAIL**
     Olivia Powar, WSBA #59504         ☒ **U.S. PRIORITY MAIL**

4    DAVIS WRIGHT TREMAINE LLP          ☐ **ELECTRONIC MAIL**
     920 Fifth Ave., Ste. 3300

5    Seattle, WA 98104-1610
     kenpayson@dwt.com

6    ross.siler@dwt.com
     oliviapowar@dwt.com

7

*Co-Counsel for Defendant Providence Health & Services Washington:*

8

9    Jennifer K. Oetter, WSBA #26140    ☐ **HAND DELIVERY**
     LEWIS BRISBOIS BISGAARD & SMITH    ☐ **U.S. FIRST CLASS MAIL**

10   LLP                                ☒ **U.S. PRIORITY MAIL**
     888 SW Fifth Ave., Ste. 900        ☐ **ELECTRONIC MAIL**

11   Portland, OR 97204-2025
     jennifer.oetter@lewisbrisbois.com

12
     DATED this 2nd day of September 2022.

13

14   _____

15   JOEL CHAVEZ, Case Manager

16

17

18

19

20

21

22

23   NO. 22-CV-00915-TL                          **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' SECOND INTERROGATORIES AND       421 W. RIVERSIDE, AVE., SUITE 353
24   REQUESTS FOR PRODUCTION PROPOUNDED                 SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES         T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 15 OF 15

1    William A. Gilbert, WSBA #30592
Gilbert Law Firm, P.S.
2    421 W. Riverside Ave, Suite 353
Spokane, WA 99201
3    T: 509·321·0750
F: 509·343·3315
4    E: bill@wagilbert.com
Attorney for Plaintiffs

5

6

7

8

9          UNITED STATES DISTRICT COURT OF THE WESTERN
10              DISTRICT OF WASHINGTON AT SEATTLE

11   CAROLINE ANGULO et al.,                    NO. 22-CV-00915-TL

12                      Plaintiffs.             **PLAINTIFFS' THIRD
                                                INTERROGATORIES AND
              v.                                REQUESTS FOR PRODUCTION
13                                              PROPOUNDED UPON
     PROVIDENCE HEALTH & SERVICES               PROVIDENCE HEALTH &
14   WASHINGTON, a non-profit Washington        SERVICES WASHINGTON**
     Corporation, also d/b/a PROVIDENCE ST.
15   MARY MEDICAL CENTER; Dr. JASON A.
     DREYER, DO, and JANE DOE DREYER,
16   husband and wife and the marital community
     thereof; Dr. DANIEL ELSKENS DO, and
17   JANE DOE ELSKENS, husband and wife and
     the marital community thereof; and
18   JOHN/JANE DOES 1-10, and any marital
     communities thereof,
19
                       Defendants.
20
     TO:     PROVIDENCE HEALTH & SERVICES WASHINGTON, a non-profit Washington
21
             Corporation, Defendant; and
22

23   NO. 22-CV-00915-TL                              **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' THIRD INTERROGATORIES AND           421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED               SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES               T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 1 OF 24

EXHIBIT C
1 of 38

1    TO:     Kenneth E. Payson, Attorney for Defendant PROVIDENCE HEALTH & SERVICES

2            WASHINGTON.

3            Pursuant to Rules 26, 33 and 34 of the federal rules of civil procedure, plaintiffs submit the

4    following interrogatories and requests for production to be answered separately and fully under

5    oath within thirty (30) days from the date of service of said discovery upon you. In answering this

6    discovery, you are required to furnish such information as is available to you, not merely the

7    information which you know of your personal knowledge. This is intended to include any

8    information in the possession of the agent or attorney or any investigator for the answering party.

9            Respond To:    William A. Gilbert
                            Gilbert Law Firm, P.S.
10                          421 W. Riverside, Ste 1400
                            Spokane, WA 99201

11

12           Court rule requires the answers be preceded by questions and thus extra copies of these

     interrogatories are being served upon you in order to expedite the answering thereof. You may
13
     type your answers immediately after the question and thus avoid retyping the question.
14
             If you claim that any information requested is protected from disclosure / discovery by
15
     privilege or the work product doctrine you must identify such document or thing in your written
16
     response, giving the following information: (a) date of document; (b) author of document; (c)
17
     addressee of document; (d) nature of document; such as memorandum, letter, etc.; (e) anyone who
18
     has received a copy of the document; and (f) the general subject matter of the document.  You
19
     must preserve the information stated above as well as the documents themselves in a privilege log.
20
     Failure to do so may lead to sanctions or other admonishment by the court.
21
             **Protective Order:**    If you are claiming that any information responsive to these
22
     Interrogatories and Requests for Production is confidential or contains information which the
23
     NO. 22-CV-00915-TL                                          **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' THIRD INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                          SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES                  T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 2 OF 24

EXHIBIT C
2 of 38

1   defendant claims is proprietary or otherwise requires protection from disclosure to individuals or

2   entities other than the parties to this law suit please confirm with our office as soon as the necessity

3   of a protective order is recognized and an order as stipulated by the parties will be duly entered

4   with the Court prior to dissemination of the information.

5                                    **DEFINITIONS**

6       As used herein:

7       **Plaintiff(s)** means the plaintiffs named in the Fourth Amended Complaint and the all

8   proposed class members, known and unknown, as identified and outlined in the Complaint.

9       **Defendant** means PROVIDENCE HEALTH & SERVICES WASHINGTON, including

10  d/b/a ST. MARY MEDICAL CENTER (collectively "PROVIDENCE"), its subsidiaries, its

11  employees, agents and assigns, including parties, attorneys, investigators, adjusters, insurance

12  companies or others standing in a representative relationship to Defendant PROVIDENCE.

13  PROVIDENCE also includes the defendants as identified in the Settlement Agreement (see

14  Exhibit 2 of the Fourth Amended Complaint) and as further described in its Corporate Disclosure

15  Statements (Docket Entry Nos. 2 and 64).

16      **Settlement Agreement** is the agreement among PROVIDENCE as defined herein and the

17  United States and the State of Washington with an effective date of March 17, 2022, a copy of

18  which is attached as Exhibit 2 to the Fourth Amended Complaint.

19      **Recital** refers to the paragraph enumeration within the "Factual Recitals" of the Settlement

20  Agreement.

21      **Yam Litigation** or **Providence qui tam action** is the federal case *Yam v. Providence

22  Health and Services*, 4:20-cv-05004-SMJ, identified in Recital G of the Settlement Agreement.

23

24

NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
PLAINTIFFS' THIRD INTERROGATORIES AND                 421 W. RIVERSIDE, AVE., SUITE 1400
REQUESTS FOR PRODUCTION PROPOUNDED                    SPOKANE, WA 99201
UPON PROVIDENCE HEALTH & SERVICES                     T: (509) 321-0750 • F: (509) 343-3315
WASHINGTON - PAGE 3 OF 24

EXHIBIT C
3 of 38

1    **Dates:** Relevant Time Period for discovery is June 2013 through November 2018, and

2    through to the present.

3    **You or Your**:   Means any party to whom these interrogatories are addressed, and

4    Providence's attorneys, agents, employees, officers, representatives, adjusters, investigators, and

5    any other "person" who has knowledge of information, or is in possession of evidence or things,

6    responsive to any request herein. Including, but not limited to the following which Providence has

7    identified as its present or former employees: Dr. Timothy Davidson, Dr. Dean Martz, Sean

8    Douglas, David McKay, Lori Asmus, Tina Crawford, Stacy Olson, Susan Towner, Joel

9    Wasserman, Shannon Lane, Poppy McGuire, Cathy Nicol, Marc Sowder, Scott O'Brien,

10   Christopher Hall, Michael Waters, Steve Burdick, Martin Benning, Becky Cameron, Mary

11   Crawford, Desiree Patzer, Wanda Paisano (Deceased) By deposition only, Susan Blackburn, Perry

12   Camp, Dr. Dreyer, Dr. Elskens, Dr. Yam, Dr. Smith, all current or former Providence employees

13   listed in Providence's Initial Disclosures dated September 9, 2024, all current or former Providence

14   employees that Providence may call to address the topics listed in Paragraph B.15 of Providence's

15   initial disclosures, current or former Providence employees that Providence may call to address

16   the topics lists in Paragraph C of Providence's initial disclosures, and current or former Providence

17   employees that Providence may call to address its defenses or affirmative defenses.

18   **Knowledge or Information**: Where knowledge or information in the possession of a party

19   is requested, such request includes knowledge of the party's agents, representatives, employees

20   and, unless privileged, his attorneys. When the answer is made by a corporate defendant, state the

21   name, address and title of the person supplying the information, and title of the person supplying

22   the information, and making the affidavit, and the source of his information.

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 4 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
4 of 38

**"Document(s)" or "Information"** means all materials within the scope of Federal Civil Rule of Procedure 34, including, without limitation, all writings, drawings, graphs, charts, photographs, sound recordings, spreadsheets, images, and other data or data compilations, including electronically-stored information (ESI), that are stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, as well as any tangible things. A draft or non-identical copy of a document is a separate document within the meaning of this term. A document includes all appendices, schedules, exhibits, and other attachments. The term "Document(s)" or "Information" includes but is not limited to emails and other types of messages (including but not limited to text, instant, and direct messages), social media or other online content, data generated and stored by devices connected to the Internet of Things (IoT), communications generated and stored in workplace collaboration tools or ephemeral messaging applications, and all associated data and metadata.

**Possession or Control**: The act or condition of having in, or taking into one's control or having at one's disposal or the power or authority to access, guide, manage, direct or restrain any document or thing.

**"Identify"** with respect to a person means to give, to the extent known, the person's (a) full name; (b) present or last known address; and (c) current or last known place of employment.

**"Identify"** with respect to a document means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy FRCP 33.

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 5 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
5 of 38

**"Identify"** with respect to communications means to give, to the extent known, (a) a description of the substance of the communication; (b) the form of the communication (e.g., telephone, facsimile, email, etc.); (c) the identity of all parties to and/or present at the time of the communication, as well as the full name, present or last known address, and the current or last known place of employment of each person; (d) the identity of the person whom you contend initiated the communication; and (e) the time, date, and place of the communication.

**"Person"** means any natural person or any legal entity, including, without limitation, any business or governmental entity, organization, or association.

**Archive**:  Means the storage of any electronically produced material that has been downloaded or backed up from any of the Defendant's computers, or servers, or a copy of data on a computer drive, or on a portion of a drive, or on any other storage media readily accessible that is maintained for historical reference.

**Backup**:  A copy of active data, intended for use in restoration of data – the downloading of information stored in computer or server hard drives, soft discs, CD ROMS, or tapes onto storage discs, tapes or CD-ROM for the purpose of preserving that data.

**Computer**: Includes but is not limited to network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, PDAs, smartphones, BlackBerry devices and pagers.

**Data**:  Any and all information stored on media that may be accessed by a computer.

**E-mail**: Means electronically transmitted messages sent from one computer to another computer or a series of computers by a person or persons. Deleted E-mail data remains in the computer system storage drive until the system runs out of space for the data. This material is

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 6 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
6 of 38

1    retrievable and any request for E-mail should include deleted material retrieved from the

2    computer's storage system.

3        **Electronic Message:** any form of electronic messaging, including but not limited to text,

4    instant; direct messages; Facebook Messenger; Snapchat; Twitter; etc.

5        **Investigate**: Means to inquire into.  As in *inquiring* into allegations, concerns, or issues

6    presented by employees, agents or assigns of Defendant.

7        **Media**: Means the method of creating and storing electronically transmitted data; i.e. hard

8    drive; floppy disc; compact disc, server, etc.

9        **Metadata**: That electronic data associated with the responsive data – i.e.: ancillary

10   electronic information that relates to electronic data, such as information that would indicate

11   whether and when the responsive electronic data was created, edited, sent, received and/or opened.

12   Typically referred to as the data that provides all relevant information about the data (document).

13       **"Audit Trail" or "Audit Log"**:  An audit log or audit trail is a security-relevant

14   chronological record that provides documentary evidence of, among other events, who accessed

15   an electronic medical record system, when they accessed it, from where, and exactly what they

16   did, such as enter new data, modify or remove existing data, view a part of the chart, obtain a

17   printout, etc. If "You" are using EMR / EHR records systems, you are required to have security

18   systems in place to access this information.

19       **"Revision History"**: used to evaluate changes made in the medical record over time

20   (comparable to the Microsoft Word "track changes" feature). It is a chronological listing of

21   document versions or data versions showing the changes over time.

22

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' THIRD INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                        SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 7 OF 24

EXHIBIT C
7 of 38

1    **Personnel Files**:  Documents, whether stored in physical form, such as in paper files or

2    electronically, such as on computer disk or hard drive or computer server, which in any way reflect

3    the employment history, employment status, work assignments, credentialing, compensation,

4    supervisory relationships, promotion, reassignment, discipline, and termination, for whatever

5    reason, of the named individual for which they are requested. Any request for personnel files

6    encompasses all files maintained at all locations that collectively reflect the employment history

7    of the named individual, including files maintained at locations others than Defendant's facilities

8    where the named individual was employed.

9    **Possession or Control**: The act or condition of having in, or taking into one's control or

10    having at one's disposal or the power or authority to access, guide, manage, direct or restrain any

11    document or thing.

12    **"Relate" "related"** or **"relating"** means, in addition to their usual and customary

13    meanings, concerning, referring to, reflecting, regarding, pertaining to, addressing, discussing,

14    alluding to, describing, evidencing, constituting, or otherwise having any logical or factual

15    connection with the subject matter addressed.

16    Additional definitions include:

17    **"RVU"** means the productivity metric known as the Relative Value Unit as referenced and

18    explained at, e.g., Paragraph C of the Settlement Agreement defined above, and includes wRVUs

19    (work), peRVUs (practice expense) and mRVUs (malpractice).

20    **"MultiCare"** or **"MultiCare Health Systems"** means MultiCare Health Systems, with

21    headquarters in Tacoma, Washington, its subsidiaries, its employees, agents and assigns, including

22    parties, attorneys, investigators, adjusters, insurance companies or others standing in a

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 8 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
8 of 38

representative relationship to MultiCare, including MultiCare entities located in Spokane, Washington, e.g., MultiCare / Deaconess, MultiCare / Rockwood Clinic, and MultiCare / Valley Hospital.

**"Medtronic"** or **"Medtronic USA Inc."** means the medical device company headquartered in Minneapolis, Minnesota, its subsidiaries, its employees, agents and assigns, including parties, attorneys, investigators, adjusters, insurance companies or others standing in a representative relationship to Medtronic, including Medtronic representatives servicing Eastern Washington.

**"Spreadsheets"** is included within the definition of "documents" above and means, in in addition to its usual and customary meaning, the collection of data or information using computer programs such as, but not limited to, .xlsx, as a tool to store, manipulate and analyze data, usually arranged in tows and columns of a grid, typically found in electronic form and convertible to .pdf.

**"Health Care Benefits Program"** means as defined in 18 U.S.C. § 24(b).

The **"National Practitioner's Data Bank"** means as it is described in 45 C.F.R. § 60.11(b).

The **"Washington State Department of Health," "WDOH," "DOH,"** or **"MQAC"** means, interchangeably, the State of Washington's Department of Health, the Washington State Medical Commission, and/or the Washington State Medical Quality and Care Commission, to include all investigative arms including, without limitation, the Office of Health Systems Oversight and the Board of Osteopathic Medicine and Surgery, as well as investigators, agents, employees of any of these named entities.

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 9 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
9 of 38

1    The words **"and"** and **"or"** shall be construed disjunctively or conjunctively to bring

2    within the scope of each interrogatory all responses which otherwise might be construed to be

3    outside the scope of an interrogatory.

4    The word **"any"** shall be construed to include "all" and vice versa.

5    The word **"each"** shall be construed to include "every" and vice versa.

6    **All other terms used herein are common usage. If you have any questions or concerns**

7    **about any definitions of any terms contained herein, please contact our office at once to clear**

8    **up any confusion.**

9    The undersigned certifies pursuant to the FRCP 26(g) that this Discovery is propounded in

10   good faith pursuant to the rules of civil procedure.

11   //

12   Dated this 26th day of September 2024.

13                                GILBERT LAW FIRM, P.S.

14

15                                _____

16                                WILLIAM A. GILBERT, WSBA # 30592
                                  Attorney for Plaintiffs

17

18

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 10 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
10 of 38

1

**INTERROGATORIES AND REQUESTS FOR PRODUCTION**

2     **REQUEST FOR PRODUCTION NO. 21:[1]**  Produce a copy of any documents gathered

3 or produced or created, including but not limited to depositions transcripts and exhibits to

4 depositions, and documents provided in response to Requests for Production Propounded Upon

5 Providence in *Cyde M. Estes v Providence Health & Services and Jason Dreyer* Eastern District

6 of Washington Cause No. *4:21-cv-5042* matter as well as in *Deanette and Richard Palmer v. Jason*

7 *Dreyer, MultiCare Health Systems, and Providence Health & Services*, Spokane County Superior

8 Court Case No. 21-2-01299-32 and in *Isabel and Charles Lindsey v. MultiCare Health Systems,*

9 *Providence Health & Services Washington and Jason Dreyer*, Spokane County Superior Court

10 Case No. 23-2-04365-32. These documents are already in the possession or control of the

11 Plaintiffs, Providence, and Dr. Dreyer, and can be distributed to Dr. Daniel Elskens as agreed upon.

12     **RESPONSE:**

13

14

15

16     **REQUEST FOR PRODUCTION NO. 22:** All documents related to the possibility of

17 reporting Dr. Jason A. Dreyer to the Justice Department for insurance fraud, including but not

18 limited to the text message of July 11, 2018 from Dr. Yam to Dr. Dreyer addressing this issue, a

19 _____

20 [1] In 2022, Plaintiffs propounded a total of 20 requests for production of documents in two sets of
21 discovery. The second set of discovery, requesting two RFPs, numbered those requests 1 and 2
rather than 19 and 20. In an effort to put the numbering system back in sync, Plaintiffs begin this
22 third set of discovery with RFP No. 21. Interrogatory requests will start at Interrogatory No. 2,
since the 2022 requests had only one interrogatory listed.

23     NO. 22-CV-00915-TL                          **GILBERT LAW FIRM, P.S.**
PLAINTIFFS' THIRD INTERROGATORIES AND     421 W. RIVERSIDE, AVE., SUITE 1400
24 REQUESTS FOR PRODUCTION PROPOUNDED            SPOKANE, WA 99201
UPON PROVIDENCE HEALTH & SERVICES     T: (509) 321-0750 • F: (509) 343-3315
WASHINGTON - PAGE 11 OF 24

EXHIBIT C
11 of 38

1    copy of which is Exhibit A, and all documents of the identified Dr. Smith on this issue.

2        **RESPONSE:**

3

4

5

6        **REQUEST FOR PRODUCTION NO. 22.**  All documents relating to a Neurosurgery

7    Compensation Review for any year in which Dr. Dreyer was a Providence neurosurgeon, including

8    but not limited to the 2014 Neurosurgeon Compensation Review which is attached as Exhibit B.

9        **RESPONSE:**

10

11

12        **REQUEST FOR PRODUCTION NO. 23:** All of the reports and spreadsheets that

13    Dreyer provided to the finance committee and Providence also d/b/a St. Mary Medical Center. It

14    is anticipated that these spreadsheets were provided between the years 2014 and 2019 and will

15    relate to Dr. Dreyer's RVU production and/or RVU production in general.

16        **RESPONSE:**

17

18

19

20        **REQUEST FOR PRODUCTION NO. 24:** All Fee Tickets as described by Dr. Jason

21    Dreyer in the Jason Dreyer to Poppy McGuire email, dated June 30, 2015, attached as Exhibit C.

22        **RESPONSE**:

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 12 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
12 of 38

1

2

3      **REQUEST FOR PRODUCTION NO. 25:** Produce all documents relating to RVU

4   calculations for employees Dr. Dreyer or Dr. Elskens at Providence, including but not limited to

5   spreadsheets authored by You, by Dr. Dreyer, by Dr. Elskens, or by Poppy McGuire.

6      **RESPONSE**:

7

8

9

10

11     **REQUEST FOR PRODUCTION NO. 26:** Produce all documents relating to RVU

12  calculations for employee Dr. Dreyer at MultiCare.

13     **RESPONSE**:

14

15

16

17

18     **REQUEST FOR PRODUCTION NO. 27:** Produce all documents relating to RVU

19  calculations for Dr. Dreyer referring or relating to Medtronic.

20     **RESPONSE**:

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 13 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
13 of 38

1    **REQUEST FOR PRODUCTION NO. 28:** Produce all spreadsheets relating to RVUs

2    for Dr. Dreyer or for Dr. Elskens claimed, earned, disallowed, compensated, or submitted for

3    reimbursement by a health care benefits program.

4    **RESPONSE**:

5

6

7

8

9    **REQUEST FOR PRODUCTION NO. 29:** Produce all documents related to employee

10   compensation derived from, or affected by, RVUs generated by Dr. Dreyer, including but not

11   limited to the compensation of managers, superiors, supervisors, subordinates, or staff.

12   **RESPONSE**:

13

14

15

16

17   **REQUEST FOR PRODUCTION NO. 30:** Produce all claims submitted to a health care

18   benefit program for reimbursement for medical services of Dr. Dreyer or Dr. Elskens.

19   **RESPONSE**:

20

21

22

23   NO. 22-CV-00915-TL
     PLAINTIFFS' THIRD INTERROGATORIES AND
24   REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 14 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
14 of 38

1    **REQUEST FOR PRODUCTION NO. 31:** Produce all documents relating to any denial

2    of insurance coverage for a patient of Dr. Dreyer or Dr. Elskens, including but not limited to any

3    accounting, report, or audit of such denials, and any notification from health care benefit

4    program.

5    **RESPONSE**:

6

7

8

9

10    **REQUEST FOR PRODUCTION NO. 32:** Produce all documents referring to the

11    compensation of Dr. Dryer based upon RVUs.

12    **RESPONSE**:

13

14

15

16

17    **REQUEST FOR PRODUCTION NO. 33:** Produce all documents referring to the

18    compensation of Dr. Elskens based upon RVUs.

19    **RESPONSE**:

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 15 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
15 of 38

1

2          **REQUEST FOR PRODUCTION NO. 34:** Produce all documents referring to the

3    revenue obtained by Providence from RVUs related to Dr. Dreyer, including but not limited to

4    documents like the acute Direct Margin Analysis Report run on December 13, 2023 and

5    identified as Douglas Deposition Exhibit 5 (from the *Estes* case) and the Providence St. Mary

6    Medical Center Dr. Dreyer Profitability document identified as Douglas Deposition Exhibit 6.

7          **RESPONSE**:

8

9

10

11

12         **REQUEST FOR PRODUCTION NO. 35:** Produce all documents referring to the

13    number and value of wRVUs, peRVUs, and mRVUs reimbursed to Providence based upon

14    surgeries performed by Dr. Dreyer.

15         **RESPONSE**:

16

17

18

19

20         **REQUEST FOR PRODUCTION NO. 36:** Produce all documents referring to the

21    number and value of wRVUs, peRVUs, and mRVUs reimbursed to Providence based upon

22    surgeries performed by Dr. Elskens.

23    NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
      PLAINTIFFS' THIRD INTERROGATORIES AND           421 W. Riverside, Ave., Suite 1400
24    REQUESTS FOR PRODUCTION PROPOUNDED                     Spokane, WA 99201
      UPON PROVIDENCE HEALTH & SERVICES        T: (509) 321-0750 • F: (509) 343-3315
      WASHINGTON - PAGE 16 OF 24

EXHIBIT C
16 of 38

1          **RESPONSE**:

2

3

4

5

6          **REQUEST FOR PRODUCTION NO. 37:**  Produce all documents related to caps for

7  RVU-related compensation, including but not limited to documents discussing the use or value

8  of such caps.

9          **RESPONSE**:

10

11

12

13

14          **REQUEST FOR PRODUCTION NO. 38:**  Produce all documents sent to or received

15  from Dr. Dreyer relating to RVUs.

16          **RESPONSE**:

17

18

19

20

21          **REQUEST FOR PRODUCTION NO. 39:**  Produce all documents sent to or received

22  from Dr. Elskens relating to RVUs.

23
NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 17 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
17 of 38
24

1      **RESPONSE**:

2

3

4

5

6      **REQUEST FOR PRODUCTION NO. 40:** Produce all documents received from

7   Providence employees about Dr. Dreyer's RVUs, including but not limited to Dr. Yam, Poppy

8   McGuire, or Dr. Smith.

9      **RESPONSE**:

10

11

12

13

14     **REQUEST FOR PRODUCTION NO. 41:** Produce all documents received from

15  Providence employees about Dr. Elskens' RVUs.

16     **RESPONSE**:

17

18

19

20

21     **REQUEST FOR PRODUCTION NO. 42:** Produce all documents relating to the

22  compensation of Dr. Dreyer.

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 18 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
18 of 38

1          **RESPONSE**:

2

3

4

5

6          **REQUEST FOR PRODUCTION NO. 43:** Produce all documents relating to the

7    compensation of Dr. Elskens.

8          **RESPONSE**:

9

10

11

12

13          **REQUEST FOR PRODUCTION NO. 44:** Produce all documents relating to the

14    possibility of reporting Dr. Dreyer to federal health authorities, including but not limited to the

15    National Practitioner's Data Bank.

16          **RESPONSE**:

17

18

19

20

21

22

23    NO. 22-CV-00915-TL                                              **GILBERT LAW FIRM, P.S.**
      PLAINTIFFS' THIRD INTERROGATORIES AND                      421 W. Riverside, Ave., Suite 1400
24    REQUESTS FOR PRODUCTION PROPOUNDED                                   Spokane, WA 99201
      UPON PROVIDENCE HEALTH & SERVICES                          T: (509) 321-0750 • F: (509) 343-3315
      WASHINGTON - PAGE 19 OF 24

EXHIBIT C
19 of 38

1    **REQUEST FOR PRODUCTION NO. 45:** Produce all documents relating to the

2  possibility of reporting Dr. Dreyer to state health authorities, including but not limited to the

3  Washington State Department of Health.

4    **RESPONSE**:

5

6

7

8    **REQUEST FOR PRODUCTION NO. 46:** Produce all documents relating to the

9  possibility of reporting Dr. Elskens to federal health authorities, including but not limited to the

10  National Practitioner's Data Bank, including but not limited to the text message of May 8, 2017

11  from Dr. Elskens to Dr. Dreyer addressing this issue, a copy of which is Exhibit C.

12    **RESPONSE**:

13

14

15

16

17    **REQUEST FOR PRODUCTION NO. 47:** Produce all documents relating to the

18  possibility of reporting Dr. Elskens to state health authorities, including but not limited to the

19  Washington State Department of Health.

20    **RESPONSE**:

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 20 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
20 of 38

1

2 ### **CERTIFICATION OF COUNSEL**

3       ANSWERS AND OBJECTIONS SUBMITTED this ___ day of _____, 2024.

4 The undersigned attorney has read the foregoing responses to these discovery requests, and they

5 comply with FRCP 26(g).

6       DATED this _____ day of _____, 2024.

7                                          Davis Wright Tremaine LLP
                                           Attorneys for Defendant Providence Health &
8                                          Services – Washington

9                                          By _____
                                           Kenneth E. Payson, WSBA #26369
10                                          Ross Siler, WSBA #46486
                                           Jordan C. Harris, WSBA #55499
11                                          920 Fifth Avenue, Suite 3300
                                           Seattle, WA 98104-1610
12                                          Telephone: (206) 622-3150
                                           Fax: (206) 757-7700
13                                          Email: kenpayson@dwt.com
                                           ross.siler@dwt.com
14                                          jordanharris@dwt.com

15                                          Lewis Brisbois Bisgaard & Smith LLP
                                           Attorneys for Defendant Providence Health &
16                                          Services – Washington

17                                          By _____
                                           Jennifer K. Oetter, WSBA #26140
18                                          888 SW Fifth Avenue, Suite 900
                                           Portland, OR 97204
19                                          Telephone: (971) 712-2800
                                           Fax: (971) 712-2801
20                                          Email: jennifer.oetter@lewisbrisbois.com

21

22

23 NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
   PLAINTIFFS' THIRD INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24 REQUESTS FOR PRODUCTION PROPOUNDED                        SPOKANE, WA 99201
   UPON PROVIDENCE HEALTH & SERVICES            T: (509) 321-0750 • F: (509) 343-3315
   WASHINGTON - PAGE 21 OF 24

EXHIBIT C
21 of 38

1

2

## CERTIFICATION OF DEFENDANT PROVIDENCE HEALTH & SERVICES WASHINGTON ALSO D/B/A ST MARY MEDICAL CENTER ("PROVIDENCE")

3

4

_____, being first duly sworn on oath, deposes and says: I am the

5

designated speaking agent for Providence Health & Services Washington with authority to bind

6

Providence Health & Services Washington by my signature herein. I have read the above and

7

foregoing responses thereto, know the contents thereof, have done my due diligence in researching

8

the responses, and believe the same to be true, correct, and complete.

9

_____

10

      SUBSCRIBED AND SWORN to before me this _____ Day of _____, 2024.

11

_____
(Notary Signature)

12

_____
(Type or Print Name of Notary)
NOTARY PUBLIC for the State of

13

Washington, residing at _____
My appointment expires: _____

14

15

16

17

18

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' THIRD INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 22 OF 24

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT C
22 of 38

1        **CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies under penalty of perjury under the laws of the state of

3   Washington, that I am now, and at all times material hereto, a citizen of the United States, a resident

4   of the state of Washington, over the age of 18 years, not a party to, nor interested in the above-

5   entitled action, and competent to be a witness herein. I caused to be served on this date the

6   foregoing document in the manner indicated to the parties listed below:

7       *Counsel for Defendants Dr. Jason A. Dreyer, DO and Jane Doe Dreyer:*

8

9       Ryan M. Beaudoin, WSBA #30598          ☐ **HAND DELIVERY**
        Jeffrey Galloway, WSBA #44059           ☐ **U.S. FIRST CLASS MAIL**
        WITHERSPOON BRAJCICH McPHEE,            ☒ **ELECTRONIC MAIL**
10      PLLC                                    ☐ **FACSIMILE TRANSMISSION**
        601 W. Main Ave, Ste 1400
11      Spokane, WA 99201-0677
        rbeaudoin@workwith.com
12      jgalloway@wortkwith.com

13      *Counsel for Defendants Dr. Daniel Elskens, DO and Jane Doe Elskens:*

14

15      Stephen M. Lamberson, WSBA #12985       ☐ **HAND DELIVERY**
        Ronald A. Van Wert, WSBA #32050         ☐ **U.S. FIRST CLASS MAIL**
        ETTER, MCMAHON, LAMBERSON,              ☒ **ELECTRONIC MAIL**
16      VAN WERT & ORESKOVICH, P.C.             ☐ **FACSIMILE TRANSMISSION**
        618 W. Riverside Ave., Ste. 210
17      Spokane, WA 99201
        lambo@ettermcmahon.com
18      jgalloway@workwith.com

19      *Co-Counsel for Defendant Providence Health & Services:*

20

21      Kenneth E. Payson, WSBA #26369          ☐ **HAND DELIVERY**
        Ross Siler, WSBA #46486                 ☐ **U.S. FIRST CLASS MAIL**
        Jordan Harris, WSBA #55499              ☒ **ELECTRONIC MAIL**
22      DAVIS WRIGHT TREMAINE LLP               ☐ **FACSIMILE TRANSMISSION**
        920 Fifth Ave., Ste. 3300

23  NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' THIRD INTERROGATORIES AND          421 W. RIVERSIDE, AVE., SUITE 1400
24  REQUESTS FOR PRODUCTION PROPOUNDED                        SPOKANE, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES           T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 23 OF 24

EXHIBIT C
23 of 38

1     Seattle, WA 98104-1610
      kenpayson@dwt.com
2     ross.siler@dwt.com
      jordanharris@dwt.com
3

4     ***Co-Counsel for Defendant Providence Health & Services:***

5     Jennifer K. Oetter, WSBA #26140   ☐    **HAND DELIVERY**
      LEWIS BRISBOIS BISGAARD & SMITH  ☐    **U.S. FIRST CLASS MAIL**
6     LLP                                  ☒    **ELECTRONIC MAIL**
      888 SW Fifth Ave., Ste. 900          ☐    **FACSIMILE TRANSMISSION**
7     Portland, OR 97204-2025
      jennifer.oetter@lewisbrisbois.com
8
      DATED this 26th day of September, 2024.
9

10

11                               _____
                              RACHEL COOK, Paralegal

12

13

14

15

16

17

18

19

20

21

22

23

24

NO. 22-CV-00915-TL                           **GILBERT LAW FIRM, P.S.**
PLAINTIFFS' THIRD INTERROGATORIES AND       421 W. Riverside, Ave., Suite 1400
REQUESTS FOR PRODUCTION PROPOUNDED        Spokane, WA 99201
UPON PROVIDENCE HEALTH & SERVICES         T: (509) 321-0750 • F: (509) 343-3315
WASHINGTON - PAGE 24 OF 24

EXHIBIT C
24 of 38

# EXHIBIT A

EXHIBIT C
25 of 38

**From:**     Davidson, Timothy A ███████████████████████████
**To:**       Buell, Kathy
**Sent:**     2/5/2015 6:31:29 AM
**Subject:**  RE: PMG SE Neurosurgery v4a.docx
**Attachments:** PMG SE Neurosurgery v4a.docx

I don't think a lync meeting will work. We are meeting in a room without a computer. I'll need to go find out the phone number for the room.
Do you want me to print out this graph?
Tim

**From:** Buell, Kathy
**Sent:** Wednesday, February 04, 2015 7:58 PM
**To:** Davidson, Timothy A
**Subject:** RE: PMG SE Neurosurgery v4a.docx

Tim,

I missed Kandi this afternoon. Got her out of office - but looks like she has set this up as a lync meeting – so we should be good to go.

Kathy

**From:** Davidson, Timothy A
**Sent:** Tuesday, February 03, 2015 9:43 PM
**To:** Buell, Kathy
**Subject:** RE: PMG SE Neurosurgery v4a.docx

Go ahead and describe how NS comp is structured in other ministries (70+10).
Thank you.
Tim

**From:** Buell, Kathy
**Sent:** Tuesday, February 03, 2015 9:30 PM
**To:** Davidson, Timothy A
**Subject:** Re: PMG SE Neurosurgery v4a.docx

Good deal. My apologies for not catching it. No excuse.

I would like to understand why the gap is so big - it should sort itself out - so I'm still a bit concerned - but we don't need to solve it before Thurs.

Do you want to talk quality incentives at all Thurs? I can talk about it as an overall system trend/direction. We can simply focus on market, if you'd rather.

Safe travels.

KB

EXHIBIT
PENGAD 800-631-6989
12
Davidson

On Feb 3, 2015, at 9:18 PM, Davidson, Timothy A ███████████████████ wrote:

Kathy
Sorry about the delay in getting back to you. I was in clinic seeing patients till 4:30PM then in meetings till 6PM. The most recent graph looks better (more understandable).

CONFIDENTIAL

**CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER**

PROV_WALLA309749
CEST PROVIDENCE 2946

EXHIBIT C
26 of 38

The 4th quarter reimbursements are paid out in January of the following year.
Please call into the Doctor's Library at 7AM on Thursday.  Kandi Kirschbaum should be able to get you the
phone number if needed.
Thank you.
Tim


**From:** Buell, Kathy
**Sent:** Tuesday, February 03, 2015 1:53 PM
**To:** Davidson, Timothy A
**Subject:** PMG SE Neurosurgery v4a.docx
**Importance:** High

Try this one (see my previous email).  I'm at my desk until 4 ▓▓▓▓▓▓ and then on my cell
▓▓▓▓▓▓▓▓

CONFIDENTIAL

**CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

PROV_WALLA309750

CEST PROVIDENCE 2947

EXHIBIT C
27 of 38



     

Prepared for:

PMG Southeast

## Neurosurgery Compensation Market Review

January 28, 2015

Providence Provider Compensation Team

<u>Confidential</u>

1

CONFIDENTIAL

**CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER**

PROV_WALLA309751

CEST PROVIDENCE 2948

EXHIBIT C
28 of 38

## PMG Southeast – Neurosurgery Market Review

### Guiding Principles:

- Simplicity
- Transparency
- Common Framework
- Able to respond to changing market

### Philosophy:

- Providers are paid at market for every wRVU
- A meaningful percentage of compensation is at risk for quality and other key measures
- Plans are designed to ensure a common framework and equity across the system, while still allowing for recognition of local market conditions
- Plans support our ability to recruit and retain the best providers
- Compensation is used to incentivize and should not be used as a management tool

### Priorities:

- TBD

2

CONFIDENTIAL

**CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER**

PROV_WALLA309752

CEST PROVIDENCE 2949

EXHIBIT C
29 of 38

**Market Data:**



2014 Survey (based on 2013 data)

| Specialty | Physician - Surgery Neurology | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Physician Job Code | 22027 | Total Cash Compensation | | | | Work RVUs | | | | |
| Survey | Data Cut | n | 25th Pct | Median | 75th Pct | 90th Pct | n | 25th Pct | Median | 75th Pct | 90th Pct |
| **MGMA** | | | | | | | | | | |
| Surgery: Neurological | National | 355 | $576,644 | $710,000 | $959,520 | $1,311,582 | 260 | 6,529 | 9,368 | 12,745 | 17,214 |
| Surgery: Neurological | Western | 90 | $565,054 | $711,961 | $912,489 | $1,268,799 | 73 | 5,520 | 8,370 | 11,094 | 16,836 |
| **AMGA** | | | | | | | | | | |
| Neurological Surgery | National | 399 | $530,910 | $761,399 | $863,764 | $1,109,691 | 288 | 7,075 | 9,675 | 12,588 | 17,491 |
| Neurological Surgery | Western | 79 | $596,956 | $708,019 | $866,791 | $1,070,681 | 50 | 6,523 | 8,614 | 10,987 | 13,207 |
| **ECG** | | | | | | | | | | |
| Surgery - Neurological | Western | 41 | $553,280 | $660,312 | $746,525 | $1,091,678 | 29 | 6,881 | 8,889 | 10,007 | 13,633 |
| **Weighted Average** | | 964 | $557,303 | $705,623 | $898,838 | $1,195,041 | 700 | 6,663 | 9,309 | 12,269 | 16,854 |

**ID = Insufficient Data**

3 |

CONFIDENTIAL

PROV_WALLA309753

**CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER**

CEST PROVIDENCE 2950

EXHIBIT C
30 of 38

_Current Information:_

| Physician Name | Specialty | Clinical FTE | Total FTE | Hire Date | Contract Expiration Date | Compensation Model | wRVU Production Threshold (above calculation) | | Estimated Annual Comp | | | 2014 Annualized Clinical Comp(1)(2) | 2014 Annualized Medical Director Comp(1) | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Yam, David | Neurosurgery | 1.0 | 1.0 | 10/6/2006 | 7/1/2014 | Tiered Production Model | None | None | 0-9,600 wRVUs: $80/wRVU 9,601 + wRVUs: $88/wRVU | None | None | $ 1,630,658 | $ 24,999 | No details on medical directorship in agreement |
| Dreyer, Jason | Neurosurgery | 1.0 | 1.0 | 6/30/2013 | 6/30/2015 | Tiered Production Model | None | None | 0-9,600 wRVUs: $80/wRVU 9,601 + wRVUs: $88/wRVU | None | None | $ 2,172,563 | $ - | Mid year hire in July, 2013. Full year comp is annualized based on actual time worked |

(1): Clinical comp is based on Lawson W2 earnings, less sign on, relocation, medical directorships, etc. Call pay, where applicable, is included.
(2): 2014 earnings are based on 2014 Lawson W2 earnings

| | | Expected Comp under Current Model | | | Market Aligned Model | | | Variance (Mkt Aligned Model vs. Current Model) |
|---|---|---|---|---|---|---|---|---|
| | 2014 Production Annualized(1) | Tier 1 ($80/wRVU up to 9,600 wRVUs) | Tier 2 ($88/wRVU for all wRVUs over 9,600) | Estimated Total Comp | Estimated Production Comp ($70/wRVU) | Estimated Quality Comp ($10/wRVU) | Estimated Total Comp | |
| Yam | 19,734 | $ 768,000 | $ 891,757 | $ 1,659,757 | $ 1,381,352 | $ 197,336 | $ 1,578,688 | $ (81,069) |
| Dreyer | 29,745 | $ 768,000 | $ 1,772,718 | $ 2,540,718 | $ 2,082,116 | $ 297,445 | $ 2,379,562 | $ (161,156) |

(1): Source: Epic 2014 Production Data

4 |

CONFIDENTIAL

PROV_WALLA309754

**CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

CEST PROVIDENCE 2951

EXHIBIT C
31 of 38



**PMG SE Neurosurgery**
Neurosurgery Compensation Review

| | Total Compensation | | | | WRVUs | | | |
|---|---|---|---|---|---|---|---|---|
| | 25th %tile | 50th %tile | 75th %tile | 90th %tile | 25th %tile | 50th %tile | 75th %tile | 90th %tile |
| Neurosurgery | $557,303 | $705,623 | $898,838 | $1,195,041 | 6,663 | 9,309 | 12,269 | 16,854 |

5

CONFIDENTIAL

PROV_WALLA309755

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

CEST PROVIDENCE 2952

EXHIBIT C
32 of 38

# EXHIBIT B

EXHIBIT C
33 of 38



From: ▮▮▮▮ David Yam
To: ▮▮▮▮ Jason Dreyer (owner)

Not alot of physicians at today's meeting but two of the four providers (Cunningham and Lapier) said they would be writing letters to support your return and to ask to expedite it due to their patients being harmed by the delays.

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮ Jason Dreyer | | 7/3/2018 9:49:00 AM(UTC-7) | |

Status: Read

7/3/2018 9:48:52 AM(UTC-7)

Source Info:
EXTRACTION_FFS.zip/root/private/var/mobile/Library/SMS/sms.db : 0x3F9DB46 (Table: message, handle; Size: 236883968 bytes)



From: ▮▮▮▮ Jason Dreyer (owner)
To: ▮▮▮▮ David Yam

Screw administration. It's good to have some provider support. Thanks.

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮ David Yam | | | |

Status: Sent

7/3/2018 9:49:49 AM(UTC-7)

Source Info:
EXTRACTION_FFS.zip/root/private/var/mobile/Library/SMS/sms.db : 0x3F9D570 (Table: message, handle; Size: 236883968 bytes)

From: ▮▮▮▮ David Yam
To: ▮▮▮▮ Jason Dreyer (owner)

I'm assuming no news still as I also have very limited news.  We started our conference today.  It felt like admin was rushing to get it to happen today, wouldn't even delay a week. Perhaps this is tied to plans for your return.  I also heard from Dr. Smith however that Providence legal is weighing reporting us to the department of justice for insurance fraud.  If that's the case, you and I are both done here and many other places.  Hope that isn't true but wouldn't put it past them.

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮ Jason Dreyer | | 7/11/2018 11:59:36 AM(UTC-7) | |

Status: Read

7/11/2018 11:57:01 AM(UTC-7)

Source Info:
EXTRACTION_FFS.zip/root/private/var/mobile/Library/SMS/sms.db : 0x3FE5FA0 (Table: message, handle; Size: 236883968 bytes)

CONFIDENTIAL
SUBJECT TO STIPULATED PROTECTIVE ORDER

Dreyer Text Messages - David Yam - 000693

# EXHIBIT C

EXHIBIT C
35 of 38

**From:**     Dreyer, Jason A ███████████████████
         ████████████████████████
**To:**       McGuire, Poppy L
**Sent:**     6/30/2015 7:13:29 AM
**Subject:**  RVUs
**Attachments:**  June2015.xlsx

Hi Pops,

This morning I added up my productivity for this month from the beginning until June 23rd (plenty of time for those fee tickets to get applies). I should have 2831 RVUs. In reality, I currently have 1866. I have suspected that my numbers have been steadily falling, but my actual work has been stable. I am now very troubled seeing a difference of 1000 RVUs just this month. That doesn't include the extra from last month that gets carried over because they didn't get applied in time, or the rest of this month.

Please see my spreadsheet attached. Two of the tickets did not have initials or stamp saying they had been scanned, but that's probably an oversight. It would not explain such a large variance.

Thanks for any help,
-Jason



EXHIBIT 2
1-16-24
DREYER

CONFIDENTIAL AND SUBJECT TO PROTECTIVE ORDER                    PROV000459

EXHIBIT C
36 of 38

EXHIBIT D

EXHIBIT C
37 of 38



From: Daniel Elskens
To: Jason Dreyer (owner)

Feel the same. Although it's a shit storm for me I am truly sorry for this happening to you guys

| Participant | Delivered | Read | Played |
|---|---|---|---|
| Jason Dreyer | | 3/28/2017 5:37:57 PM(UTC-7) | |

**Status:** Read

3/28/2017 3:04:26 PM(UTC-7)

Source Info:
EXTRACTION_FFS.zip/root/private/var/mobile/Library/SMS/sms.db : 0x2E92AC0 (Table: message, handle; Size: 236883968 bytes)



From: Daniel Elskens
To: Jason Dreyer (owner)

Providence wants me to walk away from the $93k tbey owe me for my production or they will terminate me for cause and report me to the data bank. They've reneged on the contract they offered once they realized how much money they owed me. What a shit storm

| Participant | Delivered | Read | Played |
|---|---|---|---|
| Jason Dreyer | | 4/26/2017 8:28:38 PM(UTC-7) | |

**Status:** Read

4/26/2017 8:27:37 PM(UTC-7)

Source Info:
EXTRACTION_FFS.zip/root/private/var/mobile/Library/SMS/sms.db : 0x2F66764 (Table: message, handle; Size: 236883968 bytes)



From: Jason Dreyer (owner)

Dang... who is speaking for Providence? Is that through a lawyer or Tim/Chris, or someone else?

**Status:** Sent

4/26/2017 8:29:50 PM(UTC-7)

Source Info:
EXTRACTION_FFS.zip/root/private/var/mobile/Library/SMS/sms.db : 0x2F66365 (Table: message; Size: 236883968 bytes)



From: Daniel Elskens
To: Jason Dreyer (owner)

The lawyer was in agreement with my lawyer, but Providence is playing hardball. I think it's out of Davidson or Hall's league.

| Participant | Delivered | Read | Played |
|---|---|---|---|
| Jason Dreyer | | 4/26/2017 8:32:05 PM(UTC-7) | |

**Status:** Read

4/26/2017 8:31:56 PM(UTC-7)

Source Info:
EXTRACTION_FFS.zip/root/private/var/mobile/Library/SMS/sms.db : 0x2F67F96 (Table: message, handle; Size: 236883968 bytes)

**CONFIDENTIAL**
**SUBJECT TO STIPULATED PROTECTIVE ORDER**

Dreyer Text Messages - Daniel Elskens - 000056

1

William A. Gilbert, WSBA #30592
Gilbert Law Firm, P.S.

2

421 W. Riverside Ave, Suite 353
Spokane, WA  99201

3

T: 509·321·0750
F: 509·343·3315

4

E: bill@wagilbert.com
Attorney for Plaintiffs

5

6

7

8

9

UNITED STATES DISTRICT COURT OF THE WESTERN

10

DISTRICT OF WASHINGTON AT SEATTLE

11

CAROLINE ANGULO et al.,

NO.  22-CV-00915-TL

12

Plaintiffs.

**PLAINTIFFS' FOURTH**

v.

**INTERROGATORIES AND**

13

**REQUESTS FOR PRODUCTION**

PROVIDENCE HEALTH & SERVICES

**PROPOUNDED UPON**

14

WASHINGTON, a non-profit Washington

**PROVIDENCE HEALTH &**

Corporation, also d/b/a PROVIDENCE ST.

**SERVICES WASHINGTON**

15

MARY MEDICAL CENTER; Dr. JASON A.
DREYER, DO, and JANE DOE DREYER,

16

husband and wife and the marital community
thereof; Dr. DANIEL ELSKENS DO, and

17

JANE DOE ELSKENS, husband and wife and
the marital community thereof; and

18

JOHN/JANE DOES 1-10, and any marital
communities thereof,

19

Defendants.

20

TO:     PROVIDENCE  HEALTH  &  SERVICES  WASHINGTON,  a  non-profit  Washington

21

Corporation, Defendant; and

22

23

NO. 22-CV-00915-TL

**GILBERT LAW FIRM, P.S.**

PLAINTIFFS' FOURTH INTERROGATORIES AND

421 W. RIVERSIDE, AVE., SUITE 1400

24

REQUESTS FOR PRODUCTION PROPOUNDED

SPOKANE, WA 99201

UPON PROVIDENCE HEALTH & SERVICES

T: (509) 321-0750 • F: (509) 343-3315

WASHINGTON - PAGE 1 OF 57

EXHIBIT D
1 of 57

1    TO:    Kenneth E. Payson, Attorney for Defendant PROVIDENCE HEALTH & SERVICES

2         WASHINGTON.

3         Pursuant to Rules 26, 33 and 34 of the federal rules of civil procedure, plaintiffs submit the

4    following interrogatories and requests for production to be answered separately and fully under

5    oath within thirty (30) days from the date of service of said discovery upon you. In answering this

6    discovery, you are required to furnish such information as is available to you, not merely the

7    information which you know of your personal knowledge. This is intended to include any

8    information in the possession of the agent or attorney or any investigator for the answering party.

9         Respond To:    William A. Gilbert
                         Gilbert Law Firm, P.S.
10                        421 W. Riverside, Ste 1400
                         Spokane, WA 99201

11

12         Court rule requires the answers be preceded by questions and thus extra copies of these

13    interrogatories are being served upon you in order to expedite the answering thereof. You may

     type your answers immediately after the question and thus avoid retyping the question.

14

15         If you claim that any information requested is protected from disclosure / discovery by

16    privilege or the work product doctrine you must identify such document or thing in your written

17    response, giving the following information: (a) date of document; (b) author of document; (c)

     addressee of document; (d) nature of document; such as memorandum, letter, etc.; (e) anyone who

18    has received a copy of the document; and (f) the general subject matter of the document.  You

19    must preserve the information stated above as well as the documents themselves in a privilege log.

20    Failure to do so may lead to sanctions or other admonishment by the court.

21         **Protective Order:**    If you are claiming that any information responsive to these

22    Interrogatories and Requests for Production is confidential or contains information which the

23    NO. 22-CV-00915-TL
     PLAINTIFFS' FOURTH INTERROGATORIES AND
     REQUESTS FOR PRODUCTION PROPOUNDED
24    UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 2 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    defendant claims is proprietary or otherwise requires protection from disclosure to individuals or

2    entities other than the parties to this law suit please confirm with our office as soon as the necessity

3    of a protective order is recognized and an order as stipulated by the parties will be duly entered

4    with the Court prior to dissemination of the information.

5                                    **DEFINITIONS**

6            As used herein:

7            **Plaintiff(s)** means the plaintiffs named in the Fourth Amended Complaint and the all

8    proposed class members, known and unknown, as identified and outlined in the Complaint.

9            **Defendant** means PROVIDENCE HEALTH & SERVICES WASHINGTON, including

10   d/b/a ST. MARY MEDICAL CENTER (collectively "PROVIDENCE"), its subsidiaries, its

11   employees, agents and assigns, including parties, attorneys, investigators, adjusters, insurance

12   companies or others standing in a representative relationship to Defendant PROVIDENCE.

13   PROVIDENCE also includes the defendants as identified in the Settlement Agreement (see

14   Exhibit 2 of the Fourth Amended Complaint) and as further described in its Corporate Disclosure

15   Statements (Docket Entry Nos. 2 and 64).

16           **Settlement Agreement** is the agreement among PROVIDENCE as defined herein and the

17   United States and the State of Washington with an effective date of March 17, 2022, a copy of

18   which is attached as Exhibit 2 to the Fourth Amended Complaint.

19           **Recital** refers to the paragraph enumeration within the "Factual Recitals" of the Settlement

20   Agreement.

21           **Yam Litigation** or **Providence qui tam action** is the federal case *Yam v. Providence*

22   *Health and Services*, 4:20-cv-05004-SMJ, identified in Recital G of the Settlement Agreement.

23
     NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                       SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES               T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 3 OF 57

1    **Dates:** Relevant Time Period for discovery is June 2013 through November 2018, and

2    through to the present.

3    **You or Your**:   Means any party to whom these interrogatories are addressed, and

4    Providence's attorneys, agents, employees, officers, representatives, adjusters, investigators, and

5    any other "person" who has knowledge of information, or is in possession of evidence or things,

6    responsive to any request herein. Including, but not limited to the following which Providence has

7    identified as its present or former employees: Dr. Timothy Davidson, Dr. Dean Martz, Sean

8    Douglas, David McKay, Lori Asmus, Tina Crawford, Stacy Olson, Susan Towner, Joel

9    Wasserman, Shannon Lane, Poppy McGuire, Cathy Nicol, Marc Sowder, Scott O'Brien,

10   Christopher Hall, Michael Waters, Steve Burdick, Martin Benning, Becky Cameron, Mary

11   Crawford, Desiree Patzer, Wanda Paisano (Deceased) By deposition only, Susan Blackburn, Perry

12   Camp, Dr. Dreyer, Dr. Elskens, Dr. Yam, Dr. Smith, all current or former Providence employees

13   listed in Providence's Initial Disclosures dated September 9, 2024, all current or former Providence

14   employees that Providence may call to address the topics listed in Paragraph B.15 of Providence's

15   initial disclosures, current or former Providence employees that Providence may call to address

16   the topics lists in Paragraph C of Providence's initial disclosures, and current or former Providence

17   employees that Providence may call to address its defenses or affirmative defenses.

18   **Knowledge or Information**: Where knowledge or information in the possession of a party

19   is requested, such request includes knowledge of the party's agents, representatives, employees

20   and, unless privileged, his attorneys. When the answer is made by a corporate defendant, state the

21   name, address and title of the person supplying the information, and title of the person supplying

22   the information, and making the affidavit, and the source of his information.

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                          SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES           T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 4 OF 57

**"Document(s)" or "Information"** means all materials within the scope of Federal Civil Rule of Procedure 34, including, without limitation, all writings, drawings, graphs, charts, photographs, sound recordings, spreadsheets, images, and other data or data compilations, including electronically-stored information (ESI), that are stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, as well as any tangible things. A draft or non-identical copy of a document is a separate document within the meaning of this term. A document includes all appendices, schedules, exhibits, and other attachments. The term "Document(s)" or "Information" includes but is not limited to emails and other types of messages (including but not limited to text, instant, and direct messages), social media or other online content, data generated and stored by devices connected to the Internet of Things (IoT), communications generated and stored in workplace collaboration tools or ephemeral messaging applications, and all associated data and metadata.

**Possession or Control**: The act or condition of having in, or taking into one's control or having at one's disposal or the power or authority to access, guide, manage, direct or restrain any document or thing.

**"Identify"** with respect to a person means to give, to the extent known, the person's (a) full name; (b) present or last known address; and (c) current or last known place of employment.

**"Identify"** with respect to a document means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy FRCP 33.

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 5 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **"Identify"** with respect to communications means to give, to the extent known, (a) a

2    description of the substance of the communication; (b) the form of the communication (e.g.,

3    telephone, facsimile, email, etc.); (c) the identity of all parties to and/or present at the time of the

4    communication, as well as the full name, present or last known address, and the current or last

5    known place of employment of each person; (d) the identity of the person whom you contend

6    initiated the communication; and (e) the time, date, and place of the communication.

7        "**Identify**" with respect to an individual means to give, to the extent known, the full name,

8    title, address, and current contact information of that person.

9        **"Person"** means any natural person or any legal entity, including, without limitation, any

10   business or governmental entity, organization, or association.

11      **Archive**:  Means the storage of any electronically produced material that has been

12   downloaded or backed up from any of the Defendant's computers, or servers, or a copy of data on

13   a computer drive, or on a portion of a drive, or on any other storage media readily accessible that

14   is maintained for historical reference.

15      **Backup**:  A copy of active data, intended for use in restoration of data – the downloading

16   of information stored in computer or server hard drives, soft discs, CD ROMS, or tapes onto

17   storage discs, tapes or CD-ROM for the purpose of preserving that data.

18      **Computer**: Includes but is not limited to network servers, desktops, laptops, notebook

19   computers, employees' home computers, mainframes, PDAs, smartphones, BlackBerry devices

20   and pagers.

21      **Data**:  Any and all information stored on media that may be accessed by a computer.

22

23

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
24   REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 6 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **E-mail**: Means electronically transmitted messages sent from one computer to another

2    computer or a series of computers by a person or persons. Deleted E-mail data remains in the

3    computer system storage drive until the system runs out of space for the data. This material is

4    retrievable and any request for E-mail should include deleted material retrieved from the

5    computer's storage system.

6    **Electronic Message:** any form of electronic messaging, including but not limited to text,

7    instant; direct messages; Facebook Messenger; Snapchat; Twitter; etc.

8    **Investigate**: Means to inquire into.  As in *inquiring* into allegations, concerns, or issues

9    presented by employees, agents or assigns of Defendant.

10   **Media**: Means the method of creating and storing electronically transmitted data; i.e. hard

11   drive; floppy disc; compact disc, server, etc.

12   **Metadata**: That electronic data associated with the responsive data – i.e.: ancillary

13   electronic information that relates to electronic data, such as information that would indicate

14   whether and when the responsive electronic data was created, edited, sent, received and/or opened.

15   Typically referred to as the data that provides all relevant information about the data (document).

16   **"Audit Trail" or "Audit Log":**  An audit log or audit trail is a security-relevant

17   chronological record that provides documentary evidence of, among other events, who accessed

18   an electronic medical record system, when they accessed it, from where, and exactly what they

19   did, such as enter new data, modify or remove existing data, view a part of the chart, obtain a

20   printout, etc. If "You" are using EMR / EHR records systems, you are required to have security

21   systems in place to access this information.

22

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**

24   PLAINTIFFS' FOURTH INTERROGATORIES AND          421 W. RIVERSIDE, AVE., SUITE 1400
     REQUESTS FOR PRODUCTION PROPOUNDED                      SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES             T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 7 OF 57

1    **"Revision History":** used to evaluate changes made in the medical record over time

2    (comparable to the Microsoft Word "track changes" feature). It is a chronological listing of

3    document versions or data versions showing the changes over time.

4    **Personnel Files**:  Documents, whether stored in physical form, such as in paper files or

5    electronically, such as on computer disk or hard drive or computer server, which in any way reflect

6    the employment history, employment status, work assignments, credentialing, compensation,

7    supervisory relationships, promotion, reassignment, discipline, and termination, for whatever

8    reason, of the named individual for which they are requested. Any request for personnel files

9    encompasses all files maintained at all locations that collectively reflect the employment history

10    of the named individual, including files maintained at locations others than Defendant's facilities

11    where the named individual was employed.

12    **Possession or Control**: The act or condition of having in, or taking into one's control or

13    having at one's disposal or the power or authority to access, guide, manage, direct or restrain any

14    document or thing.

15    **"Relate" "related"** or **"relating"** means, in addition to their usual and customary

16    meanings, concerning, referring to, reflecting, regarding, pertaining to, addressing, discussing,

17    alluding to, describing, evidencing, constituting, or otherwise having any logical or factual

18    connection with the subject matter addressed.

19    Additional definitions include:

20    **"RVU"** means the productivity metric known as the Relative Value Unit as referenced and

21    explained at, e.g., Paragraph C of the Settlement Agreement defined above, and includes wRVUs

22    (work), peRVUs (practice expense) and mRVUs (malpractice).

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 8 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1     **"MultiCare"** or **"MultiCare Health Systems"** means MultiCare Health Systems, with

2    headquarters in Tacoma, Washington, its subsidiaries, its employees, agents and assigns, including

3    parties, attorneys, investigators, adjusters, insurance companies or others standing in a

4    representative relationship to MultiCare, including MultiCare entities located in Spokane,

5    Washington, e.g., MultiCare / Deaconess, MultiCare / Rockwood Clinic, and MultiCare / Valley

6    Hospital.

7     **"Medtronic"** or **"Medtronic USA Inc."** means the medical device company

8    headquartered in Minneapolis, Minnesota, its subsidiaries, its employees, agents and assigns,

9    including parties, attorneys, investigators, adjusters, insurance companies or others standing in a

10   representative relationship to Medtronic, including Medtronic representatives servicing Eastern

11   Washington.

12     **"Spreadsheets"** is included within the definition of "documents" above and means, in in

13   addition to its usual and customary meaning, the collection of data or information using computer

14   programs such as, but not limited to, .xlsx, as a tool to store, manipulate and analyze data, usually

15   arranged in tows and columns of a grid, typically found in electronic form and convertible to .pdf.

16     **"Health Care Benefits Program"** means as defined in 18 U.S.C. § 24(b).

17     The **"National Practitioner's Data Bank"** means as it is described in 45 C.F.R. §

18   60.11(b).

19     The **"Washington State Department of Health," "WDOH," "DOH,"** or **"MQAC"**

20   means, interchangeably, the State of Washington's Department of Health, the Washington State

21   Medical Commission, and/or the Washington State Medical Quality and Care Commission, to

22   include all investigative arms including, without limitation, the Office of Health Systems

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 9 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT D
9 of 57

1  Oversight and the Board of Osteopathic Medicine and Surgery, as well as investigators, agents,

2  employees of any of these named entities.

3      The words **"and"** and **"or"** shall be construed disjunctively or conjunctively to bring

4  within the scope of each interrogatory all responses which otherwise might be construed to be

5  outside the scope of an interrogatory.

6      The word **"any"** shall be construed to include "all" and vice versa.

7      The word **"each"** shall be construed to include "every" and vice versa.

8      **All other terms used herein are common usage.  If you have any questions or concerns**

9  **about any definitions of any terms contained herein, please contact our office at once to clear**

10 **up any confusion.**

11     The undersigned certifies pursuant to the FRCP 26(g) that this Discovery is propounded in

12 good faith pursuant to the rules of civil procedure.

13 //

14     Dated this 24th day of October 2024.

15                                 GILBERT LAW FIRM, P.S.

16

17     _____

18     WILLIAM A. GILBERT, WSBA # 30592
       Attorney for Plaintiffs

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 10 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1  **INTERROGATORIES AND REQUESTS FOR PRODUCTION**

2  **INTERROGATORY NO. 3:**  Identify each of the individuals who was involved in the

3  process of determining who made the ultimate decision NOT to report Dr. Jason Dreyer to the

4  Washington State Department of Health (WADOH) and National Practitioner Data Bank (NPDB),

5  and set forth with specificity what the basis of that decision was.

6  **ANSWER:**

7

8  **REQUEST FOR PRODUCTION NO. 48:**  Produce all documents which relate to,

9  support, refute, or otherwise memorialize Defendant's answer to Interrogatory No. 3 above.

10  **RESPONSE:**

11

12

13  **INTERROGATORY NO. 4:** Identify the individual employee(s) who made the final

14  decision in respect to not reporting Dr Jason Dreyer to the NPDB or WADOH and set forth the

15  reasons supporting that decision.

16  **ANSWER:**

17

18  **REQUEST FOR PRODUCTION NO. 49:** produce all documents, electronic or

19  otherwise that document any discussion regarding Dr Dreyer and the NPDB.

20  **RESPONSE:**

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 11 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

2       **REQUEST FOR PRODUCTION NO. 50:** produce all documents, electronic or

3   otherwise that document any discussion regarding reporting Dr Dreyer to the WA DOH.

4       **RESPONSE:**

5

6       **REQUEST FOR PRODUCTION NO. 51:** Produce all email containing the term Dreyer

7   and any of the following terms:

8       "Davis"

9       "Wright"

        "Tremaine"

10      "Theodore"

11      "Estrada"

12

13      **RESPONSE:**

14

15

16      **REQUEST FOR PRODUCTION NO. 52:** All documents and communications

17  containing communications relating to the Settlement Agreement, including but not limited to all

18  communications between or among the Parties to that Agreement, all health care claims that are

19  subject to the Settlement Agreement, and all payments made thereunder.

20      **RESPONSE:**

21

22

23

24  NO. 22-CV-00915-TL                          **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' FOURTH INTERROGATORIES AND        421 W. Riverside, Ave., Suite 1400
    REQUESTS FOR PRODUCTION PROPOUNDED                   Spokane, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES          T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 12 OF 57

1      **REQUEST FOR PRODUCTION NO. 53:** All documents and communications relating

2   to the health care claims that are the subject of the Settlement Agreement, including but not

3   limited to all certifications of medical necessity.

4      **RESPONSE:**

5

6

7      **REQUEST FOR PRODUCTION NO. 54:** All documents and communications relating

8   to compensation of Dr. Jason Dreyer or Dr. Daniel Elskens, including but not limited to any

9   contract, manual, tax reporting, or calculation of amounts paid or payable to them.

10      **RESPONSE:**

11

12

13      **REQUEST FOR PRODUCTION NO. 56:** All documents and communications relating

14   to any job performance evaluation of Dr. Jason Dreyer or Dr. Daniel Elskens, including the

15   contents of their personnel files.

16      **RESPONSE:**

17

18

19      **REQUEST FOR PRODUCTION NO. 57:** All documents and communications by or

20   between Providence and Dr. Dreyer or Dr. Daniel Elskens regarding the job performance of

21   either Dr. Dreyer or Dr. Elskens.

22      **RESPONSE:**

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 13 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

2          **REQUEST FOR PRODUCTION NO. 58:** All documents and communications relating

3     to patient inquiries or complaints about either Dr. Dreyer or Dr. Elskens, including but not

4     limited to requests for investigation, suspension, resignation, or termination.

5          **RESPONSE:**

6

7

8          **REQUEST FOR PRODUCTION NO. 59:** All documents and communications relating

9     to Providence employee inquiries or complaints about either Dr. Dreyer or Dr. Elskens, including

10    but not limited to requests for investigation, suspension, resignation, or termination.

11         **RESPONSE:**

12

13

14         **REQUEST FOR PRODUCTION NO. 60:** All documents and communications relating

15    to surgeries performed or proposed by Dr. Dreyer or Dr. Elskens.

16         **RESPONSE:**

17

18

19         **REQUEST FOR PRODUCTION NO. 61:** All documents and communications relating

20    to any payments to Dr. Dreyer or Dr. Elskens.

21         **RESPONSE:**

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 14 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT D
14 of 57

1    **REQUEST FOR PRODUCTION NO. 62:** All documents and communications relating

2    to any incentive compensation to Dr. Dreyer or Dr. Elskens based upon the medical services they

3    provided.

4    **RESPONSE:**

5

6

7    **REQUEST FOR PRODUCTION NO. 63:** All documents and communications relating

8    to supervision or monitoring of the medical services provided by Dr. Dreyer or Dr. Elskens.

9    **RESPONSE:**

10

11

12    **REQUEST FOR PRODUCTION NO. 64:** All documents and communications relating

13    your policies and practices that address compensation of health professionals based upon the

14    medical services they provide.

15    **RESPONSE:**

16

17

18    **REQUEST FOR PRODUCTION NO. 65:** All documents and communications relating

19    to reporting health professionals to the National Practitioner Data Bank, the Washington State

20    Department of Health, or the Secretary, including but not limited to Dr. Dreyer or Dr. Elskens.

21    **RESPONSE:**

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 15 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT D
15 of 57

1     **REQUEST FOR PRODUCTION NO. 66:** All documents and communications relating

2     to the restriction, suspension, or revocation of privileges of Dr. Dreyer or Dr. Elskens,

3     including but not limited to investigations of either.

4     **RESPONSE:**

5

6

7     **REQUEST FOR PRODUCTION NO. 67:** All documents and communicates relating

8     to the receipt, deposit, or investment of any monies obtained by Providence from medical

9     services provided to any member of the class, including but not limited to bank account

10    statements.

11    **RESPONSE:**

12

13

14    **REQUEST FOR PRODUCTION NO. 68:** All documents and communications

15    relating to the submission of health care claims for medical services provided to any member of

16    the class, including but not limited to any certification of medical necessity, and any payment

17    received.

18    **RESPONSE:**

19

20

21    **REQUEST FOR PRODUCTION NO. 69:** All documents and communications

22    relating to the qui tam action *United States ex rel. David Yam v. Providence Health & Services*

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 16 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    (4:20-cv-05004-SMJ (E.E. Wash), including but not limited to all discovery produced in that

2    action, and all communications between or among the parties.

3         **RESPONSE:**

4

5

6         **REQUEST FOR PRODUCTION NO. 70:** All documents and communications

7    relating to any false claim for payment that is the subject of the Settlement Agreement, including

8    but not limited to calculations communicated by any party.

9         **RESPONSE:**

10

11

12        **REQUEST FOR PRODUCTION NO. 71:** All documents and communications

13   relating to policies and practices regarding the performance of spinal surgeries.

14        **RESPONSE:**

15

16

17        **REQUEST FOR PRODUCTION NO. 72:** All documents relating to:

18        a.   the hiring, credentialing, recredentialing, privileging, supervision, suspension,
             restriction of privileges, placement on administrative leave, separation, or
19           performance review of the Doctors.

20        b.   the supervision, discipline, or privilege restrictions of the Doctors, including for
             filing false health care claims
21

22        c.   the creation or maintenance of any system to detect and prevent the filing of such
             false claims.
23

NO. 22-CV-00915-TL                                          **GILBERT LAW FIRM, P.S.**
PLAINTIFFS' FOURTH INTERROGATORIES AND              421 W. Riverside, Ave., Suite 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                           Spokane, WA 99201
UPON PROVIDENCE HEALTH & SERVICES            T: (509) 321-0750 • F: (509) 343-3315
WASHINGTON - PAGE 17 OF 57

d.   whether Providence was legally accountable for the Doctors' false claims, including as an accomplice under RCW 9A.08.020.

e.   any assistance Providence provided the Doctors in presenting their false claims to health insurers.

f.   any assessment of whether Providence patients were exposed to an increased risk of medically unnecessary or otherwise improper surgery, or an associated false claim billing.

g.   any payments made to Providence as a result of claims it submitted to insurers based upon surgical procedures of the Doctors.

h.   Providence's deposit of any payments made to Providence as a result of claims it received from insurers based upon surgical procedures of the Doctors.

i.   Providence's transfer of monies received from insurers based upon surgical procedures of the Doctors, including but not limited to transfers for the acquisition of property or realty.

j.   any appreciation of monies or income to Providence from monies received from insurers based upon surgical procedures of the Doctors

k.   any monitoring of the surgeries of the Doctors.

l.   the RVUs generated by any surgeries of the Doctors, including but not limited to documents relating to how RVU reimbursement monies were used by Providence to pay provider salaries, practice expenses, or malpractice insurance.

m.   compensation paid to the Doctors based upon their RVU production, including but not limited to any internal or external audits, budgeting documentation, billing documentation, projections, comparisons with federal or other RVU physician statistics, disputes, or surveys.

n.   the billing practices for the Doctors' surgeries.

o.   any evaluation of the impact of Providence's RVU compensation practices upon patient care or safety.

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 18 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT D
18 of 57

1

2    p.   any patient complaint about either Doctor, including any response by Providence.

3    q.   either Doctor received by or distributed to the Governing Board, including but not
          limited to documents authored by Dr. Yam or by Dr. Fewel.

4

5    r.   any responses received by Providence to its Union Bulletin advertisement of June
          5, 2022.

6    s.   either Doctor that were transmitted to, or received from, MultiCare, including but
          not limited to transmitting copies of the pleadings in this case.

7

8    t.   either Doctors that were transmitted to, or received from, the federal or
          Washington State governments, including but not limited to any billing document,
          complaint, or inquiry.

9

10   u.   any Providence report submitted to the federal government pursuant to its
          Corporate Integrity Agreement.

11

12   v.   any actions taken by the Washington Department of Health against Providence for
          failing to comply with its mandatory reporting requirements, including the DOH's
          investigation in 2022 into whether those reporting requirements were violated.

13

14   w.   any billings for Dreyer surgeries involving use of Medtronic equipment, including
          but not limited to any payments to Medtronic.

15

16   x.   Providence payments to Dr. Dreyer in 2018 or 2019 while he was on
          administrative leave.

17   y.   communications with Dr. Sandquist regarding current or former patient of Dr.
          Dreyer.

18

19       **RESPONSE:**

20

21

22

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND               421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                    SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES                     T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 19 OF 57

1    **REQUEST FOR PRODUCTION NO. 73:**    Produce a complete copy of the entire

2    document or dataset which Providence has gathered or created for purposes of documenting

3    information relevant to the retention, training, oversight, credentialling, awarding of privileges,

4    and termination / resignation of Dr. Jason A. Dreyer, D.O.  This should include, without limitation:

5    personnel file; credentialing/privileging/re-credentialing/re-privileging file(s); disciplinary file(s);

6    peer review materials; investigative materials; reporting tracking for the False Claims Act (FCA),

7    the Anti-Kickback Statute (AKS), the Physician Self-Referral Law (Stark law), the Exclusion

8    Authorities, and the Civil Monetary Penalties Law (CMPL); all performance information;

9    complaints or references to complaints of any type; payroll records; termination documentation –

10    severance agreements, separation agreements, settlement and release agreements; and any other

11    material gathered or created to track his employment.

12    **RESPONSE:**

13

14

15    **REQUEST FOR PRODUCTION NO. 74:**    Produce the documents provided to you by

16    Dr. David Yam or his legal counsel that were produced by Dr. Yam in relation to a dispute and/or

17    lawsuit between you and Dr. Yam (including EDW 20-CV-05004-SMJ) with any individually

18    identifiable health information redacted therefrom.

19    **RESPONSE:**

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 20 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **REQUEST FOR PRODUCTION NO. 75:**  Produce any and all communications, notes,

2    emails, or other documents in your possession or control (including your attorney's control) that

3    were produced to the United States Attorney during its investigation into, and litigation of, the

4    claims alleged against you in the Qui Tam action – Cause No: EDWA 20-CV-05004-SMJ.

5    **RESPONSE:**

6

7

8    **REQUEST FOR PRODUCTION NO. 76:**   Produce a complete copy of any peer or

9    patient review or audits for Dr. JASON A. DREYER, DO.

10    **RESPONSE:**

11

12

13    **REQUEST FOR PRODUCTION NO. 77:** Produce a complete copy of any email or

14    electronic message in your **possession or control** that contains the term "JASON" or "DREYER"

15    in the address section, heading, subject line, or text of the email/message, which email was created

16    at any time between May 1, 2018 and January 1, 2022.

17    **RESPONSE:**

18

19

20    **REQUEST FOR PRODUCTION NO. 78:** Produce a complete copy of any email or

21    electronic message in your **possession or control** that contains the term "Elskens" in the address

22

23    NO. 22-CV-00915-TL

24    PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 21 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    section, heading, subject line, or text of the email/message, which email was created at any time

2    between May 1, 2018 and January 1, 2022.

3        **RESPONSE:**

4

5

6        **REQUEST FOR PRODUCTION NO. 79:** Produce a complete copy of any document,

7    data, email, electronic message or note, created or gathered by you for the purpose of documenting

8    continuing oversight of the competence of Dr. JASON A. DREYER, DO or Dr. DANIEL

9    ELSKENS.

10       **RESPONSE:**

11

12

13       **REQUEST FOR PRODUCTION NO. 80:** Produce a complete copy of any document,

14   data, email, electronic message or note, gathered or created by you which raises concerns about

15   Dr. Jason A. Dreyer's competence, ethics, or patient care, including but not limited to patient or

16   medical professional complaints.

17       **RESPONSE:**

18

19

20       **REQUEST FOR PRODUCTION NO. 81:** Produce a complete copy of any document,

21   data, email, electronic message or note, gathered or created by you which raises concerns about

22

23   NO. 22-CV-00915-TL                                      **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                          SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 22 OF 57

1    Dr. Daniel Elskens' competence, ethics, or patient care, including but not limited to patient or

2    medical professional complaints.

3        **RESPONSE:**

4

5

6        **REQUEST FOR PRODUCTION NO. 82:**   Produce a complete copy of Jason A.

7    Dreyer's EPIC preference templates.

8        **RESPONSE:**

9

10

11        **REQUEST FOR PRODUCTION NO. 83:**  Produce a complete copy of Daniel Elskens

12    Dreyer's EPIC preference templates.

13        **RESPONSE:**

14

15

16        **REQUEST FOR PRODUCTION NO. 84:**  Produce the audit list which reports Dr. Jason

17    Dreyer's patient counts and relevant data related thereto for each year he was employed by

18    Providence, broken down by month.

19        **RESPONSE:**

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 23 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1      **REQUEST FOR PRODUCTION NO. 85:** Produce the audit list which reports Dr.

2 Daniel Elskens' patient counts and relevant data related thereto for each year he was employed by

3 Providence, broken down by month.

4      **RESPONSE:**

5

6

7      **REQUEST FOR PRODUCTION NO. 86:** Produce a complete copy of any letter, email,

8 or other document that was sent to any Providence patient which letter / email / document was

9 drafted / sent for purposes of notifying a patient that your risk management group or claims

10 managers were looking into, or had information regarding, substandard care or ethics concerns

11 regarding Dr. Dreyer's care of said patient or Dr. Elskens care of said patient.

12      **RESPONSE:**

13

14

15      **REQUEST FOR PRODUCTION NO. 87:** Produce a complete copy of any document or

16 data created or gathered by claims manager Jennifer Barnes, or any other claims manager or risk

17 manager, which document or data was created as a result of any concern about negligence or

18 patient care concerns involving Dr. Jason Dreyer or Dr. Daniel Elskens.

19      **RESPONSE:**

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 24 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **REQUEST FOR PRODUCTION NO. 88:** Produce a complete copy of any document,

2    data, email, electronic message or note, no matter how created or where stored that was created or

3    gathered for the purpose of any internal investigation into any allegation of misconduct or

4    malfeasance directed at Dr. JASON A. DREYER or Dr. DANIEL ELSKENS.

5    **RESPONSE:**

6

7

8    **REQUEST FOR PRODUCTION NO. 89:** Produce a complete copy of any policy, rule,

9    or document which serve to inform Providence St. Mary Medical Center employees of their

10   reporting requirements (MQAC/Dept. of Health, and NPDB) when a physician is suspended,

11   terminated, or otherwise restricted from practice by Providence as a result of misconduct, ethics

12   violations, or patient safety concerns.

13   **RESPONSE:**

14

15

16   **REQUEST FOR PRODUCTION NO. 90:** Produce a complete copy of any policy, rule,

17   or document which serve to inform Providence St. Mary Medical Center employees of their

18   obligations to inform patients of a physician who has been suspended, terminated, or otherwise

19   restricted from practice by Providence as a result of misconduct, ethics violations, or patient safety

20   concerns.

21   **RESPONSE:**

22

23   NO. 22-CV-00915-TL
     PLAINTIFFS' FOURTH INTERROGATORIES AND

24   REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 25 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1      **REQUEST FOR PRODUCTION NO. 91:** Produce a complete copy of any policy, rule,

2 or document which serve to inform Providence St. Mary Medical Center employees of their

3 obligations to inform future employers of a physician who has been suspended, terminated, or

4 otherwise restricted from practice by Providence as a result of misconduct, ethics violations, or

5 patient safety concerns.

6      **RESPONSE:**

7

8

9      **REQUEST FOR PRODUCTION NO. 92:** Produce a complete copy of any email or

10 electronic message in your **possession or control** that contains the term "DR. DEMAKAS" or

11 "DEMAKAS" in the address section, heading, subject line, or text of the email/message, which

12 email was created at any time between January 1, 2019 and December 31, 2019.

13      **RESPONSE:**

14

15

16      **REQUEST FOR PRODUCTION NO. 93**:  Produce a copy of the hospital bylaws for

17 PROVIDENCE HEALTH & SERVICES WASHINGTON d/b/a ST. MARY'S MEDICAL

18 CENTER.

19      **RESPONSE:**

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 26 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1      **REQUEST FOR PRODUCTION NO. 94**:  Produce a copy of all PROVIDENCE

2  HEALTH & SERVICES WASHINGTON d/b/a ST. MARY'S MEDICAL CENTER policies

3  applicable to DR. JASON A. DREYER or Dr. DANIEL ELSKENS from 2016 to 2019.

4      **RESPONSE:**

5

6

7      **REQUEST FOR PRODUCTION NO. 95**:  Produce a copy of all PROVIDENCE

8  HEALTH & SERVICES WASHINGTON d/b/a ST. MARY'S MEDICAL CENTER policies /

9  guidelines for credentialing and awarding staff privileges that active and applicable to DR. JASON

10  A. DREYER or Dr. DANIEL ELSKENSN at any time.

11      **RESPONSE:**

12

13

14      **REQUEST FOR PRODUCTION NO. 96:** Produce a copy of any document, that

15  documents a failed outcome[1] for any surgery performed by Dr. JASON A. DREYER, DO or Dr.

16  DANIEL ELSKENS.

17      **RESPONSE:**

18

19

20

_____

21  [1] As examples: persistent back or neck pain after spine surgery; expected surgery outcome – such that spine pain would be minimized or eliminated—didn't happen. Additional symptoms could include neurological symptoms (eg, numbness, weakness, tingling sensations), leg pain, and radicular pain (pain that spreads from one area of the body to another, such as from your neck down to your arm).

22

23  NO. 22-CV-00915-TL               **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' FOURTH INTERROGATORIES AND      421 W. RIVERSIDE, AVE., SUITE 1400

24  REQUESTS FOR PRODUCTION PROPOUNDED          SPOKANE, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES      T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 27 OF 57

1    **REQUEST FOR PRODUCTION NO. 97:** Please produce all documents which reflect

2    any and all correspondence or communication between you and any person which correspondence

3    relates to claims and defenses asserted in this case.

4    **RESPONSE:**

5

6

7    **REQUEST FOR PRODUCTION NO. 98:** Produce all other documents, not previously

8    produced, that you have subpoenaed or otherwise obtained from any source other than Plaintiffs

9    which are or may be related to this cause of action.

10    **RESPONSE:**

11

12

13    **REQUEST FOR PRODUCTION NO. 99:** Produce true and correct copies of any and all

14    documents not previously produced which you believe have any relevance to any claim or defense

15    in this case.

16    **RESPONSE:**

17

18

19    **REQUEST FOR PRODUCTION NO. 100:**   For each defense expert you name in

20    connection with class issues, please produce a current, complete curriculum vitae.

21    **RESPONSE:**

22

23    NO. 22-CV-00915-TL
      PLAINTIFFS' FOURTH INTERROGATORIES AND

24    REQUESTS FOR PRODUCTION PROPOUNDED
      UPON PROVIDENCE HEALTH & SERVICES
      WASHINGTON - PAGE 28 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

2      **REQUEST FOR PRODUCTION NO. 101:**  For each class defense, produce a full and

3   complete copy of each and every deposition, or trial transcript wherein the expert testified, that is

4   in your possession or control, or that of the experts.

5      **RESPONSE:**

6

7

8      **REQUEST FOR PRODUCTION NO. 102:**  Produce a full and complete copy of any and

9   all notes, memos, emails, or report(s) produced by any class defense expert which were produced

10  for the purpose of litigation from any case wherein the notes, memos, emails, or report(s) was

11  submitted as an exhibit either in a deposition or at trial.

12     **RESPONSE:**

13

14

15     **REQUEST FOR PRODUCTION NO. 103:**  For each class defense expert, produce a copy

16  of all documents, reports, records, photographs, learned/treatise and or/ scientific literature or

17  publication, or other tangible objects supplied to, or relied upon, by the expert to form the bases of his

18  or her opinion.

19     **RESPONSE:**

20

21

22

23  NO. 22-CV-00915-TL                                          **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' FOURTH INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24  REQUESTS FOR PRODUCTION PROPOUNDED                        SPOKANE, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 29 OF 57

1    **REQUEST FOR PRODUCTION NO. 104:** Pursuant to CR 34, produce a copy of any and

2    all documents, memos, notes, reports, records, photographs, learned/treatise(s) and / or scientific

3    literature or publication(s), and/or other tangible objects provided too, or produced by, any class

4    defense expert which is in any way related to the expert's retention in this case.

5    **RESPONSE:**

6

7

8    **REQUEST FOR PRODUCTION NO. 105:** Pursuant to CR 34, produce a copy of the

9    personnel file and credentialing file (if applicable) for the following individuals: Susan Blackburn;

10   Wanda Pasiano; Jason Dreyer; Jennifer Barnes; Dr. David Yam; Dr. Daniel Elskens. This must

11   include, without limitation: all hiring, training, oversight, and termination information; all disciplinary

12   information; all performance information; complaints or references to complaints of any type; payroll

13   records; termination documentation – severance agreements, separation agreements, settlement and

14   release agreements, etc.

15   **RESPONSE:**

16

17

18   **REQUEST FOR PRODUCTION NO. 106:** Pursuant to CR 34, Pursuant to CR 34,

19   produce, or allow inspection of, any email or electronic message in your possession or control that

20   was sent to, or received from Dr. John Demakas, Mark Donaldson, Laureen Driscoll, Jennifer Barnes;

21   Sarrah Glennie; Christy Peterson; Amy Sargent; Andy Flemer; Elizabeth Burton-Woodard; David

22   Chen; Bryan Mueller; April Mayer; Tom Thompson; Allan Heller; Brent Morgan; Antoine (Tony)

23

24   NO. 22-CV-00915-TL
     PLAINTIFFS' FOURTH INTERROGATORIES AND
     REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 30 OF 57

     **GILBERT LAW FIRM, P.S.**
     421 W. RIVERSIDE, AVE., SUITE 1400
     SPOKANE, WA 99201
     T: (509) 321-0750 • F: (509) 343-3315

1    Tohmeh; Christopher Melich which email or electronic message was sent any time between March

2    1, 2019 and April 12, 2022, which email or electronic message includes any of the following names

3    or terms:

4    
- Tornabene
5    
- Fruchter
- Justice
6    
- DOJ
- "U.S. Attorney"
7    
- Dreyer
- Providence
8    
- "St. Mary"
- MQAC
9    
- DOH
- Yam
10   
- Beaudoin
- Fewel
11   
- "administrative leave"
- Elskens
12   
- Fraud
- Investigation
13   
- Resignation

14   **RESPONSE:**

15

16

17   **REQUEST FOR PRODUCTION NO. 107:**  Pursuant to CR 34, produce a copy of any

18   notes, memos, emails, electronic messages or other documents, no matter where stored or how created

19   which documents contain any reference to any investigation into complaints raised about Dr. Jason

20   Dreyer's or Dr. Daniel Elskens' medical ethics or patient care.

21   **RESPONSE:**

22

23   NO. 22-CV-00915-TL
     PLAINTIFFS' FOURTH INTERROGATORIES AND
24   REQUESTS FOR PRODUCTION PROPOUNDED
     UPON PROVIDENCE HEALTH & SERVICES
     WASHINGTON - PAGE 31 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

2      **REQUEST FOR PRODUCTION NO. 108:**  Pursuant to CR 34, produce a copy of any

3   notes, memos, emails, electronic messages or other documents, no matter where stored or how created

4   which documents were gathered or created for, or contain any reference to, any investigation into

5   complaints raised about Dr. Jason Dreyer's or Dr. Daniel Elskens' medical ethics or patient care.

6      **RESPONSE:**

7

8

9      **REQUEST FOR PRODUCTION NO. 109:**  Pursuant to CR 34, produce a copy of any

10  notes, memos, emails, electronic messages or other documents, no matter where stored or how created

11  which documents were provided to the Department of Health MQAC in response to any investigation

12  into Dr. Jason Dreyer's or Dr. Daniel Elskens' medical ethics or patient care.

13     **RESPONSE:**

14

15

16     **REQUEST FOR PRODUCTION NO. 110:**  Pursuant to CR 34, produce a copy of any

17  notes, memos, emails, electronic messages or other documents, no matter where stored or how created

18  which documents were provided to the U.S. Department of Justice in response to any investigation

19  into Dr. Jason Dreyer's or Dr. Daniel Elskens' medical ethics or patient care.

20     **RESPONSE:**

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 32 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1     **REQUEST FOR PRODUCTION NO. 111:**  Pursuant to CR 34, produce a copy of any

2     notes, memos, emails, electronic messages or other documents, no matter where stored or how created

3     which documents were provided to the U.S. Department of Justice in response to any investigation

4     into Dr. Jason Dreyer's or Dr. Daniel Elskens' medical ethics or patient care.

5     **RESPONSE:**

6

7

8     **REQUEST FOR PRODUCTION NO. 112:**  Pursuant to CR 34, produce, or allow

9     inspection of, all notes, memos, email, electronic message, or other documents, no matter how created

10    or where stored that are in your possession or control that were created or gathered between January

11    1, 2019 and April 12, 2022 which notes, memos, email, electronic message, or other documents

12    reference in any manner Dr. Antoine (Tony) Tohmeh.

13    **RESPONSE:**

14

15

16    **REQUEST FOR PRODUCTION NO. 113:**  Pursuant to CR 34, produce, or allow

17    inspection of, all notes, memos, email, electronic message, or other documents, no matter how created

18    or where stored that are in your possession or control that were created or gathered between January

19    1, 2017 and April 12, 2022 which notes, memos, email, electronic message, or other documents

20    reference in any manner Dr. John Demakas.

21    **RESPONSE:**

22

23    NO. 22-CV-00915-TL
      PLAINTIFFS' FOURTH INTERROGATORIES AND

24    REQUESTS FOR PRODUCTION PROPOUNDED
      UPON PROVIDENCE HEALTH & SERVICES
      WASHINGTON - PAGE 33 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

2     **REQUEST FOR PRODUCTION NO. 114:**  Pursuant to CR 34, produce, or allow

3     inspection of, all notes, memos, email, electronic message, or other documents, no matter how created

4     or where stored that are in your possession or control that were created or gathered between January

5     1, 2017 and April 12, 2022 which notes, memos, email, electronic message, or other documents

6     reference in any manner communications with Dr. Lee Sandquist.

7     **RESPONSE:**

8

9

10    **REQUEST FOR PRODUCTION NO. 115:**  Pursuant to CR 34, produce, or allow

11    inspection of, all notes, memos, email, electronic message, or other documents, no matter how created

12    or where stored that are in your possession or control that were created or gathered between January

13    1, 2017 and April 12, 2022 which notes, memos, email, electronic message, or other documents

14    reference in any manner communications with any employee of MultiCare regarding Dr. Jason

15    Dreyer.

16    **RESPONSE:**

17

18

19    **REQUEST FOR PRODUCTION NO. 116:**  Pursuant to CR 34, produce, or allow

20    inspection of, all notes, memos, email, electronic message, or other documents, no matter how created

21    or where stored that are in your possession or control that were created or gathered between January

22

23    NO. 22-CV-00915-TL                                  **GILBERT LAW FIRM, P.S.**
      PLAINTIFFS' FOURTH INTERROGATORIES AND          421 W. RIVERSIDE, AVE., SUITE 1400
24    REQUESTS FOR PRODUCTION PROPOUNDED                     SPOKANE, WA 99201
      UPON PROVIDENCE HEALTH & SERVICES             T: (509) 321-0750 • F: (509) 343-3315
      WASHINGTON - PAGE 34 OF 57

1, 2019 and April 12, 2022 which notes, memos, email, electronic message, or other documents reference in any manner Mark Donaldson.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 117:** Pursuant to CR 34, produce, or allow inspection of, all notes, memos, email, electronic message, or other documents, no matter how created or where stored that are in your possession or control that were created or gathered between January 1, 2017 and April 12, 2022 which notes, memos, email, electronic message, or other documents reference in any manner Laureen Driscoll and Jason Dreyer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 118:** Pursuant to CR 34, produce, or allow inspection of, all notes, memos, email, electronic message, or other documents, no matter how created or where stored that are in your possession or control that were created or gathered between March 1, 2019 and April 22, 2022 which notes, memos, email, electronic message, or other documents reference in any manner Jennifer Barnes; Sarrah Glennie; Christy Peterson; Amy Sargent; or April Mayer.

**RESPONSE:**

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 35 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT D
35 of 57

1    **REQUEST FOR PRODUCTION NO. 119:** Produce true and correct copies of any

2    policy, memorandum, or practice document that serves to memorialize the Providence Health &

3    Services Washington and Providence St. Mary Medical Center policies and guidelines for handling

4    administrative leave of physicians who are placed on leave pending outcome of an internal or

5    external investigation.

6    This would include, but is not limited to, the administrative leave policies; policies and

7    guidelines addressing restrictions to privileges while a physician is on administrative leave

8    pending outcome of an investigation into allegations made that the physician has violated some

9    rule, ethics, or patient care / safety standards; as well as restricted access to EPIC or other EMR

10    database used by Providence St. Mary medical Center personnel at the time.

11    **RESPONSE:**

12

13

14    **REQUEST FOR PRODUCTION NO. 120:** Produce a copy of any document, email, or

15    electronic message in your possession or control which relates in any way to Dr. Dreyer's

16    resignation submitted on November 13, 2018.

17    **RESPONSE:**

18

19

20    **REQUEST FOR PRODUCTION NO. 121:** Produce a copy of any document, email, or

21    electronic message in your possession or control which relates in any way to any notice sent to Dr.

22    Jason Dreyer advising him of his need to renew his privileges in March of 2019.

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 36 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **RESPONSE:**

2

3

4    **REQUEST FOR PRODUCTION NO. 122:** Produce a copy of your policies and

5    procedures for medical staff / physician peer review as required pursuant to RCW 7.71.010 et. sec.

6    **RESPONSE:**

7

8

9    **REQUEST FOR PRODUCTION NO. 123:** Produce a copy of any email sent to, or

10   received by **Susan Blackburn** that contains the term **Dreyer** anywhere in the address bar or text

11   of the email, and also contains any of the following terms:

12         a.   Suspended
             b.   Suspension
13         c.   "administrative leave"
             d.   "safety pause"
14         e.   Fraud
             f.   Laureen
15         g.   Driscoll
             h.   Demakas
16         i.   NPDB
             j.   MQAC
17         k.   "U.S. Attorney"
             l.   DOJ
18         m.   Donaldson
             n.   MultiCare
19         o.   Deaconess
             p.   Malpractice
20         q.   Lawsuit
             r.   Beaudoin
21         s.   "attorney general"
             t.   Resignation
22         u.   Tornebene
             v.   Fruchter

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND            421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                        SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES          T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 37 OF 57

w.  "clinical judgment"
x.  "Unnecessary surgery"
y.  "Unnecessary surgeries"
z.  "patient selection"
aa. Fewel
bb. RVU
cc. "quarterly distribution"
dd. "hi-phive"
ee. "hi phive"
ff.  "high-phive"
gg. "high phive"
hh. "hi-phive team"
ii.  "high-phive team"


**RESPONSE:**



**REQUEST FOR PRODUCTION NO. 124:** Produce a copy of any email sent to, or received by **Wanda Paisano** that contains the term **Dreyer** anywhere in the address bar or text of the email, and also contains any of the following terms:

a.  Suspended
b.  Suspension
c.  "administrative leave"
d.  "safety pause"
e.  Fraud
f.  Laureen
g.  Driscoll
h.  Demakas
i.  NPDB
j.  MQAC
k.  "U.S. Attorney"
l.  DOJ
m.  Donaldson
n.  MultiCare
o.  Deaconess
p.  Malpractice
q.  Lawsuit

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 38 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    r.   Beaudoin
     s.   "attorney general"
2    t.   Resignation
     u.   Tornebene
3    v.   Fruchter
     w.   "clinical judgment"
4    x.   "Unnecessary surgery"
     y.   "Unnecessary surgeries"
5    z.   "patient selection"
     aa. Fewel
6    bb. RVU
     cc. "quarterly distribution"
7    dd. "hi-phive"
     ee. "hi phive"
8    ff.  "high-phive"
     gg. "high phive"
9    hh. "hi-phive team"
     ii.  "high-phive team"
10

11   **RESPONSE:**

12

13

14          **REQUEST FOR PRODUCTION NO. 125:** Produce a copy of any email sent to, or

15   received by **Joel Gilbertson** at any time between January 1, 2018 and September 16, 2020, that

16   contains the term **Dreyer** anywhere in the address bar or text of the email, and also contains any

17   of the following terms:

18          a.   Suspended
            b.   Suspension
19          c.   "administrative leave"
            d.   "safety pause"
20          e.   Fraud
            f.   Laureen
21          g.   Driscoll
            h.   Demakas
22          i.   NPDB
            j.   MQAC
23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 39 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

  k. "U.S. Attorney"
  l. DOJ

2

  m. "Mark Donaldson"
  n. MultiCare

3

  o. Deaconess
  p. Malpractice

4

  q. Lawsuit
  r. Beaudoin

5

  s. "attorney general"
  t. Resignation

6

  u. Tornebene
  v. Fruchter

7

  w. "clinical judgment"
  x. "Unnecessary surgery"

8

  y. "Unnecessary surgeries"
  z. "patient selection"

9

  aa. Fewel
  bb. RVU

10

  cc. "quarterly distribution"
  dd. "hi-phive"

11

  ee. "hi phive"
  ff. "high-phive"

12

  gg. "high phive"
  hh. "hi-phive team"

13

  ii. "high-phive team"

14

  **RESPONSE:**

15

16

17

  **REQUEST FOR PRODUCTION NO. 126:** Produce a copy of any email sent to, or

18

received by **Rod** Hochman at any time between January 1, 2018 and September 16, 2020, that

19

contains the term **Dreyer** anywhere in the address bar or text of the email, and also contains any

20

of the following terms:

21

  a. Suspended

22

  b. Suspension
  c. "administrative leave"

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 40 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

d.  "safety pause"
e.  Fraud
f.  Laureen
g.  Driscoll
h.  Demakas
i.  NPDB
j.  MQAC
k.  "U.S. Attorney"
l.  DOJ
m.  "Mark Donaldson"
n.  MultiCare
o.  Deaconess
p.  Malpractice
q.  Lawsuit
r.  "attorney general"
s.  Resignation
t.  Tornebene
u.  Fruchter
v.  "clinical judgment"
w.  "Unnecessary surgery"
x.  "Unnecessary surgeries"
y.  "patient selection"
z.  RVU
aa. "quarterly distribution"

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 127:** Produce a copy of any email sent to, or received by **Rod Hochman** at any time between January 1, 2018 and August 1, 2019, that contains the terms Dreyer and MultiCare anywhere in the address bar or text of the email.

**RESPONSE:**

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 41 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT D
41 of 57

1    **REQUEST FOR PRODUCTION NO. 128:** Produce a copy of any email created, or

2    received by MultiCare human resources personnel at St. Mary Medical Center or Corporate HR

3    (Renton) which included in the address bar, or text of the email the term Dreyer.

4    This request is limited to email or electronic messages sent or received between January 1,

5    2018 and May 10, 2019.

6    **RESPONSE:**

7

8

9    **REQUEST FOR PRODUCTION NO. 129:** Produce a copy of any Providence St. Mary

10   Medical Center policy that addresses physician use of electronic medical records (e.g.: EPIC) at

11   Providence St. Mary Medical Center when the physician is on administrative leave in any capacity

12   pending outcome of investigation into accusations of misconduct. (This is limited to policies in

13   place between January 1, 2018 and May 1, 2019)

14   **RESPONSE:**

15

16

17   **REQUEST FOR PRODUCTION NO. 130:** Produce a copy of any Providence St. Mary

18   Medical Center policy that addresses the status of physician privileges when the physician is on

19   administrative leave pending outcome of investigation into accusations of misconduct. (This is

20   limited to policies in place between January 1, 2018 and May 1, 2019)

21   **RESPONSE:**

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 42 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

2          **REQUEST FOR PRODUCTION NO. 131:** Produce a copy of any email sent to, or

3    received by **Greg Hoffman** at any time between January 1, 2018 and August 1, 2019, that contains

4    the term **Dreyer** and MultiCare anywhere in the address bar or text of the email.

5          **RESPONSE:**

6

7

8          **REQUEST FOR PRODUCTION NO. 132:** Produce a copy of any email sent to, or

9    received by **Greg Hoffman** At any time between January 1, 2018 and August 1, 2019, that contains

10   the term **Dreyer** anywhere in the address bar or text of the email.

11         **RESPONSE:**

12

13

14         **REQUEST FOR PRODUCTION NO. 133:** Produce a copy of any Providence St. Mary

15   board or committee meeting minutes for any meeting taking place between January 1, 2018 and

16   September 16, 2020, that contain the term **Dreyer**.

17         **RESPONSE:**

18

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 43 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT D
43 of 57

1     **REQUEST FOR PRODUCTION NO. 134:** Produce a copy of any email sent to, or

2     received by **Ari Robicsek** at any time between January 1, 2018 and August 1, 2019, that contains

3     the term **Dreyer** anywhere in the address bar or text of the email.

4     **RESPONSE:**

5

6

7

8     **REQUEST FOR PRODUCTION NO. 135:** Produce a copy of any Providence Health

9     and Services Washington board or committee meeting minutes for any meeting taking place

10    between January 1, 2018 and September 16, 2020, that contain the term **Dreyer**.

11    **RESPONSE:**

12

13

14    **REQUEST FOR PRODUCTION NO. 136:** Produce a copy of any email sent to, or

15    received by any neurosurgeon or orthopedic spine surgeon employed by Providence Health &

16    Services Washington at any time between January 1, 2019 and January 1, 2022, that contains the

17    term **Demakas** anywhere in the address bar or text of the email.

18    **RESPONSE:**

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 44 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **REQUEST FOR PRODUCTION NO. 137:** Produce a copy of any Providence St. Mary

2    Medical Center or Providence Health and Services Washington policy that addresses Department

3    of Health / licensing / MQAC reporting requirements for instances when a doctor or other medical

4    staff are suspected of engaging in actions that call into concern clinical judgment that impacts

5    patient safety (This is limited to policies in place between January 1, 2018 and January 1, 2020).

6    **RESPONSE:**

7

8

9    **REQUEST FOR PRODUCTION NO. 138:** Produce a copy of any Providence St. Mary

10   Medical Center or Providence Health and Services Washington policy that addresses reporting

11   requirements for the National Practitioner Data Bank for instances when a doctor is engaged in

12   actions that call into concern clinical judgment that impacts patient safety (This is limited to

13   policies in place between January 1, 2018 and January 1, 2020)

14   **RESPONSE:**

15

16

17   **REQUEST FOR PRODUCTION NO. 139:** Produce a copy of any Providence St. Mary

18   Medical Center or Providence Health and Services Washington policy that addresses

19   administrative leave requirements for instances where a doctor is accused of engaging in

20   malpractice, or actions that call into concern clinical judgment that impacts patient safety (This is

21   limited to policies in place between January 1, 2018 and January 1, 2020)

22   **RESPONSE:**

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 45 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

2     **REQUEST FOR PRODUCTION NO. 140:** Produce a copy of any Providence St. Mary

3 Medical Center policy that addresses privileging and privileges for surgeons conducting surgeries

4 at Providence St. Mary Medical Center. (This is limited to policies in place between January 1,

5 2018 and January 1, 2020)

6     **RESPONSE:**

7

8

9     **REQUEST FOR PRODUCTION NO. 142:** Produce a copy of any email sent by Dr.

10 David Yam to Dr. Rod Hochman between January 1, 2017 and January 1, 2021.

11     **RESPONSE:**

12

13

14

15     **REQUEST FOR PRODUCTION NO. 143:** Produce a copy of any email sent from any

16 Providence St. Mary employee to any MultiCare employee (identifiable by @multicare.org) sent

17 between January 1, 2019 and July 1, 2021, which email contains the term Dreyer anywhere in the

18 text of the email.

19     **RESPONSE:**

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 46 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

**REQUEST FOR PRODUCTION NO. 144:** Produce a copy of any email received by, or sent from, any Providence St. Mary or Providence Health & Services Washington employee which email includes jdemakas@multicare.org as an addressee. This is limited in time to emails sent or received between January 1, 2019 and July 1, 2021.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 145:** Produce a copy of any document, email, or electronic message in your possession or control which documents or references:

a.    any patient complaint Providence or St. Mary Medical Center fielded regarding Dr. Dreyer's care or Dr. Elskens' care;

b.    any concerns raised by Dr. Dreyer's co-workers regarding Dr. Dreyer while he was employed by Providence.

c.    any concerns raised by Dr. Elskens' co-workers regarding Dr. Elskens while he was employed by Providence

d.    Any concerns raised by any employee regarding Dr. Dreyer while he was employed by Providence.

e.    Any concerns raised by any employee regarding Dr. Elskens while he was employed by Providence.

f.    Concerns expressed by any Providence employee after Dr. Dreyer left his employment with Providence.

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 47 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    g.    Concerns expressed by any Providence employee after Dr. Elskens left his

2 employment with Providence.

3    **RESPONSE:**

4

5

6    **REQUEST FOR PRODUCTION NO. 146:** Produce a copy of the deposition transcripts

7 for depositions conducted of Dr. David Yam in the Estes v. Providence case, EDW Cause No.:

8 4:21-CV-05042-TOR.

9    **RESPONSE:**

10

11

12

13    **REQUEST FOR PRODUCTION NO. 147:** Produce a copy of the *locums* agreement and

14 any written communication or email or electronic message sent to or received from any MD or

15 DO which contains the term Dreyer, or discusses the MD/DO's thoughts or opinions regarding

16 any patient that was currently, or had been under the care of Dr. Dreyer at the time of his taking

17 or being placed on administrative leave.

18    **RESPONSE:**

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 48 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1  **REQUEST FOR PRODUCTION NO. 148:** Produce a copy of any written

2 communication or email or electronic message in your possession or control that was sent to or

3 received from Dr. Estrada Bernard or Dr. Nicholas Theodore.

4  The operative time period is January 1, 2017 through the date of this request.

5  **RESPONSE:**

6

7

8  **REQUEST FOR PRODUCTION NO. 149:** Produce a copy of any documents gathered

9 or produced or created, including but not limited to depositions transcripts and exhibits to

10 depositions, and documents provided in response to Requests for Production Propounded Upon

11 Providence in the *Cyde M. Estes v Providence Health & Services and Jason Dreyer* Eastern

12 District of Washington Cause No. *4:21-cv-5042* matter.[2]

13  **RESPONSE:**

14

15

16  **REQUEST FOR PRODUCTION NO. 150:** Produce all documents or data, no matter

17 how or by whom created or where stored, that you have turned over, received from, or created

18 with the United States Government and/or the Washington State Department of Health or any

19 other regulatory agency, which documents or data were produced to, created with, or exchanged

20 with the government or agencies in any investigation into actions of omissions of you, Dr. Jason

21

22  [2] To the extent this is a duplicative request to other Requests for Production, the Plaintiffs renew the request here.

23 NO. 22-CV-00915-TL     **GILBERT LAW FIRM, P.S.**
 PLAINTIFFS' FOURTH INTERROGATORIES AND  421 W. RIVERSIDE, AVE., SUITE 1400

24 REQUESTS FOR PRODUCTION PROPOUNDED  SPOKANE, WA 99201
 UPON PROVIDENCE HEALTH & SERVICES  T: (509) 321-0750 • F: (509) 343-3315
 WASHINGTON - PAGE 49 OF 57

1    A. Dreyer, and/or Dr. Daniel Elskens,[3] including all such documents related to the government

2    investigation that culminated into the settlement agreement which you entered in the spring 2022

3    with the government where you paid $22,690,458.00 to resolve health care fraud claims, and

4    including the Washington State Department of Health investigation into St. Mary Medical

5    Hospital in 2022 for failing to report, *inter alia*, Dr. Dreyer under RCW 70.41 et seq.[4]

6        **RESPONSE:**

7

8

9        **REQUEST FOR PRODUCTION NO. 151:** Any and all communications, notes,

10   emails, or other documents in your possession or control (including your attorney's control) not

11   already produced via the request above, that were produced to the United States Attorney during

12   its investigation into, and litigation of, the claims alleged against you in the Qui Tam action –

13   Cause No: *EDW 20-CV-05004-SMJ.*

14       **RESPONSE:**

15

16

17       **REQUEST FOR PRODUCTION NO. 152:** Provide any and all lists of patients that

18   was/were provided to JND Legal Administration during the 2023 jurisdictional discovery

19   process.

20       **RESPONSE:**

21   _____

22   [3] This includes any correspondence, notes, emails, or electronic messages, as well as any deposition transcripts.
     [4] To the extent this is a duplicative request to other Requests for Production, the Plaintiffs renew the request here.

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND            421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                        SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 50 OF 57

1

2          **REQUEST FOR PRODUCTION NO. 152:** Produce all documents related to any

3   Dreyer-related RVU submitted to any government entity or health insurer for payment or

4   reimbursement in whole or in part, including but not limited to:

5               Codes for Dreyer-related RVU;

6               Accountings or audits of Dreyer-related RVUs;

7               Claims;

8               Bills or invoices;

9               Any report, summary, or pro forma.

10          **RESPONSE**:

11

12

13          **REQUEST FOR PRODUCTION NO. 153:** Produce all documents related to payments

14   from any government entity or health insurer based in whole or in part upon Dreyer-related

15   RVUs, including but not limited to:

16               Payment, credit, transfer, or reimbursement confirmations;

17               Financial institution deposits or credits, including any related bank account

18                   statement;

19               Any report, summary, or pro forma;

20               Any accounting or audit of Dreyer-related RVUs.

21

          **RESPONSE**:

22

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                          SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES               T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 51 OF 57

1

2          **REQUEST FOR PRODUCTION NO. 154:** Produce all monthly or periodic bank

3    statements for any bank account into which Dreyer-related RVU payments or reimbursement

4    was deposited, transferred, or credited ("Dreyer-RVU related bank accounts"), including the

5    corresponding bank account numbers and identity of each account holder.

6          **RESPONSE:**

7

8

9

10         **REQUEST FOR PRODUCTION NO. 155:** Produce alll documents relating to any

11   transfers or payments from any Dreyer-RVU related bank account for the acquisition of any title

12   to, or any right, interest or equity in, real property, including but not limited to:

13               a.   The payment of any realty lease or rental obligation;

14               b.   The payment of any mortgage obligation;

15               c.   The purchase of any realty;

16               d.   The leasing of any realty;

17               e.   The financing of any lease or rental obligation;

18               f.   The financing of any mortgage;
                 g.   The financing of any realty.

19         **RESPONSE:**

20

21

22

23   NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND            421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                      SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES           T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 52 OF 57

1    **REQUEST FOR PRODUCTION NO. 156:**   Produce all documents relating to any

2  transfers or payments from any Dreyer-RVU related bank account for the establishment or

3  operation of MULTI CARE HEALTH SYSTEM also d/b/a *MULTICARE DEACONESS*

4  *HOSPITAL* and *MULTICARE ROCKWOOD CLINIC NEUROSURGERY & SPINE*, including

5  but not limited to:

6         a.  The payment of employee compensation, including but not limited to payments to
             Dr. Dreyer;

7         b.  The payment of any operational expense, including but not limited to  payments
             for equipment, malpractice or liability insurance, or utilities

8

9         c.  Payments to purchase or lease any realty;

          **d.**  Payments to Medtronic.

10    **RESPONSE**:

11

12

13

14    **REQUEST  FOR  PRODUCTION  NO.  157:**     All  documents  related  to  the  **HI-**

15  **PHIVE Team** as testified to by Dr. David Yam at page 148 in his February 13, 2023 deposition

16  in the case Estes v. Providence, *4:21-cv-5042,* in which you are a party, including the **HI-PHIVE**

17  **Team**'s creation, maintenance, existence, purpose and activity.

    **RESPONSE:**

18

19

20

21

22

23

24

NO. 22-CV-00915-TL
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 53 OF 57

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT D
53 of 57

1    **REQUEST FOR PRODUCTION NO. 158:**    Produce all documents relating to and/or

2    mention "**PROVIDENCE CONCIERGE SERVICE**" or "**PROVIDER CONCIERGE**" with

3    the term "**RVU**" or "**DREYER**" or "**ELSKENS**."

4    **RESPONSE:**

5

6

7

8

9

10    <u>**CERTIFICATION OF COUNSEL**</u>

11    ANSWERS AND OBJECTIONS SUBMITTED this ___ day of _____, 2024.

12    The undersigned attorney has read the foregoing responses to these discovery requests, and they

13    comply with FRCP 26(g).

14    DATED this _____ day of _____, 2024.

15
                                            Davis Wright Tremaine LLP
                                            Attorneys for Defendant Providence Health &
16                                           Services – Washington

17                                           By _____
                                            Kenneth E. Payson, WSBA #26369
18                                           Ross Siler, WSBA #46486
                                            Jordan C. Harris, WSBA #55499
19                                           920 Fifth Avenue, Suite 3300
                                            Seattle, WA 98104-1610
20                                           Telephone: (206) 622-3150
                                            Fax: (206) 757-7700
21                                           Email: kenpayson@dwt.com
                                            ross.siler@dwt.com
22                                           jordanharris@dwt.com

23    NO. 22-CV-00915-TL                                    **GILBERT LAW FIRM, P.S.**
      PLAINTIFFS' FOURTH INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
24    REQUESTS FOR PRODUCTION PROPOUNDED                          SPOKANE, WA 99201
      UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
      WASHINGTON - PAGE 54 OF 57

1
                             Lewis Brisbois Bisgaard & Smith LLP
                             Attorneys for Defendant Providence Health &

2
                             Services – Washington

3
                             By _____
                             Jennifer K. Oetter, WSBA #26140

4
                             888 SW Fifth Avenue, Suite 900
                             Portland, OR 97204

5
                             Telephone: (971) 712-2800
                             Fax: (971) 712-2801

6
                             Email: jennifer.oetter@lewisbrisbois.com

7

8

9

10
                  **CERTIFICATION OF DEFENDANT PROVIDENCE HEALTH & SERVICES WASHINGTON ALSO D/B/A ST MARY MEDICAL CENTER ("PROVIDENCE")**

11
_____, being first duly sworn on oath, deposes and says: I am the

12
designated speaking agent for Providence Health & Services Washington with authority to bind

13
Providence Health & Services Washington by my signature herein. I have read the above and

14
foregoing responses thereto, know the contents thereof, have done my due diligence in researching

15
the responses, and believe the same to be true, correct, and complete.

16

17
                                         _____
                   SUBSCRIBED AND SWORN to before me this _____ Day of _____, 2024.

18

19
                                    _____
                                    (Notary Signature)

20
                                    _____
                                    (Type or Print Name of Notary)

21
                                    NOTARY PUBLIC for the State of
                                    Washington, residing at _____

22
                                    My appointment expires: _____

23
NO. 22-CV-00915-TL
24
PLAINTIFFS' FOURTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 55 OF 57

                                       **GILBERT LAW FIRM, P.S.**
                                    421 W. Riverside, Ave., Suite 1400
                                      Spokane, WA 99201
                            T: (509) 321-0750 • F: (509) 343-3315

1

## CERTIFICATE OF SERVICE

2    The undersigned hereby certifies under penalty of perjury under the laws of the state of

3    Washington, that I am now, and at all times material hereto, a citizen of the United States, a resident

4    of the state of Washington, over the age of 18 years, not a party to, nor interested in the above-

5    entitled action, and competent to be a witness herein. I caused to be served on this date the

6    foregoing document in the manner indicated to the parties listed below:

7    ***Counsel for Defendants Dr. Jason A. Dreyer, DO and Jane Doe Dreyer:***

8

9    Ryan M. Beaudoin, WSBA #30598    ☐ **HAND DELIVERY**
     Jeffrey Galloway, WSBA #44059    ☐ **U.S. FIRST CLASS MAIL**
     WITHERSPOON BRAJCICH McPHEE,    ☒ **ELECTRONIC MAIL**

10   PLLC    ☐ **FACSIMILE TRANSMISSION**
     601 W. Main Ave, Ste 1400

11   Spokane, WA 99201-0677
     rbeaudoin@workwith.com

12   jgalloway@wortkwith.com

13   ***Counsel for Defendants Dr. Daniel Elskens, DO and Jane Doe Elskens:***

14

15   Stephen M. Lamberson, WSBA #12985    ☐ **HAND DELIVERY**
     Ronald A. Van Wert, WSBA #32050    ☐ **U.S. FIRST CLASS MAIL**
     ETTER, MCMAHON, LAMBERSON,    ☒ **ELECTRONIC MAIL**

16   VAN WERT & ORESKOVICH, P.C.    ☐ **FACSIMILE TRANSMISSION**
     618 W. Riverside Ave., Ste. 210

17   Spokane, WA 99201
     lambo@ettermcmahon.com

18   jgalloway@workwith.com

19   ***Co-Counsel for Defendant Providence Health & Services:***

20

21   Kenneth E. Payson, WSBA #26369    ☐ **HAND DELIVERY**
     Ross Siler, WSBA #46486    ☐ **U.S. FIRST CLASS MAIL**
     Jordan Harris, WSBA #55499    ☒ **ELECTRONIC MAIL**

22   DAVIS WRIGHT TREMAINE LLP    ☐ **FACSIMILE TRANSMISSION**
     920 Fifth Ave., Ste. 3300

23   NO. 22-CV-00915-TL    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND    421 W. RIVERSIDE, AVE., SUITE 1400

24   REQUESTS FOR PRODUCTION PROPOUNDED    SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES    T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 56 OF 57

1    Seattle, WA 98104-1610
     kenpayson@dwt.com
2    ross.siler@dwt.com
     jordanharris@dwt.com

3

4    *Co-Counsel for Defendant Providence Health & Services:*

5    Jennifer K. Oetter, WSBA #26140          ☐    **HAND DELIVERY**
     LEWIS BRISBOIS BISGAARD & SMITH          ☐    **U.S. FIRST CLASS MAIL**
6    LLP                                      ☒    **ELECTRONIC MAIL**
     888 SW Fifth Ave., Ste. 900             ☐    **FACSIMILE TRANSMISSION**
7    Portland, OR 97204-2025
     jennifer.oetter@lewisbrisbois.com

8
     DATED this 24th day of October, 2024.
9

10

11                                              RACHEL COOK, Paralegal

12

13

14

15

16

17

18

19

20

21

22

23   NO. 22-CV-00915-TL                                **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FOURTH INTERROGATORIES AND           421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED               SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 57 OF 57

1   William A. Gilbert, WSBA #30592
    Gilbert Law Firm, P.S.
2   421 W. Riverside Ave, Suite 1400
    Spokane, WA 99201
3   T: 509·321·0750
    F: 509·343·3315
4   E: bill@wagilbert.com
    Attorney for Plaintiffs

5

6

7

8

9
                UNITED STATES DISTRICT COURT OF THE WESTERN
10                  DISTRICT OF WASHINGTON AT SEATTLE

11   CAROLINE ANGULO et al.,                    NO. 22-CV-00915-JLR

12                        Plaintiffs.           **PLAINTIFFS' FIFTH**
                                                **INTERROGATORIES AND**
             v.                                 **REQUESTS FOR PRODUCTION**
13                                              **PROPOUNDED UPON**
     PROVIDENCE HEALTH & SERVICES               **PROVIDENCE HEALTH &**
14   WASHINGTON, a non-profit Washington        **SERVICES WASHINGTON**
     Corporation, also d/b/a PROVIDENCE ST.
15   MARY MEDICAL CENTER; Dr. JASON A.
     DREYER, DO, and JANE DOE DREYER,
16   husband and wife and the marital community
     thereof; Dr. DANIEL ELSKENS DO, and
17   JANE DOE ELSKENS, husband and wife and
     the marital community thereof; and
18   JOHN/JANE DOES 1-10, and any marital
     communities thereof,
19                TO:    PROVIDENCE HEALTH & SERVICES WASHINGTON, a non-profit Washington
                        Defendants.
20                      Corporation, Defendant; and

21

22

23   NO. 22-CV-00915-JLR                              **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIFTH INTERROGATORIES AND            421 W. Riverside, Ave., Suite 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                      Spokane, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES               T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 1 OF 30

                              EXHIBIT E
                               1 of 30

TO:    Kenneth E. Payson, Attorney for Defendant PROVIDENCE HEALTH & SERVICES WASHINGTON.

**Pursuant to Rules 26, 33 and 34 of the federal rules of civil procedure, plaintiffs submit the following interrogatories and requests for production to be answered separately and fully under oath within thirty (30) days from the date of service of said discovery upon you. In answering this discovery, you are required to furnish such information as is available to you, not merely the information which you know of your personal knowledge. This is intended to include any information in the possession of the agent or attorney or any investigator for the answering party.**

**Respond To:  William A. Gilbert**
**Gilbert Law Firm, P.S.**
**421 W. Riverside, Ste 1400**
**Spokane, WA 99201**

Court rule requires the answers be preceded by questions and thus extra copies of these interrogatories are being served upon you in order to expedite the answering thereof. You may type your answers immediately after the question and thus avoid retyping the question.

If you claim that any information requested is protected from disclosure / discovery by privilege or the work product doctrine you must identify such document or thing in your written response, giving the following information: (a) date of document; (b) author of document; (c) addressee of document; (d) nature of document; such as memorandum, letter, etc.; (e) anyone who has received a copy of the document; and (f) the general subject matter of the document.  You must preserve the information stated above as well as the documents themselves in a privilege log. Failure to do so may lead to sanctions or other admonishment by the court.

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 2 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **Protective Order:**  If you are claiming that any information responsive to these

2    Interrogatories and Requests for Production is confidential or contains information which the

3    defendant claims is proprietary or otherwise requires protection from disclosure to individuals or

4    entities other than the parties to this law suit please confirm with our office as soon as the necessity

5    of a protective order is recognized and an order as stipulated by the parties will be duly entered

6    with the Court prior to dissemination of the information.

7    **DEFINITIONS**

8    As used herein:

9    **Plaintiff(s)** means the plaintiffs named in the Fourth Amended Complaint and the all

10   proposed class members, known and unknown, as identified and outlined in the Complaint.

11   **Defendant** means PROVIDENCE HEALTH & SERVICES WASHINGTON, including

12   d/b/a ST. MARY MEDICAL CENTER (collectively "PROVIDENCE"), its subsidiaries, its

13   employees, agents and assigns, including parties, attorneys, investigators, adjusters, insurance

14   companies or others standing in a representative relationship to Defendant PROVIDENCE.

15   PROVIDENCE also includes the defendants as identified in the Settlement Agreement (see

16   Exhibit 2 of the Fourth Amended Complaint) and as further described in its Corporate Disclosure

17   Statements (Docket Entry Nos. 2 and 64).

18   **Settlement Agreement** is the agreement among PROVIDENCE as defined herein and the

19   United States and the State of Washington with an effective date of March 17, 2022, a copy of

20   which is attached as Exhibit 2 to the Fourth Amended Complaint.

21   **Recital** refers to the paragraph enumeration within the "Factual Recitals" of the Settlement

22   Agreement.

23

24   NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 3 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **Yam Litigation** or **Providence qui tam action** is the federal case *Yam v. Providence*

2    *Health and Services*, 4:20-cv-05004-SMJ, identified in Recital G of the Settlement Agreement.

3    **Dates:** Relevant Time Period for discovery is June 2013 through November 2018, and

4    through to the present.

5    **You or Your**:  Means any party to whom these interrogatories are addressed, and

6    Providence's attorneys, agents, employees, officers, representatives, adjusters, investigators, and

7    any other "person" who has knowledge of information, or is in possession of evidence or things,

8    responsive to any request herein. Including, but not limited to the following which Providence has

9    identified as its present or former employees: Dr. Timothy Davidson, Dr. Dean Martz, Sean

10   Douglas, David McKay, Lori Asmus, Tina Crawford, Stacy Olson, Susan Towner, Joel

11   Wasserman, Shannon Lane, Poppy McGuire, Cathy Nicol, Marc Sowder, Scott O'Brien,

12   Christopher Hall, Michael Waters, Steve Burdick, Martin Benning, Becky Cameron, Mary

13   Crawford, Desiree Patzer, Wanda Paisano (Deceased) By deposition only, Susan Blackburn, Perry

14   Camp, Dr. Dreyer, Dr. Elskens, Dr. Yam, Dr. Smith, all current or former Providence employees

15   listed in Providence's Initial Disclosures dated September 9, 2024, all current or former Providence

16   employees that Providence may call to address the topics listed in Paragraph B.15 of Providence's

17   initial disclosures, current or former Providence employees that Providence may call to address

18   the topics lists in Paragraph C of Providence's initial disclosures, and current or former Providence

19   employees that Providence may call to address its defenses or affirmative defenses.

20   **Knowledge or Information**: Where knowledge or information in the possession of a party

21   is requested, such request includes knowledge of the party's agents, representatives, employees

22   and, unless privileged, his attorneys. When the answer is made by a corporate defendant, state the

23   NO. 22-CV-00915-JLR                                              **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIFTH INTERROGATORIES AND                        421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                                      SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES                           T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 4 OF 30

1    name, address and title of the person supplying the information, and title of the person supplying

2    the information, and making the affidavit, and the source of his information.

3        **"Document(s)" or "Information"** means all materials within the scope of Federal Civil

4    Rule of Procedure 34, including, without limitation, all writings, drawings, graphs, charts,

5    photographs, sound recordings, spreadsheets, images, and other data or data compilations,

6    including electronically-stored information (ESI), that are stored in any medium whatsoever from

7    which information can be obtained either directly or, if necessary, after translation by the

8    responding party into a reasonably usable form, as well as any tangible things. A draft or non-

9    identical copy of a document is a separate document within the meaning of this term. A document

10   includes all appendices, schedules, exhibits, and other attachments. The term "Document(s)" or

11   "Information" includes but is not limited to emails and other types of messages (including but not

12   limited to text, instant, and direct messages), social media or other online content, data generated

13   and stored by devices connected to the Internet of Things (IoT), communications generated and

14   stored in workplace collaboration tools or ephemeral messaging applications, and all associated

15   data and metadata.

16       **Possession or Control**: The act or condition of having in, or taking into one's control or

17   having at one's disposal or the power or authority to access, guide, manage, direct or restrain any

18   document or thing.

19       **"Identify"** with respect to a person means to give, to the extent known, the person's (a)

20   full name; (b) present or last known address; and (c) current or last known place of employment.

21       **"Identify"** with respect to a document means to give, to the extent known, the (a) type of

22   document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and

23

24   NO. 22-CV-00915-JLR                          **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIFTH INTERROGATORIES AND           421 W. RIVERSIDE, AVE., SUITE 1400
     REQUESTS FOR PRODUCTION PROPOUNDED                    SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES          T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 5 OF 30

1  recipient(s). In the alternative, the responding party may produce the documents, together with

2  identifying information sufficient to satisfy FRCP 33.

3      **"Identify"** with respect to communications means to give, to the extent known, (a) a

4  description of the substance of the communication; (b) the form of the communication (e.g.,

5  telephone, facsimile, email, etc.); (c) the identity of all parties to and/or present at the time of the

6  communication, as well as the full name, present or last known address, and the current or last

7  known place of employment of each person; (d) the identity of the person whom you contend

8  initiated the communication; and (e) the time, date, and place of the communication.

9      **"Identify"** with respect to an individual means to give, to the extent known, the full name,

10  title, address, and current contact information of that person.

11      **"Person"** means any natural person or any legal entity, including, without limitation, any

12  business or governmental entity, organization, or association.

13      **Archive**:  Means the storage of any electronically produced material that has been

14  downloaded or backed up from any of the Defendant's computers, or servers, or a copy of data on

15  a computer drive, or on a portion of a drive, or on any other storage media readily accessible that

16  is maintained for historical reference.

17      **Backup**:  A copy of active data, intended for use in restoration of data – the downloading

18  of information stored in computer or server hard drives, soft discs, CD ROMS, or tapes onto

19  storage discs, tapes or CD-ROM for the purpose of preserving that data.

20      **Computer**: Includes but is not limited to network servers, desktops, laptops, notebook

21  computers, employees' home computers, mainframes, PDAs, smartphones, BlackBerry devices

22  and pagers.

23

24

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 6 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **Data**:  Any and all information stored on media that may be accessed by a computer.

2    **E-mail**: Means electronically transmitted messages sent from one computer to another

3    computer or a series of computers by a person or persons. Deleted E-mail data remains in the

4    computer system storage drive until the system runs out of space for the data. This material is

5    retrievable and any request for E-mail should include deleted material retrieved from the

6    computer's storage system.

7    **Electronic Message:** any form of electronic messaging, including but not limited to text,

8    instant; direct messages; Facebook Messenger; Snapchat; Twitter; etc.

9    **Investigate**: Means to inquire into.  As in *inquiring* into allegations, concerns, or issues

10   presented by employees, agents or assigns of Defendant.

11   **Media**: Means the method of creating and storing electronically transmitted data; i.e. hard

12   drive; floppy disc; compact disc, server, etc.

13   **Metadata**: That electronic data associated with the responsive data – i.e.: ancillary

14   electronic information that relates to electronic data, such as information that would indicate

15   whether and when the responsive electronic data was created, edited, sent, received and/or opened.

16   Typically referred to as the data that provides all relevant information about the data (document).

17   **"Audit Trail" or "Audit Log":**  An audit log or audit trail is a security-relevant

18   chronological record that provides documentary evidence of, among other events, who accessed

19   an electronic medical record system, when they accessed it, from where, and exactly what they

20   did, such as enter new data, modify or remove existing data, view a part of the chart, obtain a

21   printout, etc. If "You" are using EMR / EHR records systems, you are required to have security

22   systems in place to access this information.

23   NO. 22-CV-00915-JLR                                              **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIFTH INTERROGATORIES AND          421 W. Riverside, Ave., Suite 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                         Spokane, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES               T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 7 OF 30

1    **"Revision History":** used to evaluate changes made in the medical record over time

2    (comparable to the Microsoft Word "track changes" feature). It is a chronological listing of

3    document versions or data versions showing the changes over time.

4    **Personnel Files**:  Documents, whether stored in physical form, such as in paper files or

5    electronically, such as on computer disk or hard drive or computer server, which in any way reflect

6    the employment history, employment status, work assignments, credentialing, compensation,

7    supervisory relationships, promotion, reassignment, discipline, and termination, for whatever

8    reason, of the named individual for which they are requested. Any request for personnel files

9    encompasses all files maintained at all locations that collectively reflect the employment history

10    of the named individual, including files maintained at locations others than Defendant's facilities

11    where the named individual was employed.

12    **Possession or Control**: The act or condition of having in, or taking into one's control or

13    having at one's disposal or the power or authority to access, guide, manage, direct or restrain any

14    document or thing.

15    **"Relate" "related"** or **"relating"** means, in addition to their usual and customary

16    meanings, concerning, referring to, reflecting, regarding, pertaining to, addressing, discussing,

17    alluding to, describing, evidencing, constituting, or otherwise having any logical or factual

18    connection with the subject matter addressed.

19    Additional definitions include:

20    **"RVU"** means the productivity metric known as the Relative Value Unit as referenced and

21    explained at, e.g., Paragraph C of the Settlement Agreement defined above, and includes wRVUs

22    (work), peRVUs (practice expense) and mRVUs (malpractice).

23

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
24    REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 8 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **"MultiCare"** or **"MultiCare Health Systems"** means MultiCare Health Systems, with

2    headquarters in Tacoma, Washington, its subsidiaries, its employees, agents and assigns, including

3    parties, attorneys, investigators, adjusters, insurance companies or others standing in a

4    representative relationship to MultiCare, including MultiCare entities located in Spokane,

5    Washington, e.g., MultiCare / Deaconess, MultiCare / Rockwood Clinic, and MultiCare / Valley

6    Hospital.

7    **"Medtronic"** or **"Medtronic USA Inc."** means the medical device company

8    headquartered in Minneapolis, Minnesota, its subsidiaries, its employees, agents and assigns,

9    including parties, attorneys, investigators, adjusters, insurance companies or others standing in a

10   representative relationship to Medtronic, including Medtronic representatives servicing Eastern

11   Washington.

12   **"Spreadsheets"** is included within the definition of "documents" above and means, in in

13   addition to its usual and customary meaning, the collection of data or information using computer

14   programs such as, but not limited to, .xlsx, as a tool to store, manipulate and analyze data, usually

15   arranged in tows and columns of a grid, typically found in electronic form and convertible to .pdf.

16   **"Health Care Benefits Program"** means as defined in 18 U.S.C. § 24(b).

17   The **"National Practitioner's Data Bank"** means as it is described in 45 C.F.R. §

18   60.11(b).

19   The **"Washington State Department of Health," "WDOH," "DOH,"** or **"MQAC"**

20   means, interchangeably, the State of Washington's Department of Health, the Washington State

21   Medical Commission, and/or the Washington State Medical Quality and Care Commission, to

22   include all investigative arms including, without limitation, the Office of Health Systems

23

24

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 9 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT E
9 of 30

1    Oversight and the Board of Osteopathic Medicine and Surgery, as well as investigators, agents,

2    employees of any of these named entities.

3         The words **"and"** and **"or"** shall be construed disjunctively or conjunctively to bring

4    within the scope of each interrogatory all responses which otherwise might be construed to be

5    outside the scope of an interrogatory.

6         The word **"any"** shall be construed to include "all" and vice versa.

7         The word **"each"** shall be construed to include "every" and vice versa.

8         **All other terms used herein are common usage.  If you have any questions or concerns**

9    **about any definitions of any terms contained herein, please contact our office at once to clear**

10   **up any confusion.**

11        The undersigned certifies pursuant to the FRCP 26(g) that this Discovery is propounded in

12   good faith pursuant to the rules of civil procedure.

13   //

14        Dated this 3rd day of January 2025.

15                                          GILBERT LAW FIRM, P.S.

16

17                                          _____

18                                          WILLIAM A. GILBERT, WSBA # 30592
                                            Attorney for Plaintiffs

19

20

21

22

23
     NO. 22-CV-00915-JLR                              **GILBERT LAW FIRM, P.S.**
24   PLAINTIFFS' FIFTH INTERROGATORIES AND          421 W. Riverside, Ave., Suite 1400
     REQUESTS FOR PRODUCTION PROPOUNDED                    Spokane, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES         T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 10 OF 30

1

**INTERROGATORIES AND REQUESTS FOR PRODUCTION**

2

**REQUEST FOR PRODUCTION NO. 159:**  Produce a complete copy of all discovery

3

answers/responses produced by you in the case *Palmer v. Dreyer (now MultiCare/Providence)*,

4

Spokane County Case No. 21-2-01299-32, and *Lindsey v. Dreyer*, Spokane County Case No., *23-*

5

*2-04365-32*,[1] including all documents produced therein to any parties in that case, including to the

plaintiffs as well as to MultiCare Health Systems, and/or Dr. Jason Dreyer, and to the extent not

6

already produced to Plaintiffs by you in this case, as well as any deposition transcripts and exhibits.

7

An agreement that the discovery produced in *Palmer* and/or *Lindsey* is equally available for use in

8

this case by Plaintiffs as if fully produced herein, including for purposes of motions to compel and

9

the like, shall satisfy this request for production. If you intend to assert the same privileges already

10

asserted in those cases, please attach a privilege log. This interrogatory is intended to be seasonably

11

supplemented pursuant to Rule 26(e), if or when more productions are made. This interrogatory is

12

not intended to request the individual medical records of the plaintiffs named in those lawsuits.

**RESPONSE:**

13

14

15

16

17

**REQUEST FOR PRODUCTION NO. 160:** Produce a complete copy of all discovery

18

answers/responses produced by you in the case *Estes v. Providence,* 21-cv-5042-TOR (E.D.

19

Wash.),[2] and *Batten v. Providence*, 23-cv-00097-TOR (E.D. Wash.), including all documents

20

produced therein to the parties in that case, to the extent not already produced to Plaintiffs in this

21

_____

22

[1] Also request in Request for Production No. 21.
[2] Also requested in Request for Production Nos. 21 and 149.

23

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND

24

REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 11 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1   case, as well as any deposition transcripts and exhibits. If you intend to assert the same privileges

2   already asserted in those cases, please attach a privilege log. This interrogatory is intended to be

3   seasonably supplemented pursuant to CR 26(e), if or when more productions are made. This

4   interrogatory is not intended to request the individual medical records of the plaintiffs named in

5   those lawsuits.

        **RESPONSE:**

6

7

8

9       **REQUEST FOR PRODUCTION NO. 161:**  Please produce the bank statements for bank

10  accounts into which you deposited monies transferred by you to Dr. Jason Dreyer based upon his

11  production of RVUs.

12      **RESPONSE:**

13

14

15

16      **REQUEST FOR PRODUCTION NO. 162:**  Please produce the bank statements for bank

17  accounts into which you deposited monies transferred by you to Dr. Daniel Elskens based upon

18  his production of RVUs.

19      **RESPONSE:**

20

21

22

23  NO. 22-CV-00915-JLR                                    **GILBERT LAW FIRM, P.S.**
    PLAINTIFFS' FIFTH INTERROGATORIES AND          421 W. RIVERSIDE, AVE., SUITE 1400
24  REQUESTS FOR PRODUCTION PROPOUNDED                      SPOKANE, WA 99201
    UPON PROVIDENCE HEALTH & SERVICES          T: (509) 321-0750 • F: (509) 343-3315
    WASHINGTON - PAGE 12 OF 30

1    **REQUEST FOR PRODUCTION NO. 163:**  Please produce the bank statements for bank

2    accounts into which you deposited monies transferred to you by any insurer (including any federal

3    or state government insurer) based upon Dr. Dreyer's production of RVUs. This includes, without

4    limitation, the bank accounts into which you deposited monies for peRVUs (practice expense) and

5    mRVUs (malpractice).

6    **RESPONSE:**

7

8

9    **REQUEST FOR PRODUCTION NO. 164:**  Please produce the bank statements for bank

10   accounts into which you deposited monies transferred to you by any insurer (including any federal

11   or state government insurer) based upon Dr. Elskens' production of RVUs. This includes, without

12   limitation, the bank accounts into which you deposited monies for peRVUs (practice expense) and

13   mRVUs (malpractice).

14   **RESPONSE:**

15

16

17

18   **REQUEST FOR PRODUCTION NO. 165:**  Please produce all documents in your

19   possession or control showing Dr. Dreyer's RVU production at Providence, including but not

20   limited to spreadsheets, financial statements, loan documents, job applications, resumes, financing

21   documents, performance projections, performance reports or summaries, contracts, or

22   communications with or from Medtronic, MultiCare, or agents or employees (current or former)

23

24

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 13 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1  of Providence or MultiCare, including without limitation Susan Blackburn, John Demakas,

2  Michael McDonald, Christopher Hall, Laureen Driscoll, Mark Donaldson, David Yam, Lee

3  Sandquist, Poppy Montgomery, or Daniel Elskens.

4      **RESPONSE:**

5

6

7

8

9      **REQUEST FOR PRODUCTION NO. 166:**  Please produce all documents in your

10  possession or control showing Dr. Elskens' RVU production at Providence, including but not

11  limited to spreadsheets, financial statements, loan documents, job applications, resumes, financing

12  documents, performance projections, performance reports or summaries, contracts, or

13  communications with or from Medtronic, or agents or employees (current or former) of

14  Providence, including without limitation Susan Blackburn, Michael McDonald, Christopher Hall,

15  Laureen Driscoll, David Yam, Poppy Montgomery, or Jason Dreyer.

16      **RESPONSE:**

17

18

19

20

21

22

23

24

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 14 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1   **REQUEST FOR PRODUCTION NO. 167:** For each individual in your initial disclosure,

2   dated September 9, 2024, who you propose will give testimony, please provide every document

3   identifying the individual by name as it relates to that proposed testimony and/or that identifies the

4   subject matter in which each individual is intended to testify.

5   **RESPONSE:**

6

7

8

9

10   **REQUEST FOR PRODUCTION NO. 168:** For each individual in your initial disclosure,

11   dated September 9, 2024, that you identified, by name or otherwise, as individuals who "are likely

12   to have discoverable information that Providence may use to support its defenses against Plaintiffs'

13   claims individually and against the claims of the proposed classes," please provide all documents

14   identifying the individual by name as it relates to that proposed testimony and/or that identifies the

15   subject matter in which each individual is intended to testify.

16   **RESPONSE:**

17

18

19

20

21

22

23   NO. 22-CV-00915-JLR                                      **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIFTH INTERROGATORIES AND               421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                         SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES               T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 15 OF 30

**REQUEST FOR PRODUCTION NO. 169:** For each individual in your initial disclosure, dated September 9, 2024, who are termed "additional current and former employees not yet identified with knowledge of" (as you have termed it) "Providence's compensation model for providers; concerns that were allegedly raised regarding Drs. Dreyer and Elskens; Whether Providence was required to report Drs. Dreyer and Elskens to the National Practitioner Data Bank or Washington Department of Health following their resignations from St. Mary; or Information that Providence provided MultiCare prior to its hiring of Dr. Dreyer:" please provide all documents identifying the proposed individual by name as it relates to that proposed testimony and/or that identifies the subject matter in which each individual is intended to testify.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 170:**  Please produce all documents identified in your September 9, 2024 initial disclosure at pages 11 and 12 as documents you may use to support your defenses and/or your opposition to Plaintiffs' anticipated motion for class certification.

**RESPONSE:**

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 16 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT E
16 of 30

1     **REQUEST FOR PRODUCTION NO. 171:** Please produce a complete copy of your

2 medical records for the care provided by Dr. Dreyer or Dr. Elskens for each of the proposed class

3 members (identified by you as totaling 1,750 patients).[3] This request includes all office visit charts

4 and notes; all email messages; all imaging films; all operating room reports whether kept by Drs.

5 Dreyer or Elskens or by other employees or agents of you; all billing records; photographs; audio

6 recordings; correspondence; time records; billing statements; ledgers; including without limitation

7 all such reports or records, whether a draft or final version. Personal identifying information such

8 as name, address, social security number and the like may be redacted so long as the records for

9 each patient so long as each patients' records, images, and billings are grouped together.

10     **RESPONSE:**

11

12

13

14     **REQUEST FOR PRODUCTION NO. 172:** Please produce a complete copy of any

15 record in your possession or control regarding any care provided to any patient by Dr. Jason Dreyer

16 after May 22, 2018. This includes, without limitation, any spine surgeries at Providence / St. Mary

17 Medical Center in which Dr. Dreyer played any role.

18     **RESPONSE:**

19

20

21 ───────────────────

22 [3] This request is also included in, *e.g.*, Requests for Production Nos. 5 and 6 as well as any request for production that seeks all documents provided to the government during its various investigations of you.

23 NO. 22-CV-00915-JLR                       **GILBERT LAW FIRM, P.S.**

24 PLAINTIFFS' FIFTH INTERROGATORIES AND        421 W. RIVERSIDE, AVE., SUITE 1400
REQUESTS FOR PRODUCTION PROPOUNDED         SPOKANE, WA 99201
UPON PROVIDENCE HEALTH & SERVICES      T: (509) 321-0750 • F: (509) 343-3315
WASHINGTON - PAGE 17 OF 30

1    **REQUEST FOR PRODUCTION NO. 173:** Please produce a complete copy of any

2    record in your possession or control regarding any care provided to any patient by Dr. Jason Dreyer

3    after May 22, 2018. This includes, without limitation, any spine surgeries at Providence / St. Mary

4    Medical Center in which Dr. Dreyer played any role.

5    **RESPONSE:**

6

7

8

9

10    **REQUEST FOR PRODUCTION NO. 174:**    In Request for Production No. 72(x),

11    Plaintiffs have requested payments made by you to Dr. Dreyer in 2018 and 2019, while Dr. Dreyer

12    was on what you have termed "administrative leave." This request for documents includes, without

13    limitation, any documents relating to those payments as well as any documents indicating whether

14    the payments were related to the RVU compensation system, and how they were so related, as well

15    as all documents referencing both the payments during that period and RVU compensation.

16    **RESPONSE:**

17

18

19

20

21

22

23

24

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 18 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT E
18 of 30

1    **REQUEST FOR PRODUCTION NO. 175:** Please produce all documents relating to

2    Dr. Daniel Elskens' separation of employment from you, including any contracts or emails with

3    him and any settlement correspondence, including settlement correspondence with his attorney(s),

4    and all documents related to his final payments and any Department of Labor complaints made or

5    threatened to be made, without limitation with regard to $93,000.00 of payments alleged owed to

6    Dr. Elskens and any negotiations and/or threats related to these monies, including whether

7    Providence offered to withhold reporting Dr. Elskens to the National Practitioner Data Bank and/or

8    the Washington Department of Health in exchange for Dr. Elskens agreeing not to receive these

9    funds and/or whether Providence threatened to report him to the National Practitioner Data Bank

10   and/or the Washington Department of Health if Dr. Elskens pursued collection of that $93,000.00.

11   **RESPONSE:**

12

13

14

15   **REQUEST FOR PRODUCTION NO. 176:** All documents related to the meeting held

16   between Christopher Hall and Daniel Elskens on or about March 9, 2017, including any emails,

17   texts, notes or the like leading up to that meeting as well as any emails, texts, notes or the like that

18   summarize that meeting or speak of the meeting in any way. This includes, without limitation, any

19   discussion of Dr. Elskens returning to work on or about March 20, 2017.

20   **RESPONSE:**

21

22

23   NO. 22-CV-00915-JLR                                    **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIFTH INTERROGATORIES AND                421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                    SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES                     T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 19 OF 30

1

**REQUEST FOR PRODUCTION NO. 177:** All documents related to the transfer of Dr.

2 Elskens' anticipated and/or approved surgeries upon your decision to put him what you termed to

3 be "administrative leave," which is believed to have occurred on or about March 9, 2017.

4      **RESPONSE:**

5

6

7

8      **REQUEST FOR PRODUCTION NO. 178:** In relation to RFP No. 175: All documents

9 related to a "locum" job that Dr. Elskens sought in or around May 2017, including all letters by

10 Christopher Hall or contacts by a "Providence lawyer" with that locums job – this request is

11 pursuant to Dr. Elskens' report that (a) Christopher Hall "effed" him on that job by "releasing the

12 non peer reviewed info to the hospital," and that (b) the "Providence lawyer called to have the

13 letter destroyed" but that (c) the "damage was done" and (d) Dr. Elskens lost $50,000.00 as a

14 result.

15      **RESPONSE:**

16

17

18

19

20

21

22

23

24

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 20 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **REQUEST FOR PRODUCTION NO. 178:**  In relation to RFP No. 175: All documents

2    related to a "special release" that Providence / St. Mary Medical Center reportedly required before

3    it would release general information regarding, *inter alia,* Dr. Elskens, including all documents

4    related to communication with Dr. Elskens about this release. *As for a time period*: Dr. Elskens

5    reported the special release requirement on or about June 11, 2018. Per Dr. Elskens, this "special

6    release" allows Providence to release information about his review process as well as Dr. Dreyer's

7    review process, a process that Providence has since termed to be "administrative leave" or a "safety

8    pause."

9    **RESPONSE:**

10

11

12

13    **REQUEST FOR PRODUCTION NO. 179:**  Please produce all documents relating to

14    Dr. Jason Dreyer's separation of employment from you, including any contracts or emails with

15    him and any settlement correspondence, including settlement or other correspondence or emails

16    with his attorney(s), including any documents related to how his voluntary resignation would result

17    in no reporting of him by Providence to any regulatory authority.[4]

18    **RESPONSE:**

19

20

21

---

22  [4] For context, Dr. Dreyer told Dr. Oskouin via email dated November 29, 2018: that, per his lawyers, "Renton" (*i.e.,* Providence Corporate, not Providence / St. Mary Medical Center – "SMMC"- in Walla Walla) wants him to resign but gave "no reason," and that he has agreed to do so, and that "this way it's not reportable…"

23

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
24  REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 21 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. Riverside, Ave., Suite 1400
Spokane, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1    **REQUEST FOR PRODUCTION NO. 180:**  Please produce all documents relating to

2   Dr. Jason Dreyer's representation in or around May 17, 2019 to Dr. Lee Sandquist that

3   Providence's position regarding his employment is that the administrative leave and/or safety

4   paused entered into on or about May 22, 2018 need not be reported to a prospective employer.[5]

5    **RESPONSE:**

6

7

8    **REQUEST FOR PRODUCTION NO. 181:**  RFP Nos. 24 and 25 ask for, *inter alia*, fee

9   tickets and RVU spreadsheets. Providence has declined to answer these requests. This is a renewal

10  of RFP Nos. 24 and 25 with additional information,[6] and is a request for documents that are in

11  your possession or control with information related to these kinds of monthly reports or summaries

12  for either Dr. Dreyer or Dr. Elskens, including any meeting minutes of the financial committee,

13  any revisions to reports or summaries, and any emails associated with meeting minutes and the

14  reports/summaries. The minutes of the meetings are requested to the extent that they are not

15  covered by any peer review privilege but we do seek production of them to the extent that any peer

16  review privilege is inapplicable and/or has been waived e.g., via production to the government.

17   **RESPONSE:**

18

---

19  [5] For context, Dr. Dreyer texted Dr. Sandquist on or about May 17, 2019, stating that, per his lawyers, someone like
Dr. Sandquist – *i.e.*, someone with knowledge of Dr. Dreyer's "safety pause" and/or knowledge of Providence's

20  investigation into Dreyer surgeries which forced a year-long administrative leave – should not report that knowledge
to Dr. Dreyer's prospective employers because that was the "severance deal" he had with Providence ("my lawyers
said to answer no to all that stuff because that's Providence's position … That's part of the severance deal").

21  [6] Please note attached Exhibit A (October 10 2016 email regarding monthly reports from Poppy McGuire) as well as

22  Exhibit C to the Third Set of discovery requests (6/30/2015 email from Dr. Dreyer to Poppy McGuire, discussing his
"fee tickets" and "spreadsheets," indicating that this kind of information and these kinds of reports and/or fee tickets
were created, or are in existence, on at least a monthly basis).

23  NO. 22-CV-00915-JLR                                    **GILBERT LAW FIRM, P.S.**

24  PLAINTIFFS' FIFTH INTERROGATORIES AND              421 W. RIVERSIDE, AVE., SUITE 1400
REQUESTS FOR PRODUCTION PROPOUNDED                      SPOKANE, WA 99201
UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
WASHINGTON - PAGE 22 OF 30

**REQUEST FOR PRODUCTION NO. 182:**  Please produce a copy of the spreadsheet given to Jason Dreyer by you or your employees or agents in or around May of 2018 as discussed at pages 146-147 of Dr. Dreyer's August 28, 2024 deposition in the case of *Palmer v. MultiCare/Providence*, Spokane County Superior Court No. 21-2-01299-32, in which you are a party and that your counsel attended.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 183:**  RFP No. 76 asks for a complete copy of any peer or patient review or audits for Dr. Dreyer. This would include reviews conducted by Dr. Ozgur, Dr. Estrada Bernard, and Dr. Nicholas Theodore.  This request reiterates and emphasizes that Plaintiffs seek all documents related to reviews by these physicians as well as any other peer or patient review or audits for either Dr. Dreyer or Dr. Elskens. Please note that any privilege assertions regarding reviews related to Dr. Dreyer's administrative leave have been found to be waived by Judge Rice in *Estes v. Providence,* 2023 WL 8531775, *5 (E.D. Wash. Dec. 8, 2023) ("Defendant cannot claim attorney client or work product privilege as to its decision to place Dr. Dreyer on administrative leave, the concerns prompting that decision, and whether or not a report was made to the NPDB"), and Judge Rice has ordered that such audits be produced, *see Batten v. Providence* case, 23-cv-0097-TOR (July 14, 2024 E.D. Wash.) (ECF 42, see RFP No. 19 discussion). Further, any privilege assertions were waived if the information and/or reports was/were relayed to the government during its investigation(s).

**RESPONSE:**

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 23 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

2       **REQUEST FOR PRODUCTION NO. 184:**  In his October 30, 2024 deposition in the

*Palmer* case (which your attorney defended), Dr. Jens Chapman testified that when he receives

3       inquiries about providing assessments on colleagues, he asks the inquirer to send the information

4       and/or questionnaire so that he can make any such assessment in writing, and that he does not do

5       phone interviews. See 10/30/2024 Transcript at 27. He further stated that any such inquiries go

6       through the Providence office so that a copy of any review or assessment he may have done on Dr.

7       Dreyer, at the request of, for example, Dr. Demakas at MultiCare, would be kept with his

8       administrative office "because I want them to be copied" and so his "office would have essentially

9       letter of records." Id. at 30. Given this testimony, please provide any such assessments by Dr.

Chapman regarding Dr. Dreyer, including without limitation in response to any inquiry made by

10      Dr. Demakas about Dr. Dreyer. Further, please respond "none" if no such assessment(s) exist.

11      **RESPONSE:**

12

13

14      **REQUEST FOR PRODUCTION NO. 185:**  Please produce all documents relating to the

15      Union Bulletin advertisement by Providence on June 5, 2022 (see ECF 224-4), including all drafts

16      of said advertisement, all emails related to the drafting and decision to publish the advertisement,

17      all bills associated with the cost of the advertisement, all patient responses and subsequent

18      interactions with patients as prompted by the advertisement, and all investigative material related

19      to the investigation of the Doctors admitted to by Providence in the advertisement.

20      **RESPONSE:**

21

22

23      NO. 22-CV-00915-JLR                                    **GILBERT LAW FIRM, P.S.**
        PLAINTIFFS' FIFTH INTERROGATORIES AND           421 W. RIVERSIDE, AVE., SUITE 1400
24      REQUESTS FOR PRODUCTION PROPOUNDED                      SPOKANE, WA 99201
        UPON PROVIDENCE HEALTH & SERVICES          T: (509) 321-0750 • F: (509) 343-3315
        WASHINGTON - PAGE 24 OF 30

1

2          **REQUEST FOR PRODUCTION NO. 186:** All documents indicating a transfer by you,

3   or by your attorneys or other agents, or any transmittal evidence in your possession or control,

    showing the transmission of the sealed Fourth Amended Complaint in this case to MultiCare

4   Health Systems or any of its agents or attorneys. This includes, without limitation, not just the fact

5   of the transmission but the substance of information contained within the transmittal itself.

6          **RESPONSE:**

7

8

9

10         **REQUEST FOR PRODUCTION NO. 187:** All documents related to Dr. Daniel

11  Elskens' application process in Petoskey, Michigan. For context, by text dated on or about June

12  30, 2018, Dr. Elskens reported to Dr. Dreyer that "St. Mary's effed up Petoskey for me. It was the

13  first place I interviewed."

14         **RESPONSE:**

15

16

17         **REQUEST FOR PRODUCTION NO. 188:** All documents related to any information

    shared with any prospective employer about either Dr. Daniel Elskens or Dr. Jason Dreyer,

18  including but not limited to the aforementioned facilities above, as well as MultiCare Health

19  Systems and a Tulsa, Oklahoma practice for Dr. Dreyer (this would have been in or around the

20  spring of 2019).

21         **RESPONSE:**

22

23

24

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 25 OF 30

GILBERT LAW FIRM, P.S.
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

EXHIBIT E
25 of 30

1       **INTERROGATORY NO. 5**: At any time with any patient of Dr. Dreyer or Dr. Elskens,

2  did you or any of your agents or employees, including Dr. Dreyer, Dr. Elskens, or Dr. Yam, inform

3  the patient prior to surgery of the risks associated with having surgery conducted by that surgeon,

4  as those risks are stated and outlined in Paragraph 4.152 of the Fifth Amended Complaint (pages

5  50-51)?

6       **ANSWER:**

7

8

9       **REQUEST FOR PRODUCTION NO. 189:** Produce a copy of any document, that you

10  contend supports your response to the immediately preceding interrogatory.

11       **RESPONSE:**

12

13

14

15

16

17

18

19

20

21

22

23  NO. 22-CV-00915-JLR            **GILBERT LAW FIRM, P.S.**

24  PLAINTIFFS' FIFTH INTERROGATORIES AND    421 W. Riverside, Ave., Suite 1400
REQUESTS FOR PRODUCTION PROPOUNDED    Spokane, WA 99201
UPON PROVIDENCE HEALTH & SERVICES    T: (509) 321-0750 • F: (509) 343-3315
WASHINGTON - PAGE 26 OF 30

1

## **CERTIFICATION OF COUNSEL**

2      ANSWERS AND OBJECTIONS SUBMITTED this ___ day of _____, 2025.

3   The undersigned attorney has read the foregoing responses to these discovery requests, and they

4   comply with FRCP 26(g).

5      DATED this _____ day of _____, 2025.

6                                          Davis Wright Tremaine LLP
                                           Attorneys for Defendant Providence Health &
7                                          Services – Washington

8                                          By _____
                                           Kenneth E. Payson, WSBA #26369
9                                          Ross Siler, WSBA #46486
                                           Jordan C. Harris, WSBA #55499
10                                         920 Fifth Avenue, Suite 3300
                                           Seattle, WA 98104-1610
11                                         Telephone: (206) 622-3150
                                           Fax: (206) 757-7700
12                                         Email: kenpayson@dwt.com
                                           ross.siler@dwt.com
13                                         jordanharris@dwt.com

14                                         Lewis Brisbois Bisgaard & Smith LLP
                                           Attorneys for Defendant Providence Health &
15                                         Services – Washington

16                                         By _____
                                           Jennifer K. Oetter, WSBA #26140
17                                         888 SW Fifth Avenue, Suite 900
                                           Portland, OR 97204
18                                         Telephone: (971) 712-2800
                                           Fax: (971) 712-2801
19                                         Email: jennifer.oetter@lewisbrisbois.com

20

21

22

23   NO. 22-CV-00915-JLR                              **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIFTH INTERROGATORIES AND        421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED                    SPOKANE, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES           T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 27 OF 30

1

## CERTIFICATION OF DEFENDANT PROVIDENCE HEALTH & SERVICES WASHINGTON ALSO D/B/A ST MARY MEDICAL CENTER ("PROVIDENCE")

2

3

_____, being first duly sworn on oath, deposes and says: I am the

designated speaking agent for Providence Health & Services Washington with authority to bind

4

Providence Health & Services Washington by my signature herein. I have read the above and

5

foregoing responses thereto, know the contents thereof, have done my due diligence in researching

6

the responses, and believe the same to be true, correct, and complete.

7

8

_____

SUBSCRIBED AND SWORN to before me this _____ Day of _____, 2025.

9

10

_____
(Notary Signature)

11

_____
(Type or Print Name of Notary)

12

NOTARY PUBLIC for the State of
Washington, residing at _____
My appointment expires: _____

13

14

15

16

17

18

19

20

21

22

23

24

NO. 22-CV-00915-JLR
PLAINTIFFS' FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION PROPOUNDED
UPON PROVIDENCE HEALTH & SERVICES
WASHINGTON - PAGE 28 OF 30

**GILBERT LAW FIRM, P.S.**
421 W. RIVERSIDE, AVE., SUITE 1400
SPOKANE, WA 99201
T: (509) 321-0750 • F: (509) 343-3315

1

**<u>CERTIFICATE OF SERVICE</u>**

2      The undersigned hereby certifies under penalty of perjury under the laws of the state of

3   Washington, that I am now, and at all times material hereto, a citizen of the United States, a resident

4   of the state of Washington, over the age of 18 years, not a party to, nor interested in the above-

5   entitled action, and competent to be a witness herein. I caused to be served on this date the

6   foregoing document in the manner indicated to the parties listed below:

7      ***Counsel for Defendants Dr. Jason A.***
       ***Dreyer, DO and Jane Doe Dreyer:***

8

9      Ryan M. Beaudoin, WSBA #30598        ☐   **HAND DELIVERY**
       Jeffrey Galloway, WSBA #44059        ☐   **U.S. FIRST CLASS MAIL**
       WITHERSPOON   BRAJCICH   McPHEE,     ☒   **ELECTRONIC MAIL**
10     PLLC                                 ☐   **FACSIMILE TRANSMISSION**
       601 W. Main Ave, Ste 1400
11     Spokane, WA 99201-0677
       rbeaudoin@workwith.com
12     jgalloway@wortkwith.com

13     ***Counsel for Defendants Dr. Daniel***
       ***Elskens, DO and Jane Doe Elskens:***

14

15     Stephen M. Lamberson, WSBA #12985    ☐   **HAND DELIVERY**
       Ronald A. Van Wert, WSBA #32050      ☐   **U.S. FIRST CLASS MAIL**
       ETTER,   MCMAHON,   LAMBERSON,       ☒   **ELECTRONIC MAIL**
16     VAN WERT & ORESKOVICH, P.C.          ☐   **FACSIMILE TRANSMISSION**
       618 W. Riverside Ave., Ste. 210
17     Spokane, WA 99201
       lambo@ettermcmahon.com
18     jgalloway@workwith.com

19     ***Co-Counsel for Defendant Providence***
       ***Health & Services:***

20

21     Kenneth E. Payson, WSBA #26369       ☐   **HAND DELIVERY**
       Ross Siler, WSBA #46486              ☐   **U.S. FIRST CLASS MAIL**
       Jordan Harris, WSBA #55499           ☒   **ELECTRONIC MAIL**
22     DAVIS WRIGHT TREMAINE LLP            ☐   **FACSIMILE TRANSMISSION**
       920 Fifth Ave., Ste. 3300

23   NO. 22-CV-00915-JLR                            **GILBERT LAW FIRM, P.S.**
     PLAINTIFFS' FIFTH INTERROGATORIES AND         421 W. Riverside, Ave., Suite 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED             Spokane, WA 99201
     UPON PROVIDENCE HEALTH & SERVICES              T: (509) 321-0750 • F: (509) 343-3315
     WASHINGTON - PAGE 29 OF 30

1   Seattle, WA 98104-1610
kenpayson@dwt.com

2   ross.siler@dwt.com
jordanharris@dwt.com

3

*Co-Counsel for Defendant Providence*
4   *Health & Services:*

5   Jennifer K. Oetter, WSBA #26140   ☐  **HAND DELIVERY**
LEWIS BRISBOIS BISGAARD & SMITH  ☐  **U.S. FIRST CLASS MAIL**
6   LLP   ☒  **ELECTRONIC MAIL**
888 SW Fifth Ave., Ste. 900  ☐  **FACSIMILE TRANSMISSION**
7   Portland, OR 97204-2025
jennifer.oetter@lewisbrisbois.com

8
DATED this 3rd day of January, 2025.

9

10

11   RACHEL COOK, Paralegal

12

13

14

15

16

17

18

19

20

21

22

23   NO. 22-CV-00915-JLR       **GILBERT LAW FIRM, P.S.**
PLAINTIFFS' FIFTH INTERROGATORIES AND  421 W. RIVERSIDE, AVE., SUITE 1400
24   REQUESTS FOR PRODUCTION PROPOUNDED  SPOKANE, WA 99201
UPON PROVIDENCE HEALTH & SERVICES  T: (509) 321-0750 • F: (509) 343-3315
WASHINGTON - PAGE 30 OF 30

## DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the State of Washington that I served the foregoing **DECLARATION OF ANDREW GARD IN SUPPORT OF DEFENDANT PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE HEALTH & SERVICES - WASHINGTON dba PROVIDENCE ST. MARY MEDICAL CENTER; and PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON NEUROSURGERY aka PMG NEUROSCIENCE INSTITUTE dba PROVIDENCE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST TO FILE** on the following attorneys by the method indicated below on the 11th day of June, 2025:

*Attorneys for Plaintiff:*

| William A. Gilbert, Esq. | _____ Via First Class Mail |
| Beth M. Bollinger, Esq. | ✓ Via CM/ECF |
| Ashley Richards, Esq. | _____ Via Facsimile |
| Gilbert Law Firm, P.S. | _____ Via Hand-Delivery |
| 421 W. Riverside Avenue | ✓ Via E-Mail |
| Suite 1400 | |
| Spokane, WA 99201 | |
| bill@wagilbert.com | |
| beth@wagilbert.com | |
| ashley@wagilbert.com | |

*Attorneys for Defendants
Dr. Jason A. Dreyer, DO
and Laura Dreyer:*

| Ryan M. Beaudoin, Esq. | _____ Via First Class Mail |
| Jeffrey R. Galloway, Esq. | ✓ Via CM/ECF |
| Jon R. Burtard, Esq. | _____ Via Facsimile |
| Katelyn C. Renfro, Esq. | _____ Via Hand-Delivery |

Lewis Brisbois Bisgaard & Smith LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

1    Witherspoon Brajcich                 ✓    Via E-Mail
2    McPhee, PLLC
     601 W. Main, Suite 1400
3    Spokane, WA 99201
4    Rbeaudoin@workwith.com
     jgalloway@workwith.com
5    jburtard@workwith.com
6    krenfro@workwith.com

7

8
                          By:    s/ Katrina Kofsky
9                                Katrina Kofsky, Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Lewis Brisbois Bisgaard & Smith LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801